1  William W. Palmer, Esq. (SBN 146404)
2  PALMER LAW GROUP, a PLC
   907 Westwood Blvd., No. 218
3  Los Angeles, California 90024
   Telephone: (310) 984-5074
4  Facsimile:  (310) 491-0919
5  Email: wpalmer@palmercorp.com

6  *Attorneys for plaintiffs Gloria Londono, Clara*
7  *Londono, Luis Londono, Miguel Londono.*

8

9            **UNITED STATES DISTRICT COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA**

11

12  GLORIA LONDONO, CLARA          Case No.:
    LONDONO, LUIS LONDONO,
13  MIGUEL LONDONO,                COMPLAINT FOR:
    individuals,
14                                 1. Declaratory Relief
15           Plaintiffs,           2. Breach of Fiduciary Duty
                                   3. Unjust Enrichment
16      vs.                        4. Promissory Estoppel
                                   5. Constructive Fraud
17                                 6. Conversion
18  SUZANNE LIEBERMAN,
    an individual,                 DEMAND FOR JURY TRIAL
19
20           Defendant.
21

22

23

24

25

26

27

Plaintiffs Gloria Londono, Clara Londono, Luis Londono, and Miguel Londono, (collectively hereafter, "Plaintiffs" or "Londono Family") allege for their Complaint against defendant Suzanne Lieberman ("Defendant" or "Lieberman") as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (Diversity of citizenship); amount in controversy; costs, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

2.     This Court has jurisdiction to render declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

4.     This Court has specific personal jurisdiction over Defendant in light of Defendant's purposeful availment of California's benefits and protections through her significant and deliberate contacts with the state, which are directly related to the controversy at issue. The Fred L. Lieberman and Martha Londono Living Trust dated March 27, 2015 ("2015 Trust"), with the testation in California at the time, was drafted by the Law Offices of David Lee Rice, APLC located in Torrance, California and executed at his office.   A copy of the 2015 Trust is attached hereto and incorporated herein by reference as Exhibit A. Article Twelve, Section 12.08 (d) of the 2015 Trust (Exh. A) states, "This trust is governed, construed, and administered according to the laws of California as amended except as to trust property required by law to be governed by the laws of another jurisdiction and unless the situs of administration is changed under Section 12.06."  Fred and Marta maintained a home located at 19150 Pacific Coast Highway, Malibu, California, 90265 in Malibu,

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 973-0761

1

1   California as their personal residence until its sale on August 17, 2022.  Mrs.

2   Londono passed away in Malibu, California, on August 2, 2019.

3          5.      Defendant has established minimum contacts with California sufficient

4   to satisfy due process requirements under the Ninth Circuit's specific jurisdiction

5   test. Defendant purposefully directed her activities toward California by: (1)

6   participating in the sale of the personal residence located in Malibu, California, a

7   key trust asset located in this district; (2) communicating with California-based

8   attorneys regarding trust matters; (3) instruct the California trust attorneys to issue

9   critical notices to Plaintiffs Gloria Londono, Clara Londono, Luis Londono, and

10  Miguel Londono who reside in another state (Georgia) or country (Colombia); (4)

11  exercising control over trust assets located in California; and (5) deriving financial

12  benefit from California-based trust assets. These contacts are not random, fortuitous,

13  or attenuated, but rather represent deliberate engagement with the forum State of

14  California.

15         6.      The exercise of jurisdiction over Defendant comports with traditional

16  notions of fair play and substantial justice under Ninth Circuit precedent. The burden

17  on Defendant to litigate in California is minimal compared to Plaintiffs' interest in

18  obtaining convenient and effective relief in the forum where the trust was created,

19  where the primary trust asset was located, and where the trust is governed by

20  California law as expressly stated in the trust instrument.

21                              **PARTIES**

22         7.      Plaintiff Gloria Londono ("Gloria") is an individual who is a resident

23  of the State of Georgia in the United States. Gloria is the biological daughter of

24  Martha Londono and is successor trustee of the Lieberman Survivor Trust dated

25  March 27, 2015 (Exh. A).

26  ///

27  ///

PALMER LAW GROUP, a PLC
2441 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 873-0761

2
COMPLAINT

8.     Plaintiff Clara Londono ("Clara") is an individual who is a resident of Medellin, Colombia and is the biological daughter of Martha Londono and is a beneficiary of the Lieberman Survivor Trust dated March 27, 2015 (Exh. A).

9.     Plaintiff Luis Londono ("Luis") is an individual who is a resident of Medellin, Colombia and is the biological son of Martha Londono and is a beneficiary of the Lieberman Survivor Trust dated March 27, 2015 (Exh. A).

10.     Plaintiff Miguel Londono ("Miguel") is an individual who is a resident of Medellin, Colombia and is the biological son of Martha Londono and is a beneficiary of the Lieberman Survivor Trust dated March 27, 2015 (Exh. A).

11.     Defendant Suzanne Lieberman ("Suzanne") is an individual who is a resident of King County, Washington.

## STATEMENT OF FACTS

12.     Fred Lieberman ("Fred") and Martha Londono ("Martha") married on December 10, 1989. and remained together for over 30 years. Martha's biological children: Clara, Luis, Gloria, and Miguel Londono (Plaintiffs), and Fred's biological daughter: Suzanne (Defendant), formed a close blended family. Martha is the Defendant's stepmother and Fred is Plaintiff's stepfather. Plaintiffs, Defendant, Martha, and Fred had a very close, well-developed blended family relationship with each other. Communication with one another was never an issue. Clara, Luis, and Londono live in Medellin, Colombia, while Gloria lives in Atlanta, Georgia. Fred and Martha frequently visited Colombia, attending weddings, graduations, baptisms, and major holidays with the Plaintiffs. Defendant also visited Plaintiffs in Colombia.

13.     On May 27, 2015, Fred and Martha executed the 2015 Trust (Exh. A). Fred and Martha were initially co-trustees of the 2015 Trust. Article Two of the 2015 Trust clearly stated their intent to treat all children and stepchildren of their blended family as "our children" and "our descendants" without distinction.

14.     Martha passed away on August 2, 2019, in Malibu, California. By

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 573-0761

operation of the 2015 Trust, upon Martha's death, the Fred Lieberman Survivor Trust (the "Lieberman Survivor Trust") was established. Fred is the lifetime beneficiary and initial trustee of the Lieberman Survivor Trust. The Londono Family and Defendant were named remainder beneficiaries, and Gloria was designated successor trustee.

15.    After Martha's passing, Fred was deeply affected. He struggled with grief, declining health, and adjusting to life without Martha, his wife of thirty years, who had taken charge of most aspects of their life together. Miguel Londono stayed with Fred in Malibu, California for the first month after Martha's passing, ensuring that he had support and stability during that painful transition. In March of 2020, Fred had a medical crisis and mental breakdown which required constant assistance from his stepdaughter, Gloria, from June 2020 to October 2020.

16.    In October 2020, due to Fred's declining health, all parties agreed he should move to the State of Washington to be near Defendant while the family home was maintained in Malibu, California. Gloria and Defendant transported Fred from his residence located at 19150 Pacific Coast Highway, Malibu, California, 90265 (the "Malibu Residence") to the Aegis Assisted Living & Memory Care Facility located in Issaquah, Washington. In or around October of 2020, Gloria Londono and Clara Londono assisted Fred with the preparation of the sale of the Malibu Residence as rental property. They prepared the home at great cost and invested time to produce rental income from December of 2020 until the eventual sale on August 17, 2022. The rental income was used to fund the Aegis Assisted Living & Memory Care Facility cost for Fred's care.

17.    On August 9, 2022, Plaintiffs were unexpectedly notified by attorney David Rice (the attorney who drafted the 2015 Trust) that the Malibu Residence had been sold and needed to be vacated within a week for the new owners. Given these circumstances, Plaintiffs reasonably expected to meet with Defendant Suzanne at

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 673-0761

4

the house to coordinate the clearance of belongings. However, Defendant Suzanne never appeared and did not answer Plaintiffs' multiple calls and messages. The overwhelming task of clearing the residence was accomplished solely by Gloria. After the sale of the Malibu Residence, Defendant Suzanne was non-responsive to any of Plaintiffs' communications. Plaintiffs were not provided with any details about the sale or where the proceeds from the sale had been deposited.

18.     In November 2022, Clara travelled to Issaquah, Washington to visit Fred at the Aegis Assisted Living & Memory Care Facility after arriving at the facility, Clara was informed that she was not on the permitted visitors list and denied any visitation with Fred. Clara's phone calls and messages to Defendant continued to be ignored. The unexpected turn in Defendant's actions since Fred's move to Issaquah, Washington was unexplained and concerning. Due to Defendant's intentional insulation, Plaintiffs were unable to communicate with Fred after moving him to Washington.

19.     Shortly after moving to the state of Washington, Fred purportedly amended and completely restated the Lieberman Survivor Trust on December 17, 2021 (the "2021 Restatement"). A true and complete copy of the 2021 Restatement is attached hereto and incorporated herein as Exhibit B.

20.     Fred again purportedly amended and completely restated the Lieberman Survivor Trust on June 15, 2022 (the "Second Restatement"). A true and complete copy of the Second Restatement is attached hereto and incorporated herein as Exhibit C.  Hereinafter, the 2021 Restatement and the Second Restatement shall collectively be referred to as the "2022 Restatement."

21.     On September 3, 2022, Fred executed the Second Amendment to the Lieberman Survivor Trust (the "Second Amendment"). A true and complete copy of the Second Amendment is attached hereto and incorporated herein as Exhibit D.

22.     On or around February 10, 2025, Plaintiffs, via email correspondence,

PALMER LAW GROUP, a PLC
2441 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 573-0761

5

each received a Notification of Trustee pursuant to California Probate Code §16061.7 regarding the Lieberman Survivor Trust. While the Notification of Trustee is dated February 10, 2025, the proof of service states February 16, 2021. A true and complete copy of the Notification of Trustee is attached hereto and incorporated herein as Exhibit E. Plaintiffs were never informed by Defendant of Fred's passing or provided notice of any memorial or funeral services. After receiving the Notification of Trustee, Plaintiffs investigated and discovered Fred passed away on March 17, 2024. Plaintiffs were unaware of the terms of the 2022 Restatement or the Second Amendment.

23. Plaintiffs seek to invalidate the 2022 Restatement and the Second Amendment on the grounds of Defendant's fraud and undue influence on Fred, and Fred's lack of testamentary capacity. Consequently, Plaintiffs assert the only valid enforceable terms of the Lieberman Survivor Trust are the terms of the 2015 Trust.

**A.    Trust Creation And Beneficiaries.**

24. Fred and Martha are the grantors of the 2015 Trust which was created on May 27, 2015 (*see* Exhibit A).

25. Fred and Martha were appointed as the original trustees of the 2015 Trust.

26. Martha passed away on August 2, 2019 at Malibu, California.

27. Article Two of the 2015 Trust, entitled "Family Information," identifies all the Plaintiffs and the Defendant as the five children of Fred and Martha. The Defendant is Fred's child and not the biological or adopted child of Martha. All the Plaintiffs are Martha's children and not the biological or adopted children of Fred. The 2015 Trust unequivocally expressed Fred's and Martha's intent that the children/stepchildren of their "blended" family be considered as "our children" and "our descendants."

28. Article Five of the 2015 Trust, entitled "Administration of Our Trust

PALMER LAW GROUP, a PLC

upon the Death of Grantor," states that after the first Grantor dies, the surviving Grantor's community property and separate property interest in the 2015 Trust are to be referred to as the surviving Grantor's trust property. The surviving Grantor's trust property will be referred to as the Survivor's Trust. The deceased Grantor's community property and separate property interest in the 2015 Trust are to be referred to as the deceased Grantor's trust property.

29.    Article Seven of the 2015 Trust, entitled "The Survivor's Trust," instructs the Trustee, in mandatory language, to distribute any of the remaining deceased Grantor's trust property to the Lieberman Survivor Trust.

30.    Fred was the surviving Trustee of the 2015 Trust and the initial Trustee and lifetime beneficiary of the Lieberman Survivor Trust.

31.    On August 2, 2019, when Martha passed away, by operation of the terms of the 2015 Trust, the Lieberman Survivor Trust was established.

32.    Upon Martha's passing, Plaintiffs and Defendant are the beneficiaries of any assets of the Lieberman Survivor Trust.

33.    Plaintiff Gloria Londono is the successor trustee of the 2015 Trust and the Lieberman Survivor Trust.

**B.    Invalid Trust Instruments.**

34.    On June 15, 2022, Fred purportedly executed the 2022 Restatement while housed at the Aegis Assisted Living & Memory Care Facility in Issaquah, Washington.

35.    On September 3, 2022, Fred purportedly executed the Second Amendment while housed at the Aegis Assisted Living & Memory Care Facility in Issaquah, Washington.

**C.    Consequence of 2022 Restatement And Second Amendment.**

36.    The 2022 Restatement made two substantial changes to the Lieberman Survivor Trust.  First, Fred allegedly replaced Gloria Londono with Defendant as

7

COMPLAINT

the Successor Trustee.  Second, Martha's and Fred's references to "my children" are now replaced with reference to Defendant, only. The reference to "my descendants" remains and is to "my children."  Fred indicates that "I have also provided for the following individuals in this trust: Clara Londono, Gloria Londono, Luis Londono, and Miguel Londono." However, the 2022 Restatement does not contain an expressed specific bequest of an asset or assets to the Plaintiffs. Though the Second Amendment completely removes the names of the Plaintiffs from the Lieberman Survivor Trust.

## **FIRST CLAIM FOR RELIEF**

### **(For Declaratory Relief Against Defendant Suzanne Lieberman)**

37.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 36 as if fully set forth herein.

38.    An actual controversy exists between Plaintiffs and Defendant.

39.    Plaintiffs and Defendant have conflicting claims regarding the validity of the 2022 Restatement and Second Amendment to the Lieberman Survivor Trust, which directly affects their legal rights as beneficiaries of the trust.

40.    The 2015 Trust clearly stated Fred and Martha's intent to treat all children and stepchildren as "our children" and "our descendants," establishing an equal distribution scheme for all five children.

41.    The controversy is justiciable in character.

42.    The dispute between Plaintiffs and Defendant involves the interpretation and validity of trust documents, which is a matter appropriate for judicial determination.

43.    The Court has jurisdiction over the parties and subject matter.

44.    This Court has jurisdiction over this action pursuant to the Declaratory Judgment Act, 28 USCS § 2201.

45.    The Ninth Circuit has consistently recognized that federal courts may

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 673-0763

1  exercise jurisdiction over trust disputes where diversity requirements are met and

2  the controversy is ripe for adjudication.

3      46.   The actions of Defendant in influencing the amendment of trust

4  documents directly impact the substantive rights of Plaintiffs as beneficiaries under

5  the original trust instrument.

6      47.   Plaintiffs seek a judicial declaration that the 2022 Restatement and

7  Second Amendment are invalid due to undue influence and lack of capacity, and that

8  the original 2015 Trust remains the controlling document governing the distribution

9  of trust assets.

10              **SECOND CLAIM FOR RELIEF**

11    **(For Breach of Fiduciary Duty Against Defendant Suzanne Lieberman)**

12      48.   Plaintiffs reallege and incorporate by reference paragraphs 1 through

13  47 as if fully set forth herein.

14      49.   Defendant Suzanne Lieberman, as a trustee of the Lieberman Survivor

15  Trust, owed fiduciary duties to Plaintiffs as beneficiaries of the trust. These duties

16  included, but were not limited to, duties of loyalty, care, good faith, and full

17  disclosure.

18      50.   A fiduciary relationship existed between Defendant and Fred

19  Lieberman, as Defendant exercised substantial control over Fred's person and

20  property while he resided at the Aegis Assisted Living & Memory Care Facility in

21  Issaquah, Washington.

22      51.   Fred was in a dependent situation in which Defendant, as his daughter

23  and fiduciary, occupied a dominant role, particularly after Martha's death in August

24  2019.

25      52.   Fred reposed trust and confidence in Defendant, relying on her for his

26  care, financial management, and communication with other family members.

27      53.   By way of some samples, Defendant breached her fiduciary duties to

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 873-0761

9

Plaintiffs in the following ways: (1) by participating in and procuring the preparation and execution of the 2022 Restatement and Second Amendment under circumstances where Defendant was instrumental in their creation with no notification to Plaintiffs; (2) isolating Fred Lieberman from Plaintiffs, thereby preventing them from having reasonable access to their stepfather; (3) failing to provide independent advice to Fred regarding the trust amendments; (4) by orchestrating haphazard changes to the trust in secrecy and haste; (5) apparently influencing Fred to change his attitude toward Plaintiffs, his stepchildren; (6) by facilitating a substantial change in the plan for disposition of property that resulted in an unnatural and unjust gift benefiting Defendant at Plaintiffs' expense; (7) exploiting Fred's susceptibility to influence while he resided in an assisted living and memory care facility; and (8) by failing to inform Plaintiffs of Fred's death in March 2024, thereby depriving them of the opportunity to attend funeral services and properly mourn their stepfather.

54.    Defendant's actions were undertaken at a time when Fred was particularly vulnerable due to his advanced age, declining health, and residence in a memory care facility, making him especially susceptible to Defendant's influence.

55.    The factual allegations set forth above provide sufficient inference to state a claim of undue influence, as they demonstrate that Fred Lieberman was deprived of his free will in the execution of the 2022 Restatement and Second Amendment.

56.    Defendant's multiple breaches of fiduciary duty directly and proximately caused damage to Plaintiffs by depriving them of their rightful inheritance as beneficiaries under the original 2015 Trust.

57.    The factual content alleged herein, and the reasonable inferences that can be drawn from that content, are plausibly suggestive of a claim entitling Plaintiffs to relief for breach of fiduciary duty.

58. As a direct and proximate result of Defendant's breaches of fiduciary duty, Plaintiffs have suffered damages in an amount to be proven at trial but exceeding $75,000.

59. Defendant's conduct was willful, wanton, malicious, and oppressive, justifying an award of punitive damages.

60. As a direct and proximate result of Defendant's breaches of fiduciary duty, Plaintiffs have suffered damages including the potential loss of proceeds from the sale of the Malibu Residence.

61. As a direct and proximate result of Defendant's breaches of fiduciary duty, Plaintiffs have suffered emotional distress from being denied contact with Fred before his death and not being informed of his passing.

## THIRD CLAIM FOR RELIEF

### (For Unjust Enrichment Against Defendant Suzanne Lieberman)

62. Plaintiffs reallege and incorporate by reference paragraphs 1 through 61 as if fully set forth herein.

63. Prior to the execution of the 2022 Restatement and Second Amendment to the Lieberman Survivor Trust, Plaintiffs had a valid expectancy of inheritance under the 2015 Trust, which clearly established Fred and Martha's intent to treat all children and stepchildren as "our children" and "our descendants," with an equal distribution scheme for all five children.

64. Defendant knew of Plaintiffs' expectancy of inheritance under the 2015 Trust, as she was aware of the terms of the original trust instrument and the equal distribution scheme established by Fred and Martha. Defendant was well aware that Martha had predeceased Fred, and that her actions were interfering with and frustrating Martha's testamentary intent at the time of her passing.

65. Defendant intentionally therefore interfered with Plaintiffs' expected

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 873-0761

inheritance through improper means, including but not limited to, the following: (1) isolating Fred Lieberman from Plaintiffs after Martha's death in August 2019; (2) taking advantage of Fred's vulnerability due to his advanced age, declining health, and residence in a memory care facility; (3) taking her 90-year-old father, Fred, to a lawyer with whom he had no prior professional relationship to execute documents disinheriting his stepchildren; (4) arranging for the execution of the 2022 Restatement and Second Amendment in haste and secrecy; (5) concealing the execution of the trust amendments from Plaintiffs; (6) actively participating in the preparation and execution of the trust amendments that benefited her at Plaintiffs' expense; and (7) failing to inform Plaintiffs of Fred's death, thereby depriving them of the opportunity to attend funeral services.

66.     Defendant's actions were undertaken with the specific intent to harm and to interfere with Plaintiffs and their expected inheritance and to redirect Fred's assets solely to herself.

67.     Defendant's intentional interference was accomplished through improper means, including undue influence, breach of fiduciary duty, and taking advantage of Fred Lieberman's susceptibility to influence while he resided in an assisted living and memory care facility.

68.     The factual allegations set forth above, when construed in the light most favorable to Plaintiffs, plausibly suggest an entitlement to relief for intentional interference with expected inheritance.

69.     As a direct and proximate result of Defendant's intentional interference with Plaintiffs' expected inheritance, Plaintiffs have been damaged in an amount to be proven at trial but exceeding $75,000.

70.     Defendant's conduct was willful, wanton, malicious, and oppressive, justifying an award of punitive damages.

///

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 873-0761

## FOURTH CLAIM FOR RELIEF

### (For Promissory Estoppel Against Defendant Suzanne Lieberman)

71.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 70 as if fully set forth herein.

72.    Fred and Martha made a clear and definite promise in the 2015 Trust to treat all children and stepchildren equally as "our children" and "our descendants" without distinction.

73.    Fred and Martha expected Plaintiffs to rely on this promise of equal treatment as evidenced by the explicit language in Article Two of the 2015 Trust. Martha passed away on August 2, 2019, in Malibu, California with expectations that her written instructions contained in the 2015 Trust would be honored.

74.    Plaintiffs did in fact reasonably rely on this promise of equal treatment.

75.    Plaintiffs provided emotional and physical support to Fred following Martha's death, including Miguel staying with Fred for the first month after Martha's passing to provide support during that painful transition.

76.    Gloria provided constant assistance to Fred from June 2020 to October 2020 during his medical crisis and mental breakdown.

77.    Plaintiffs helped manage Fred's Malibu Residence until it was sold in August 2022, with Plaintiffs Gloria and Clara preparing the home at great cost and investing time to produce rental income from December 2020 until the eventual sale.

78.    Plaintiffs' reliance on the promise of equal treatment was reasonable and foreseeable given the express terms of the 2015 Trust and the close family relationship that had developed over thirty years.

79.    Plaintiffs suffered detriment as a result of their reliance on the promise of equal treatment.

80.    Defendant rewrote the wishes of Martha for her children and exerted

13

undue influence over Fred during his period of declining health after relocating him to Washington, forcing him to execute the 2021 Restatement, Second Restatement, and Second Amendment to the Lieberman Survivor Trust that altered the distribution scheme to Plaintiffs' detriment.

81.    Defendant cruelly isolated Fred from Plaintiffs after moving him to Washington, preventing Clara Londono from visiting Fred at the Aegis Assisted Living & Memory Care Facility and blocking and ignoring Plaintiffs' repeated communications.

82.    Plaintiffs were suddenly required to vacate the Malibu Residence without information about the sale or proceeds, with Gloria Londono solely bearing the overwhelming task of clearing the residence.

83.    Plaintiffs were not informed of Fred's death in March 2024 and were denied the opportunity to say goodbye or to attend any memorial services.

84.    Plaintiffs were unaware of the amended trust terms until receiving notice in February 2025, nearly a year after Fred's death.

85.    Injustice can only be avoided by enforcement of the original promise of equal treatment as expressed in the 2015 Trust.

86.    The Ninth Circuit has recognized promissory estoppel as an equitable doctrine that prevents a party from reneging on a promise made when the promisee has reasonably relied on that promise to their detriment.

87.    Under Ninth Circuit precedent, the elements of promissory estoppel are satisfied when: (1) a promise is made; (2) the promisor should reasonably expect the promise to induce action or forbearance; (3) the promise does induce such action or forbearance; and (4) injustice can only be avoided by enforcement of the promise.

88.    The promise in the 2015 Trust to treat all children equally was clear and definite, Fred and Martha reasonably expected Plaintiffs to rely on this promise, Plaintiffs did reasonably rely on this promise to their detriment, and injustice can

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 877-8764

only be avoided by enforcement of the original trust terms.  And despite Defendant's best efforts, this promise still remains in the invalid instruments concocted by Defendant.

89.    Defendant's actions in isolating Fred, influencing him to amend the trust, and concealing information from Plaintiffs directly interfered with the fulfillment of the promise made in the 2015 Trust.

## FIFTH CLAIM FOR RELIEF

### (For Constructive Fraud Against Defendant Suzanne Lieberman)

90.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 89 as if fully set forth herein.

91.    Defendant owed a duty of good faith and fair dealing to Plaintiffs as co-beneficiaries of the 2015 Trust.

92.    A fiduciary relationship existed between Defendant and Plaintiffs as co-beneficiaries of the 2015 Trust, which required Defendant to act with the utmost good faith and in the best interests of all beneficiaries.

93.    Under Ninth Circuit precedent, constructive fraud arises when a person who has a fiduciary duty takes advantage of their position of trust to the detriment of the person to whom the duty is owed.

94.    Defendant abused her position of trust and confidence with Fred to unduly influence him to execute amendments to the 2015 Trust that benefited her to the detriment of Plaintiffs.

95.    Defendant's actions constituted constructive fraud by taking advantage of Fred's declining health and vulnerability to secure amendments to the trust that were contrary to the intent of the original 2015 Trust.

96.    Defendant isolated Fred from Plaintiffs after relocating him to Washington, preventing Clara Londono from visiting Fred at the Aegis Assisted

1 Living & Memory Care Facility and ignoring Plaintiffs' communications.

2 97. Defendant concealed material information from Plaintiffs regarding

3 Fred's health status, the sale of the Malibu Residence, and the amendments to the

4 trust.

5 98. Defendant failed to inform Plaintiffs of Fred's death in March 2024,

6 denying them the opportunity to say goodbye or attend any memorial services.

7 99. Defendant's conduct was deceptive, unfair, and in violation of the

8 fiduciary duties owed to Plaintiffs as co-beneficiaries of the 2015 Trust.

9 100. The Ninth Circuit recognizes that constructive fraud does not require

10 actual dishonesty or intent to deceive but rather focuses on the breach of legal or

11 equitable duty that tends to deceive others, violates public or private confidence, or

12 injures public interests.

13 101. Defendant's actions satisfy the elements of constructive fraud under

14 Ninth Circuit precedent, as she breached her fiduciary duties, took advantage of a

15 position of trust and confidence, and caused injury to Plaintiffs.

16 102. As a direct and proximate result of Defendant's constructive fraud,

17 Plaintiffs have suffered damages, including the loss of their rightful inheritance

18 under the original 2015 Trust and the proceeds from the sale of the Malibu

19 Residence.

20 103. Plaintiffs are entitled to equitable remedies including the imposition of

21 a constructive trust on assets wrongfully obtained by Defendant through her

22 constructive fraud.

23 104. The Ninth Circuit has consistently held that constructive fraud provides

24 grounds for invalidating trust amendments procured through abuse of a confidential

25 relationship, particularly when the amendments benefit the person who procured

26 them.

27 105. Defendant's actions warrant the invalidation of the 2022 Restatement

16

COMPLAINT

and Second Amendment to the Lieberman Survivor Trust and the restoration of the original terms of the 2015 Trust.

106.   As a direct and proximate result of Defendant's constructive fraud, Plaintiffs have suffered damages, including the loss of their rightful inheritance under the original 2015 Trust and the proceeds from the sale of the Malibu Residence.

**SIXTH CLAIM FOR RELIEF**

**(For Conversion Against Defendant Lieberman)**

107.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 106 as if fully set forth herein.

108.   Under Ninth Circuit precedent, conversion occurs when a party wrongfully exercises dominion and control over another's property, depriving them of their rightful possession or use.

109.   Plaintiffs have a property interest in the trust assets and proceeds, including the proceeds from the sale of the Malibu Residence, under the terms of the original 2015 Trust.

110.   Defendant has wrongfully exercised dominion and control over trust assets and proceeds, including the proceeds from the sale of the Malibu Residence, to the exclusion of Plaintiffs.

111.   The Ninth Circuit recognizes that beneficiaries of a trust have a legally protected interest in trust assets that can form the basis of a conversion claim when those assets are wrongfully appropriated.

112.   Defendant's actions in isolating Fred, influencing him to amend the trust, and concealing information from Plaintiffs have deprived Plaintiffs of their rightful inheritance and access to trust assets.

113.   Defendant's retention and control of trust assets and proceeds are

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 673-0767

17

COMPLAINT

1   inconsistent with Plaintiffs' rights under the original 2015 Trust.

2   114.   The Ninth Circuit has established that the unauthorized assumption and
3   exercise of ownership rights over property belonging to another constitutes
4   conversion, regardless of good faith or mistake.

5   115.   Defendant's failure to disclose the sale of the Malibu Residence, the
6   disposition of the proceeds, and Fred's death further demonstrates her intent to
7   convert trust assets for her sole benefit.

8   116.   The Ninth Circuit permits recovery for conversion of both tangible
9   property and intangible property rights, including beneficial interests in trusts.

10   117.   As a direct and proximate result of Defendant's conversion, Plaintiffs
11   have suffered damages, including the loss of their rightful inheritance under the
12   original 2015 Trust and the proceeds from the sale of the Malibu Residence.

13   118.   Under Ninth Circuit jurisprudence, Plaintiffs are entitled to the full
14   value of the converted property, plus interest from the date of conversion, as well as
15   consequential damages resulting from the deprivation of their property rights.

16   **PRAYER FOR RELIEF**

17   WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

18   1.   For compensatory damages for breach of fiduciary duty in the amount
19   of $7,000,000.00, or such other amount to be proven at trial, but exceeding $75,000,
20   consistent with Ninth Circuit standards for fiduciary breaches in trust administration
21   cases;

22   2.   For disgorgement of all profits and benefits Defendant wrongfully
23   obtained through her breach of fiduciary duties, as recognized by Ninth Circuit
24   precedent regarding remedies for fiduciary breaches;

25   3.   For restitution based on unjust enrichment under Ninth Circuit
26   equitable principles, requiring Defendant to return all assets and proceeds
27   wrongfully obtained;

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: +01 6177 07761

4.      For imposition of a constructive trust on any assets Defendant received or controls as a result of the invalid trust amendments, applying Ninth Circuit standards for equitable remedies in trust disputes;

5.      For specific performance of the promises made in the original 2015 Trust under Ninth Circuit promissory estoppel doctrine;

6.      For damages for constructive fraud as recognized by Ninth Circuit precedent, including both economic damages and emotional distress damages arising from family relationship and inheritance expectations;

7.      For damages for conversion of trust assets under Ninth Circuit standards, including the full value of converted property plus interest from the date of conversion;

8.      For an order requiring Defendant to provide a full accounting of all trust assets, including the proceeds from the sale of the Malibu Residence and any distributions made from the trust since Martha Londono's death in 2019;

9.      For punitive damages for breach of fiduciary duty in an amount of $10,000,000.00 or such other amount to be determined at trial, consistent with Ninth Circuit standards for egregious breaches of trust;

10.     For reasonable attorney's fees and costs incurred in bringing this action, as permitted under Ninth Circuit trust litigation precedent; and

11.     For all costs incurred by Plaintiffs to date and to be incurred by Plaintiffs hereafter in connection with this action;

12.     For prejudgment and post-judgment interest at the maximum rate permitted by law under Ninth Circuit precedent; and

13.     For such other and further relief as the Court deems just and proper under Ninth Circuit equitable principles.

///

///

19
COMPLAINT

1  Dated August 19, 2025.          Respectfully submitted,

2                                  PALMER LAW GROUP, a PLC

3

4

5                                  By: _____ .

6                                        William W. Palmer

7                                  *Attorney for plaintiffs Gloria Londono, Clara*
                                   *Londono, Luis Londono, and Miguel Londono*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a trial by jury.

Dated: August 19, 2025          PALMER LAW GROUP, a PLC

By:_____.

William W. Palmer

*Attorney for plaintiffs Gloria Londono, Clara Londono, Luis Londono, and Miguel Londono.*

Exhibit A

# THE FRED L. LIEBERMAN AND MARTHA LONDONO LIVING TRUST

## May 27, 2015

LAW OFFICES
**DAVID LEE RICE, APLC**
TAX, ESTATE PLANNING AND ELDER LAW
2780 SKYPARK DRIVE, SUITE 475
TORRANCE, CALIFORNIA 90505
(310) 517-8600

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# The Fred L. Lieberman and Martha Londono Living Trust
## Table of Contents

**Article One Establishing Our Trust** ................................................................. 1-1
Section 1.01          Identifying Our Trust............................................... 1-1
Section 1.02          Reliance by Third Parties......................................... 1-1
Section 1.03          Transferring Property to Our Trust......................... 1-1
Section 1.04          Powers Reserved by Us as Grantors ...................... 1-2

**Article Two Family Information**................................................................. 2-1

**Article Three Trustee Succession** ................................................................. 3-1
Section 3.01          Resignation of a Trustee ........................................ 3-1
Section 3.02          Trustee Succession while Both of Us Are Alive ................... 3-1
Section 3.03          Trustee Succession after the Death of Either or Both of
                      Us.......................................................................... 3-2
Section 3.04          Unfilled Vacancy .................................................... 3-2
Section 3.05          Appointment of a Co-Trustee ................................. 3-3
Section 3.06          Corporate Fiduciaries.............................................. 3-3
Section 3.07          Incapacity of a Trustee........................................... 3-3
Section 3.08          Appointment of Independent Special Trustee ....................... 3-3
Section 3.09          Documenting Change of Trustee Status .................. 3-3
Section 3.10          Notice of Removal and Appointment ...................... 3-4

**Article Four Administration of Our Trust during a Grantor's
              Incapacity** ............................................................. 4-1
Section 4.01          Distributions for the Incapacitated Grantor's Benefit ........... 4-1
Section 4.02          Distributions for the Benefit of the Other Grantor and
                      Our Dependents ...................................................... 4-1
Section 4.03          Guidance for Making Distributions ........................ 4-1
Section 4.04          Power to Gift.......................................................... 4-2

**Article Five Administration of Our Trust upon the Death of a Grantor**....... 5-1
Section 5.01          Surviving Grantor's Trust Property and Deceased
                      Grantor's Trust Property ......................................... 5-1
Section 5.02          Payment of Expenses and Taxes.............................. 5-1
Section 5.03          Payment of Death Taxes ......................................... 5-1

**Article Six Disposition of Tangible Personal Property** ............................. 6-1
Section 6.01          Distribution of Tangible Personal Property by
                      Memorandum.......................................................... 6-1

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

Section 6.02                Distribution of Remaining Tangible Personal Property ........ 6-1

**Article Seven The Survivor's Trust**................................................................**7-1**
Section 7.01                Trustee of the Survivor's Trust..............................................7-1
Section 7.02                The Surviving Grantor's Right to Amend ............................7-1
Section 7.03                Survivor's Trust as Only Trust .............................................7-1
Section 7.04                Distribution of Income and Principal ..................................7-1
Section 7.05                General Power of Appointment .............................................7-1
Section 7.06                Administration following the Surviving Grantor's
                           Death.....................................................................................7-1

**Article Eight Distribution to Our Descendants** ..........................................**8-1**

**Article Nine Remote Contingent Distribution** ...........................................**9-1**

**Article Ten Distributions to Underage and Incapacitated Beneficiaries .. 10-1**
Section 10.01               Special Needs Trust .............................................................10-1
Section 10.02               Underage and Incapacitated Beneficiaries.........................10-4
Section 10.03               Methods of Distribution.......................................................10-4
Section 10.04               Retention in Trust ................................................................10-5
Section 10.05               Application of Article ...........................................................10-6

**Article Eleven Trust Administration and Trustee Powers** .........................**11-1**
Section 11.01               No Court Supervision ..........................................................11-1
Section 11.02               Distributions to Beneficiaries .............................................11-1
Section 11.03               Beneficiary's Status .............................................................11-1
Section 11.04               Majority Control ...................................................................11-1
Section 11.05               Delegation of Trustee Authority...........................................11-2
Section 11.06               Trustee Exoneration..............................................................11-2
Section 11.07               Trustee Compensation..........................................................11-2
Section 11.08               Exercise of Testamentary Power of Appointment...............11-2
Section 11.09               Determination of Principal and Income...............................11-3
Section 11.10               Additions to Separate Trusts................................................11-3
Section 11.11               Authority to Merge or Sever Trusts.....................................11-3
Section 11.12               Authority to Terminate Trusts .............................................11-4
Section 11.13               Reports..................................................................................11-4
Section 11.14               Our Trustee's Powers ...........................................................11-4

**Article Twelve General Provisions** .............................................................**12-1**
Section 12.01               Maximum Term for Trusts ...................................................12-1
Section 12.02               Spendthrift Provision...........................................................12-1
Section 12.03               Contest Provision..................................................................12-1
Section 12.04               Survivorship Presumption ...................................................12-2
Section 12.05               Divorce or Annulment ..........................................................12-2

Fred L. Lieberman and Martha Londono Living Trust

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

Section 12.06    Changing the Governing Law and Situs of
                Administration .................................................................. 12-2
Section 12.07    Definitions ........................................................................ 12-2
Section 12.08    General Provisions and Rules of Construction.................... 12-7

Fred L. Lieberman and Martha Londono Living Trust

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# The Fred L. Lieberman and Martha Londono Living Trust

## Article One
## Establishing Our Trust

The date of this trust is May 27, 2015. The parties to this trust are Fred L. Lieberman and Martha Londono (the *Grantors*) and Fred L. Lieberman and Martha Londono (collectively, our *Trustee*).

We intend to create a valid trust under the laws of California and under the laws of any state in which any trust created under this trust document is administered. The terms of this trust prevail over any provision of California law, except those provisions that are mandatory and may not be waived.

### Section 1.01    Identifying Our Trust

To the extent practicable, for the purpose of transferring property to our trust or identifying our trust in any beneficiary or pay-on-death designation, our trust should be identified as:

> "Fred L. Lieberman and Martha Londono, Trustees, of the Fred L. Lieberman and Martha Londono Living Trust dated May 27, 2015, and any amendments thereto."

### Section 1.02    Reliance by Third Parties

To protect the confidentiality of this instrument, our Trustee may use an affidavit or a certification of trust that identifies our Trustee and sets forth the authority of our Trustee to transact business on behalf of our trust instead of providing a copy of this instrument. The affidavit or certification may include pertinent pages from this instrument, including title or signature pages. A third party dealing with our Trustee is not required to inquire into the terms of this instrument or our Trustee's authority, to see to the proper application of money paid or property delivered to our Trustee, or to inquire into our Trustee's authority as to any transaction.

### Section 1.03    Transferring Property to Our Trust

By executing this instrument, we transfer, convey, and assign to our Trustee the trust property described in the attached schedules. Our Trustee accepts and agrees to hold the property transferred to the trust as trust property. Any additional property transferred to our trust must be accepted by our Trustee. Our Trustee shall hold, administer, and dispose of all accepted trust property for our benefit and for the benefit of our beneficiaries, in accordance with the terms of this instrument. Any community property conveyed to our trust, including the net income from community property and the proceeds from the sale of community property, will retain its character as community

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

property while we are alive and married to the same extent as if it had not been conveyed to our trust.

## Section 1.04     Powers Reserved by Us as Grantors

As Grantors, we retain the powers set forth in this Section in addition to any powers that we reserve in other provisions of this instrument.

### (a)     Action on Behalf of Our Trust

Whenever both of us are serving as Trustee, either or both of us may act for and conduct business on behalf of our trust without the consent of any other Trustee.

### (b)     Amendment, Restatement, or Revocation

Acting jointly, we may amend, restate, or revoke this instrument, in whole or in part, for any purpose. Each of us, individually and acting alone, may:

> amend, restate, or revoke this trust, in whole or in part, as it relates to the acting Grantor's separate property; and

> amend, restate, or revoke this trust, in whole or in part, as it relates to the acting Grantor's interest in the community property, so long as it does not affect either of our rights and interests in the community property.

Any amendment, restatement, or revocation must be made in writing and delivered to the then-serving Trustee.

### (c)     Addition or Removal of Trust Property

Either of us may add property to our trust. Both of us, acting jointly may remove any property from our trust. Each of us, acting alone, may remove our own separate property from our trust. Community property removed from our trust will retain its character as community property.

### (d)     Control of Income and Principal Distributions

We retain the right to control the distribution of income and principal from our trust. We may direct our Trustee to distribute as much of the net income and principal of the trust property as we consider advisable to us or to other persons or entities. Our Trustee may distribute the net income and principal to us or for our unrestricted use and benefit, even to the exhaustion of all trust property. Any undistributed net income is to be added to the principal of our trust.

### (e)     Approval of Investment Decisions

We reserve the absolute right to review and change our Trustee's investment decisions. But our Trustee is not required to seek our approval before making investment decisions.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

During any period that our trust is a Grantor Trust, the Taxpayer Identification Number of our trust will be Fred L. Lieberman's Social Security number, in accordance with Treasury Regulation Section 301.6109-1(a)(2).

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Two
# Family Information

We were married on December 10, 1988. Fred L. Lieberman is referred to in this trust as *husband*, and Martha Londono is referred to in this trust as *wife*.

We have five children, they are:

>   Susan Kristi Lieberman;
>
>   Clara Londono;
>
>   Luis Londono;
>
>   Gloria Londono; and
>
>   Miguel Londono

All references in this document to *our children* are references to these children.

Susan Kristi Lieberman is Fred L. Lieberman's child and not the biological or adopted child of Martha Londono. But for the purposes of this trust, Susan Kristi Lieberman will be considered to be the child of Martha Londono and included in references to our children.

Clara Londono, Luis Londono, Gloria Londono, and Miguel Londono are Martha Londono's children and not the biological or adopted children of Fred L. Lieberman. But for the purposes of this trust, Clara Londono, Luis Londono, Gloria Londono, and Miguel Londono will be considered to be the children of Fred L. Lieberman and included in references to our children.

References to *our descendants* are to our children and their descendants, including any deceased child's descendants.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Three
## Trustee Succession

### Section 3.01    Resignation of a Trustee

A Trustee may resign by giving written notice to either of us. If we are both incapacitated or deceased, a Trustee may resign by giving written notice to the trust's Income Beneficiaries and to any Co-Trustees.

Upon the resignation of Fred L. Lieberman, Martha Londono or Gloria Londono as Trustee, the resigning Trustee may appoint the resigning Trustee's successor in the manner set forth in Section 3.10, concurrent with the written notice described above. If the resigning Trustee fails to make the appointment, the other provisions of this Article regarding Trustee succession upon incapacity or death will govern, and the next named successor or successors to the resigning Trustee will serve in the order listed. Likewise, if no named successors are available to serve and the resigning Trustee fails to designate a successor, the other provisions of this Article regarding the filling of a vacant Trustee office will govern.

### Section 3.02    Trustee Succession while Both of Us Are Alive

This Section governs the removal and replacement of our Trustees while both of us are alive.

#### (a)    Our Right to Remove and Replace Trustees

By joint agreement, we may remove any Trustee at any time, with or without cause. If a Trustee is removed, resigns, or cannot continue to serve for any reason, either or both of us may serve as Trustee, we may name a Trustee to serve with either or both of us, or we may name a successor Trustee. If one of us is incapacitated, the other may remove any Trustee at any time, with or without cause. If a Trustee is removed, resigns, or cannot continue to serve for any reason, the non-incapacitated Grantor may serve as sole Trustee, name a Trustee to serve with the non-incapacitated Grantor, or name a successor Trustee.

#### (b)    Successor Trustee during Incapacity

During the incapacity of a Grantor, the other Grantor may serve as sole Trustee. If the other Grantor is unable or unwilling to serve for any reason, then we name Gloria Londono to serve as successor Trustee.

During any time both of us are incapacitated a majority of our children may remove any Trustee with or without cause. If the office of Trustee of a trust created under this instrument is vacant and no designated Trustee is able and willing to act during any time that both of us are incapacitated, a majority of our children may name a successor Trustee.

But if a Trustee vacancy arises due to resignation, and the resigning Trustee is one of the Trustees identified in Section 3.01, the previous

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

provisions apply only if the resigning Trustee fails to appoint a successor Trustee in the manner more fully set forth in Section 3.01.

## Section 3.03    Trustee Succession after the Death of Either or Both of Us

This Section governs the removal and replacement of our Trustees after the death of either or both of us.

### (a)    Upon the Death of a Grantor

Upon the death of a Grantor, the other Grantor may serve as sole Trustee of all trusts created under this instrument.

If the other Grantor is unable or unwilling to serve for any reason, then we name Gloria Londono to serve as successor Trustee.

After the death of one of us, the surviving Grantor may remove any Trustee with or without cause. If the surviving Grantor is incapacitated, a majority of our children may remove any Trustee with or without cause. After both of our deaths, a majority of the Income Beneficiaries of any trust created under this instrument may remove a Trustee of the trust, with or without cause.

A Trustee may be removed under this Subsection only if the person with the right of removal names an individual or a corporate fiduciary that simultaneously commences service as Trustee by the effective removal date.

If the office of Trustee of a trust created under this instrument is vacant and no designated successor Trustee is able and willing to act as Trustee, the surviving Grantor may name an individual or corporate fiduciary as successor Trustee. If the surviving Grantor is unable or unwilling to act, or if both of us are deceased, a majority of the Income Beneficiaries may name a successor Trustee. Any Trustee named under this Section must be an Independent Trustee. The right to remove or name a Trustee under this Subsection does not grant the person holding that right any of the powers of the Trustee. A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

But if a Trustee vacancy arises due to resignation, and the resigning Trustee is one of the Trustees identified in Section 3.01, the previous provisions apply only if the resigning Trustee fails to appoint a successor Trustee in the manner more fully set forth in Section 3.01.

## Section 3.04    Unfilled Vacancy

Any beneficiary may petition a court of competent jurisdiction to name a successor Trustee to fill any vacancy remaining unfilled after a period of 30 days. The court petitioned to name a Trustee will acquire jurisdiction over the trust only to the extent necessary to make the appointment. A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

### Section 3.05    Appointment of a Co-Trustee

Any individuals serving as our Trustee may name an individual or a corporate fiduciary as a Co-Trustee. The appointed Co-Trustee will not become a successor Trustee upon the death, resignation, or incapacity of the Trustee or Trustees naming the Co-Trustee, unless specifically named under this instrument's terms. The appointment of a Co-Trustee made under this Section may be revoked at any time with or without cause.

### Section 3.06    Corporate Fiduciaries

Any corporate fiduciary serving under this instrument as a Trustee must be a bank, trust company, or public charity that is qualified to act as a fiduciary under applicable federal or state law and must be an Independent Trustee.

### Section 3.07    Incapacity of a Trustee

If any individual Trustee becomes incapacitated, the incapacitated Trustee need not resign as Trustee. For Trustees other than one of us, a written, good-faith declaration of incapacity by the Co-Trustee or, if none, by the party designated to succeed the incapacitated Trustee, will terminate the trusteeship. If the Trustee designated in the written declaration objects in writing to termination of the trusteeship within five days of receiving the declaration of incapacity, a written opinion of incapacity signed by a physician who has examined this Trustee must be obtained before the trusteeship will be terminated for incapacity. The Trustee objecting to termination of trusteeship must sign the necessary medical releases needed to obtain the physician's written opinion of incapacity, or the trusteeship will be terminated without the physician's written opinion.

### Section 3.08    Appointment of Independent Special Trustee

If the Trustee of any trust created under this instrument is unwilling or unable to act with respect to any trust property or any provisions of this instrument for any reason, the Trustee may name a corporate fiduciary or an individual to act as an Independent Special Trustee with respect to the property or provision. The appointing Trustee may revoke the appointment at will.

An Independent Special Trustee may exercise all fiduciary powers granted by this instrument unless expressly limited elsewhere in this document or by the Trustee in the instrument naming the Independent Special Trustee. An Independent Special Trustee may resign at any time by delivering written notice to the Trustee. Notice of resignation becomes effective in accordance with the notice's terms.

### Section 3.09    Documenting Change of Trustee Status

Any appointment, removal, resignation, or other change in trusteeship must be in writing and signed by the person or persons exercising the power. The written notice must be dated, must specify the effective date and other terms regarding the change of Trustee status, and must be delivered as specified in Section 3.10 of this instrument.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**Section 3.10     Notice of Removal and Appointment**

Notice of removal must be delivered to the Trustee being removed, and to any other then-serving Trustees.  The notice of removal will be effective in accordance with its provisions.

Notice of appointment must be delivered to the successor Trustee and any other then-serving Trustees.  The appointment will become effective at the time of acceptance by the successor Trustee.  A copy of the notice of appointment may be attached to this instrument.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Four
## Administration of Our Trust during a Grantor's Incapacity

During any period when one of us is incapacitated, our Trustee shall make distributions authorized in this Article from the community property and the incapacitated Grantor's separate property.

### Section 4.01    Distributions for the Incapacitated Grantor's Benefit

Our Trustee shall regularly and conscientiously make appropriate distributions of the net income and principal for the general welfare and comfort of an incapacitated Grantor under the circumstances existing at the time those distributions are made. Our Trustee may make distributions for the benefit of an incapacitated Grantor in any one or more of the following ways:

to the incapacitated Grantor, to the extent he or she is able to manage these distributions;

to other persons and entities for the incapacitated Grantor's use and benefit;

to an agent or attorney in fact authorized to act for the incapacitated Grantor under a legally valid durable power of attorney executed by the Grantor prior to incapacity; and

to a guardian or conservator for the incapacitated Grantor, who has assumed responsibility for the incapacitated Grantor under any court order, decree, or judgment issued by a court of competent jurisdiction.

### Section 4.02    Distributions for the Benefit of the Other Grantor and Our Dependents

Our Trustee may distribute as much of the net income and principal as our Trustee considers necessary for the health, education, maintenance or support of the non-incapacitated Grantor. Our Trustee may also distribute as much of the net income and principal as our Trustee considers necessary for the health, education, maintenance or support of other persons that our Trustee determines to be dependent on the incapacitated Grantor for support.

### Section 4.03    Guidance for Making Distributions

When making distributions under Section 4.01 and Section 4.02, our Trustee shall give consideration first to our needs and then to the needs of those persons dependent on us.

When making distributions under Section 4.02, we request that our Trustee, with sole and absolute discretion, consider other income and resources available to the beneficiaries. Our Trustee may make unequal distributions, distributions to some but not all beneficiaries, or no distributions.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

A distribution made to a beneficiary under this Section will not be considered an advancement, and will not be charged against the share of the beneficiary that may be distributable under any other provision of this instrument.

### Section 4.04    Power to Gift

Our Trustee is authorized, during the incapacity of one or both grantors and in coordination with our Attorney in Fact in our Durable Power of Attorney, to gift or otherwise spend down the assets in our trust for Medicaid eligibility and planning if it is in the best interest of the Grantor(s).

Our Trustee is also authorized to honor pledges and to continue to make gifts to charitable organizations that the incapacitated Grantor regularly supported before his or her incapacity in the previously given amounts. Our Trustee may continue any gifting program initiated by the incapacitated Grantor before his or her incapacity.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Five
# Administration of Our Trust upon the Death of a Grantor

### Section 5.01    Surviving Grantor's Trust Property and Deceased Grantor's Trust Property

After the first of us dies, the surviving Grantor's interest in any community property of our trust and the surviving Grantor's separate trust property will be referred to as the *surviving Grantor's trust property*. The surviving Grantor's trust property will be referred to as the Survivor's Trust, and our Trustees shall administer the Survivor's Trust as provided in Article Seven.

The deceased Grantor's interest in any community property of our trust and the deceased Grantor's separate trust property will be referred to as the *deceased Grantor's trust property*.

### Section 5.02    Payment of Expenses and Taxes

Our Trustee may pay from the deceased Grantor's trust property:

> expenses of the deceased Grantor's last illness, funeral, and burial or cremation, including expenses of memorials and memorial services;

> legally enforceable claims against the deceased Grantor or the deceased Grantor's estate;

> expenses of administering the trust and the deceased Grantor's estate; and

> court-ordered allowances for those dependent upon the deceased Grantor.

These payments are discretionary with our Trustee. Our Trustee may make decisions on these payments without regard to any limitation on payment of the expenses and may make payments without any court's approval. No third party may enforce any claim or right to payment against the trust by virtue of this discretionary authority.

If payment would decrease the deduction available to the deceased Grantor's estate, our Trustee may not pay any administrative expenses from assets passing to an organization that qualifies for the federal estate tax charitable deduction. Likewise, if payment would decrease the deduction available to the deceased Grantor's estate or violate the provisions of Treasury Regulation Section 20.2056(b)-4(d), our Trustee may not pay any administrative expenses from the net income of property qualifying for the estate tax marital deduction.

### Section 5.03    Payment of Death Taxes

For the purposes of this Article, the term *death taxes* refers to any taxes imposed by reason of the deceased Grantor's death by federal, state, or local authorities, including estate, inheritance, gift, and direct-skip generation-skipping transfer taxes. For purposes of this Section, *death taxes* does not include any additional estate tax imposed by Internal Revenue Code Section 2031(c)(5)(C), Section 2032A(c), or Section 2057(f), or any other comparable recapture tax imposed by any taxing authority. Nor does the term include

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

any generation-skipping transfer tax, other than a direct-skip generation-skipping transfer tax.

Except as otherwise specified in this Article or elsewhere in this trust, our Trustee shall apportion death taxes as provided under the laws of California in effect on the date of the deceased Grantor's death.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Six
# Disposition of Tangible Personal Property

### Section 6.01    Distribution of Tangible Personal Property by Memorandum

Each of us may dispose of items of tangible personal property by a signed written memorandum executed after we sign this instrument. The memorandum must refer to our trust and must reasonably identify the items and the beneficiary designated to receive each item. If either or both of us executes a memorandum, our Trustee shall incorporate the memorandum by reference into this instrument to the extent permitted by law.

Our Trustee shall distribute the items of tangible personal property listed in the memorandum as promptly as practicable after the death of a Grantor who completed the memorandum, together with any insurance policies covering the property and any claims under those policies, as provided in the memorandum. If either or both of us leave multiple written memoranda that conflict as to the disposition of any item of tangible personal property, the memorandum with the most recent date will control as to that item.

If the law does not permit incorporation of the memorandum by reference, the memorandum will then serve as an amendment to our trust, but only to the extent this amendment solely disposes of tangible personal property. We request that our Trustee follow our wishes and distribute the items of tangible personal property listed in the memorandum according to its terms.

### Section 6.02    Distribution of Remaining Tangible Personal Property

Our Trustee shall distribute any of the deceased Grantor's remaining tangible personal property not disposed of by a written memorandum to the surviving Grantor. If we are both deceased, our Trustee shall distribute the property under the terms of this instrument.

Until property distributed in accordance with this Article is delivered to the appropriate beneficiary or his or her Legal Representative, our Trustee shall pay the reasonable expenses of securing, storing, insuring, packing, transporting, and otherwise caring for the property as an administration expense. Except as otherwise provided in our trust, our Trustee shall distribute property under this Article subject to all liens, security interests, and other encumbrances on the property.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Seven
# The Survivor's Trust

Our Trustee shall allocate the remaining deceased Grantor's trust property to the Survivor's Trust.

Our Trustee shall administer the Survivor's Trust as provided in this Article.

### Section 7.01    Trustee of the Survivor's Trust

The surviving Grantor may serve as sole Trustee of the Survivor's Trust. The surviving Grantor may remove and replace the Trustee of the Survivor's Trust at any time, with or without cause. Notwithstanding any other provision in this instrument, the surviving Grantor may appoint any individual or corporate fiduciary to serve as Trustee of the Survivor's Trust.

### Section 7.02    The Surviving Grantor's Right to Amend

The surviving Grantor also has the absolute right to amend the Survivor's Trust's terms by restating them in full. The restated Survivor's Trust must be in writing and signed by the surviving Grantor and the Trustee of the restated Survivor's Trust.

The right to amend by restatement may be exercised only by the surviving Grantor.

### Section 7.03    Survivor's Trust as Only Trust

If the Survivor's Trust is the only trust established on the death of the deceased Grantor, a transfer to that trust need not be evidenced by a change of title.

### Section 7.04    Distribution of Income and Principal

Our Trustee shall distribute as much of the net income and principal of the Survivor's Trust to the surviving Grantor as he or she requests in writing for any reason.

Our Trustee may also distribute as much of the net income and principal of the Survivor's Trust to the surviving Grantor as our Trustee determines necessary or advisable for any purpose. Nothing contained in this instrument limits the surviving Grantor's right to receive the Survivor's Trust's entire net income.

### Section 7.05    General Power of Appointment

The surviving Grantor may appoint all or any portion of the principal and undistributed income remaining in the Survivor's Trust at the surviving Grantor's death among one or more persons or entities, including the creditors of the surviving Grantor's estate. The surviving Grantor has the exclusive right to exercise this general power of appointment.

### Section 7.06    Administration following the Surviving Grantor's Death

The Survivor's Trust becomes irrevocable upon the death of the surviving Grantor, and our Trustee shall administer the Survivor's Trust consistent with the provisions of Article Five for administration following the death of the first of us to die.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

Upon completion of the administrative tasks, our Trustee shall administer the unappointed balance or remainder of the Survivor's Trust as provided in Article Eight.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Eight
## Distribution to Our Descendants

Our Trustee shall distribute our remaining property outright and free of trust to our descendants, *per stirpes*. If a share is to be distributed to an incapacitated beneficiary or a beneficiary under the age of 21, our Trustee shall hold or distribute the share as provided in Article Ten.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

## Article Nine
## Remote Contingent Distribution

If at any time no person or entity is qualified to receive final distribution of any part of our trust estate, this portion of our trust estate must be distributed to those persons who would inherit it had the Grantor then died intestate owning the property, as determined and in the proportions provided by the laws of California then in effect relating to the succession of separate property not acquired from a parent, grandparent, or predeceased spouse.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Ten
# Distributions to Underage and Incapacitated Beneficiaries

### Section 10.01    Special Needs Trust

If under any provision of this trust our Trustee is directed to distribute to or for the benefit of any beneficiary when that person is receiving or applying for needs-based government benefits, our Trustee shall retain and administer the trust property as follows:

### (a)    Distributions for Special Needs

In its sole, absolute, and unreviewable discretion, our Trustee may distribute discretionary amounts of net income and principal for special needs of the beneficiary not otherwise provided by governmental financial assistance and benefits, or by the providers of services.

*Special needs* refers to the basic requirements for maintaining the good health, safety, and welfare when, in the discretion of our Trustee, these basic requirements are not being provided by any public agency, office, or department of any state or of the United States.

*Special needs* will also include medical and dental expenses; annual independent checkups; clothing and equipment; programs of training, education, treatment, and rehabilitation; private residential care; transportation, including vehicle purchases; maintenance; insurance; and essential dietary needs. *Special needs* may include spending money; additional food; clothing; electronic equipment such as radio, recording and playback, television and computer equipment; camping; vacations; athletic contests; movies; trips; and money to purchase appropriate gifts for relatives and friends.

Our Trustee will have no obligation to expend trust assets for these needs. But if our Trustee, in its sole, absolute and unreviewable discretion, decides to expend trust assets, under no circumstances should any amounts be paid to or reimbursed to the federal government, any state, or any governmental agency for any purpose, including for the care, support, and maintenance of the beneficiary.

### (b)    Objective to Promote Independence of the Beneficiary

While actions are in our Trustee's sole, absolute, and unreviewable discretion, all parties to this trust should be mindful that our wish is that the beneficiary live as independently, productively, and happily as possible.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**(c)    Trust Assets Not to be Considered Available Resource to the Beneficiary**

The purpose of the provisions of this Section 10.01 is to supplement any benefits received, or for which the beneficiary may be eligible, from various governmental assistance programs, and not to supplant any benefits of this kind. All actions of our Trustee shall be directed toward carrying out this intent, and our Trustee's discretion granted under this instrument to carry out this intent is sole, absolute, and unreviewable.

For purposes of determining the beneficiary's eligibility for any of these benefits, no part of the trust estate's principal or undistributed income will be considered available to the beneficiary for public benefit purposes. The beneficiary must not be considered to have access to the trust's principal or income, or to have ownership, right, authority, or power to convert any asset into cash for his or her own use.

Our Trustee shall hold, administer, and distribute all property allocated to this trust for the exclusive benefit of the beneficiary during his or her lifetime. All distributions from this trust share are in the sole, absolute, and unreviewable discretion of our Trustee, and the beneficiary is legally restricted from demanding trust assets for his or her support and maintenance.

In the event our Trustee is requested to release principal or income of the trust to or on behalf of the beneficiary to pay for equipment, medication, or services that any government agency is authorized to provide, or to petition a court or any other administrative agency for the release of trust principal or income for this purpose, our Trustee is authorized to deny this request and to take whatever administrative or judicial steps are necessary to continue the beneficiary's eligibility for benefits. This includes obtaining legal advice about the beneficiary's specific entitlement to public benefits and obtaining instructions from a court of competent jurisdiction ruling that neither the trust corpus nor the trust income is available to the beneficiary for eligibility purposes. Any expenses incurred by our Trustee in this regard, including reasonable attorney fees, will be a proper charge to the trust estate.

**(d)    Distribution Guidelines**

Our Trustee shall be responsible for determining what discretionary distributions will be made from this trust. Our Trustee may distribute discretionary amounts of income and principal to or for the benefit of the beneficiary for those special needs not otherwise provided by governmental financial assistance and benefits, or by the providers of services. Any undistributed income will be added to principal. In making distributions, our Trustee must:

> consider any other known income or resources of the beneficiary that are reasonably available;

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

consider all entitlement benefits from any government agency, including Social Security disability payments, Medicare, Medicaid (or any state Medicaid program equivalent), Supplemental Security Income (SSI), In-Home Support Service (IHSS), and any other special purpose benefits for which the beneficiary is eligible;

consider resource and income limitations of any assistance program;

make expenditures so that the beneficiary's standard of living will be comfortable and enjoyable;

not be obligated or compelled to make specific payments;

not pay or reimburse any amounts to any governmental agency or department, unless proper demand is made by this governmental agency or reimbursement is required by the state; and

not be liable for any loss of benefits.

**(e)    No Seeking of Order to Distribute**

For purposes of determining the beneficiary's state Medicaid program equivalent eligibility, no part of the trust estate's principal or undistributed income may be considered available to the beneficiary. Our Trustee shall deny any request by the beneficiary to:

release trust principal or income to or on behalf of the beneficiary to pay for equipment, medication, or services that the state Medicaid program equivalent would provide if the trust did not exist; or

petition a court or any other administrative agency for the release of trust principal or income for this purpose.

In its sole, absolute, and unreviewable discretion, our Trustee may take necessary administrative or legal steps to protect the beneficiary's state Medicaid program equivalent eligibility. This includes obtaining a ruling from a court of competent jurisdiction that the trust principal is not available to the beneficiary for purposes of determining state Medicaid program equivalent eligibility. Expenses for this action, including reasonable attorney fees, will be a proper charge to the trust estate.

**(f)    Indemnification of Trustee When Acting in Good Faith**

Our Trustee will be indemnified from the trust property for any loss or reduction of public benefits sustained by the beneficiary as a result of our Trustee exercising the authority granted to our Trustee under this Section in good faith.

Fred L. Lieberman and Martha Londono Living Trust

10-3

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**(g)  Distribution upon the Death of the Beneficiary**

Upon the beneficiary's death, our Trustee shall distribute or retain the remaining property according to the other provisions of this trust as though the provisions of this Section 10.01 had not been effective. If the other provisions of this trust provide for the beneficiary's share to be held in trust, then those provisions will be interpreted as though the beneficiary died after the establishment of that trust.

If the other provisions of this trust do not provide for the distribution or retention of the remaining property, then the beneficiary will have the testamentary limited power to appoint all or any portion of the principal and undistributed income remaining in the beneficiary's trust at his or her death among one or more persons or entities. But the beneficiary may not exercise this limited power of appointment to appoint to himself or herself, his or her estate, his or her creditors or the creditors of his or her estate.

We intend to create a limited power of appointment and not a general power of appointment as defined in Internal Revenue Code Section 2041.

If any part of the beneficiary's trust is not effectively appointed, our Trustee shall distribute the remaining unappointed balance *per stirpes* to the beneficiary's descendants. If the beneficiary has no then-living descendants, our Trustee shall distribute the unappointed balance *per stirpes* to the then-living descendants of the beneficiary's nearest lineal ancestor who was a descendant of ours or, if there is no then-living descendant, *per stirpes* to our descendants.

If we have no then-living descendants, our Trustee shall distribute the balance of the trust property as provided in Article Nine.

## Section 10.02   Underage and Incapacitated Beneficiaries

If our Trustee is authorized or directed under any provision of this trust to distribute net income or principal to a person who has not yet reached the age of 21 years or who is incapacitated as defined in Section 12.07(e), our Trustee may make the distribution by any one or more of the methods described in Section 10.03. Alternatively, our Trustee may retain the trust property in a separate trust to be administered by our Trustee under Section 10.04.

We request that before making a distribution to a beneficiary, our Trustee consider, to the extent reasonable, the ability the beneficiary has demonstrated in managing prior distributions of trust property.

## Section 10.03   Methods of Distribution

Our Trustee may distribute trust property for any beneficiary's benefit, subject to the provisions of Section 10.02 in any one or more of the following methods:

Our Trustee may distribute trust property directly to the beneficiary.

Fred L. Lieberman and Martha Londono Living Trust

10-4

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

Our Trustee may distribute trust property to the beneficiary's guardian, conservator, parent, other family member, or any person who has assumed the responsibility of caring for the beneficiary.

Our Trustee may distribute trust property to any person or entity, including our Trustee, as custodian for the beneficiary under the Uniform Transfers to Minors Act or similar statute.

Our Trustee may distribute trust property to other persons and entities for the beneficiary's use and benefit.

Our Trustee may distribute trust property to an agent or attorney in fact authorized to act for the beneficiary under a valid durable power of attorney executed by the beneficiary before becoming incapacitated.

### Section 10.04    Retention in Trust

Our Trustee may retain and administer trust property in a separate trust for any beneficiary's benefit, subject to the provisions of Section 10.02 as follows.

#### (a)    Distribution of Net Income and Principal

Our Independent Trustee may distribute to the beneficiary as much of the net income and principal of any trust created under this Section as our Independent Trustee advises for any purpose.  If there is no then-serving Independent Trustee, our Trustee shall distribute to the beneficiary as much of the net income and principal of the trust created under this Section as our Trustee advises for the beneficiary's health, education, maintenance or support.    Any undistributed net income will be accumulated and added to principal.

#### (b)    Right of Withdrawal

When the beneficiary whose trust is created under this Section either reaches the age of 21 years or is no longer incapacitated, the beneficiary may withdraw all or any portion of the accumulated net income and principal from the trust.

#### (c)    Distribution upon the Death of the Beneficiary

Subject to the terms of the next paragraph, the beneficiary whose trust is created under this Section may appoint all or any portion of the principal and undistributed net income remaining in the beneficiary's trust at the beneficiary's death among one or more persons or entities, and the creditors of the beneficiary's estate.   The beneficiary has the exclusive right to exercise this general power of appointment.

The beneficiary may not exercise this power of appointment to appoint to the beneficiary, the beneficiary's estate, the beneficiary's creditors, or creditors of the beneficiary's estate from the *limited share* of the beneficiary's trust.  For purposes of this power of appointment, the *limited share* of the beneficiary's trust is that portion of the beneficiary's trust that has an inclusion ratio for generation-skipping transfer tax purposes of zero

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

or that without the exercise of the power of appointment, would not constitute a taxable generation-skipping transfer at the beneficiary's death. If the generation-skipping tax does not then apply, the limited share will be the beneficiary's entire trust.

If any part of the beneficiary's trust is not effectively appointed, our Trustee shall distribute the remaining unappointed balance *per stirpes* to the beneficiary's descendants. If the beneficiary has no then-living descendants, our Trustee shall distribute the unappointed balance *per stirpes* to the then-living descendants of the beneficiary's nearest lineal ancestor who was a descendant of ours or, if there is no then-living descendant, *per stirpes* to our descendants.

If we have no then-living descendants, our Trustee shall distribute the balance of the trust property as provided in Article Nine.

## Section 10.05    Application of Article

Any decision made by our Trustee under this Article is final, controlling, and binding upon all beneficiaries subject to the provisions of this Article.

The provisions of this Article do not apply to distributions to either of us from any trust established under this trust.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Eleven
# Trust Administration and Trustee Powers

The terms of this trust prevail over any provision of California law, except those provisions that are mandatory and may not be waived.

## Section 11.01    No Court Supervision

This trust is to be administered expeditiously, consistent with the provisions of this instrument, free of judicial intervention, and without order, approval, or action of any court. Our trust will only be subject to the jurisdiction of a court if our Trustee or another interested party institutes a legal proceeding. To the extent permissible by law, our Trustee is not required to give any bond, surety, or security to make returns, inventories, appraisals, or accountings to any court.

## Section 11.02    Distributions to Beneficiaries

Whenever this instrument authorizes or directs our Trustee to make a distribution of net income or principal to a beneficiary, our Trustee may apply any property that otherwise could be distributed directly to the beneficiary for his or her benefit. Our Trustee does not have a duty to inquire into the beneficiary's ultimate disposition of the distributed property unless specifically directed otherwise by this instrument.

## Section 11.03    Beneficiary's Status

Until a Trustee receives notice of the incapacity, birth, marriage, death, or other event upon which a beneficiary's right to receive payments may depend, the Trustee is not liable for acting or not acting with respect to the event, or for disbursements made in good faith to persons whose interests may have been affected by the event. Unless otherwise provided in this instrument, the parent or Legal Representative may act on a minor or incapacitated beneficiary's behalf.

## Section 11.04    Majority Control

In all matters pertaining to the administration of any trust, unless otherwise expressly provided by the terms of this instrument, when more than two Trustees are serving, the concurrence and joinder of a majority of our Trustees is required. If only two Trustees are serving, the joinder of both of them is required. If a Trustee has released or is prohibited from exercising any power under any other provision of this instrument with respect to any action or property, then that Trustee will not be counted in the application of the preceding sentence, and the other then-serving Trustee or Trustees may exercise that power with respect to that action or property.

Any Trustee may dissent or abstain from a decision of the majority and be absolved from personal liability by registering the dissent or abstention in the trust records. The Trustee shall then act with the other Trustees in any way necessary or appropriate to effect the majority's decision.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

### Section 11.05    Delegation of Trustee Authority

Any Trustee may delegate the right to exercise any power granted to our Trustee in this instrument to any other Trustee by a written instrument. During the time a delegation under this Section is in effect, the Trustee to whom the delegation was made may exercise the power to the same extent as if the delegating Trustee had personally joined in the exercise of the power. The delegating Trustee may revoke the delegation at any time by giving written notice of revocation to the Trustee to whom the power was delegated.

### Section 11.06    Trustee Exoneration

Successor Trustees are not obligated to examine the accounts, records, or actions of any previous Trustee or of the Personal Representative of a deceased Grantor. Successor Trustees are not responsible for any act, forbearance, or omission of any prior Trustee or the Personal Representative of a deceased Grantor.

Any Trustee may request and obtain agreements in writing from the beneficiaries or their Legal Representatives releasing and indemnifying the Trustee from any liability that may have arisen from the Trustee's acts, omissions, or forbearances. Any agreement, if acquired from all the trust's living beneficiaries or their Legal Representatives, is conclusive and binding on all parties, born or unborn, who have or will have an interest in the trust.

### Section 11.07    Trustee Compensation

Except for any Grantor, an individual serving as Trustee is entitled to fair and reasonable compensation for the services provided as a fiduciary and to be reimbursed for reasonable expenses incurred in carrying out the Trustee's duties under this instrument. A Trustee may charge additional fees for services he or she provides that are not comprised within the duties as Trustee, including fees for legal services, tax return preparation, and corporate finance or investment banking services.

### Section 11.08    Exercise of Testamentary Power of Appointment

A testamentary power of appointment granted under this instrument may be exercised by a valid Will, a valid Revocable Living Trust, or an amendment to a valid Revocable Living Trust that specifically refers to the power of appointment. The holder of a testamentary power of appointment may exercise the power to appoint property among the permissible appointees in equal or unequal proportions, and on the terms and conditions the holder of the power designates, whether outright or in trust. The holder of a testamentary power of appointment may grant further powers of appointment to any person to whom principal may be appointed, including a presently exercisable limited or general power of appointment.

Our Trustee may conclusively presume that any power of appointment granted to any beneficiary of a trust created under this instrument has not been exercised by the beneficiary if our Trustee has no knowledge of the existence of a valid Will exercising the power within three months after the beneficiary's death.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

### Section 11.09    Determination of Principal and Income

The California Uniform Principal and Income Act will govern beneficiaries' rights among themselves in matters concerning principal and income. If the California Uniform Principal and Income Act contains no provision concerning a particular item, our Trustee will determine in an equitable and practical manner what will be credited, charged, and apportioned between principal and income.

### Section 11.10    Additions to Separate Trusts

If upon the death of a Grantor, or upon the termination of any trust created under this instrument, a final distribution is to be made to a person who is or is named as the Primary Beneficiary of another trust created under this instrument, and there is no specific indication whether the distribution is to be made in trust or outright and free of trust, our Trustee shall make the distribution to the second trust instead of distributing the property to the beneficiary outright. For purposes of administration, our Trustee shall treat the distribution as though it had been an original part of the second trust.

### Section 11.11    Authority to Merge or Sever Trusts

Our Trustee may merge a trust created under this trust with any other trust, if the two trusts contain substantially the same terms for the same beneficiaries and have at least one Trustee in common. Our Trustee may administer the merged trust under the provisions of the instrument governing the other trust, and this trust will no longer exist if it merges into another trust. Accordingly, in the event another trust is merged into this trust or a trust created under the provisions of this trust document, our Trustee may shorten the period during which this trust subsists to comply with Section 12.01, if necessary, to effect the merger.

But if our Trustee determines that a merger or consolidation is not practicable, our Trustee may consolidate the trusts' assets for purposes of investment and trust administration while retaining separate records and accounts for each respective trust.

Our Trustee may sever any trust on a fractional basis into two or more separate and identical trusts, or may segregate a specific amount or asset from the trust property by allocation to a separate account or trust. The separate trusts may be funded on a *non pro rata* basis, provided that funding is based on the assets' total fair market value on the funding date. After the segregation, income earned on a segregated amount or specific asset passes with the segregated amount or asset. Our Trustee shall hold and administer each separate trust upon terms and conditions identical to those of the trust from which it was severed.

Subject to the trust terms, our Trustee may consider differences in federal tax attributes and other pertinent factors in administering the trust property of any separate account or trust, in making applicable tax elections, and in making distributions. A separate trust created by severance must be treated as a separate trust for all purposes from the effective severance date. But the effective severance date may be retroactive to a date before the date on which our Trustee exercises the power.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

## Section 11.12    Authority to Terminate Trusts

If it is no longer economical to administer a trust created under this instrument, our Independent Trustee may terminate the trust and distribute the trust property, including any undistributed net income, to the beneficiaries who are then entitled to mandatory distributions of the trust's net income in the same proportions without any further obligation or liability. If no beneficiary is entitled to mandatory distributions of net income, the trust property will be distributed to the beneficiaries who are then eligible to receive discretionary distributions of the trust's net income, in amounts and shares determined by our Independent Trustee.

## Section 11.13    Reports

Whenever neither of us is serving as Trustee, the Trustee of each trust created under this instrument shall prepare an annual report showing the receipts, disbursements, and distributions of income, principal, and the assets on hand. The Trustee shall deliver the report to the Primary Beneficiary unless the beneficiary waives the right to the annual report. Delivery of a federal fiduciary income tax return filed for the trust will satisfy the annual report requirement of this Section for the year of the return.

## Section 11.14    Our Trustee's Powers

Our Trustee may exercise all the powers conferred by this instrument without prior approval from any court, and may perform every act reasonably necessary to administer our trust estate as established under this instrument. Our Trustee may also exercise any powers conferred by law, including all those powers set forth under the common law or statutory laws of California or any other jurisdiction whose laws apply to this trust. The powers set forth in the California Professional Fiduciaries Act are specifically incorporated into this trust instrument. The powers conferred upon our Trustee by law, including those powers conferred by the California Professional Fiduciaries Act, are to be subject to any express limitations or contrary directions contained in this instrument.

Our Trustee shall exercise these powers in the manner our Trustee determines to be in the beneficiaries' best interests. Our Trustee may not exercise any of its powers in a manner that is inconsistent with the beneficiaries' right to the beneficial enjoyment of the trust property in accordance with the general principles of the law of trusts. The Trustee of a trust may have duties and responsibilities in addition to those described in this instrument. We encourage our Trustee to obtain appropriate legal advice if our Trustee has any questions concerning the duties and responsibilities as Trustee.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Twelve
# General Provisions

### Section 12.01    Maximum Term for Trusts

Notwithstanding any contrary provisions or unless terminated earlier under other provisions of this trust, each trust created under this trust document will terminate 21 years after the death of the last to die of the descendants of our paternal and maternal grandparents who are living at the time of the first of us to die.

At that time, the remaining trust property will vest in and be distributed to the persons entitled to receive mandatory distributions of the trust's net income, in the same proportions. If no beneficiary is entitled to mandatory distributions of net income, the remaining trust property will vest in and be distributed to the beneficiaries entitled to receive discretionary distributions of the trust's net income, in equal shares *per stirpes*.

### Section 12.02    Spendthrift Provision

No beneficiary may assign, anticipate, encumber, alienate, or otherwise voluntarily transfer the income or principal of any trust created under this trust. In addition, neither the income nor the principal of any trust created under this trust is subject to attachment, bankruptcy proceedings or any other legal process, the interference or control of creditors or others, or any involuntary transfer.

This Section does not restrict a beneficiary's right to disclaim any interest or exercise of any power of appointment granted in this trust.

### Section 12.03    Contest Provision

If any person attempts to contest or oppose the validity of this trust or any amendment to this trust, or commences, continues, or prosecutes any legal proceedings to set this trust aside, then that person will forfeit his or her share, cease to have any right or interest in the trust property, and will be considered to have predeceased the last of us to die for purposes of this instrument.

But during any period in which the laws of the State of California govern the applicability or validity of this provision, California Probate Code Section 21311 will apply, and our Trustee may only enforce this provision against any of these types of contests:

> a direct contest brought by any beneficiary without probable cause;

> a pleading by any beneficiary to challenge a property transfer on the grounds that the transferor did not own the property at the transfer time; and

> any filing of a creditor's claim or prosecution of any action based on the filing of a claim of this kind.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

The terms *direct contest*, and *pleading* have the same meanings as set forth in California Probate Code Section 21310. This trust and any trusts created in this instrument are *protected instruments* as provided in California Probate Code Section 21310(e).

### Section 12.04    Survivorship Presumption

If we die under circumstances in which the order of our deaths cannot be established, each of us will be considered to have predeceased the other and each Grantor's interest in any community property of our trust, and each Grantor's separate trust property will be administered as provided in Section 7.06 for administering the remaining property in the Survivor's Trust upon death of the surviving Grantor.

If any other beneficiary is living at the death of a Grantor, but dies within 10 days after the Grantor's death, then the beneficiary will be considered to have predeceased the Grantor for purposes of this trust.

### Section 12.05    Divorce or Annulment

If our marriage ends by divorce or annulment, each of us will be considered to have predeceased the other for purposes of this trust, so that our respective property interests are not used for the benefit of the other.

### Section 12.06    Changing the Governing Law and Situs of Administration

At any time, our Trustee may change the governing law of the trust; change the situs of the administration of the trust; and remove all or any part of the property from one jurisdiction to another. Our Trustee may elect, by filing an instrument with the trust records, that the trust will then be construed, regulated, and governed by the new jurisdiction's laws. Our Trustee may take action under this Section for any purpose our Trustee considers appropriate, including the minimization of any taxes in respect of the trust or any trust beneficiary.

If considered necessary or advisable by our Trustee, our Trustee may appoint an Independent Trustee to serve as Trustee in the new situs.

If necessary and if our Trustee does not appoint an Independent Trustee within 30 days of our Trustee's action to change the governing law or situs of the trust, the beneficiaries entitled to receive distributions of the trust's net income may appoint a corporate fiduciary in the new situs by majority consent. If a beneficiary is a minor or is incapacitated, the beneficiary's parent or Legal Representative may act on the beneficiary's behalf.

### Section 12.07    Definitions

For purposes of this trust, the following terms have these meanings:

#### (a)    Adopted and Afterborn Persons

A person in any generation who is legally adopted before reaching the age of 18 years and his or her descendants, including adopted descendants, have the same rights and will be treated in the same manner under this trust as natural children of the adopting parent. A person is considered

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

legally adopted if the adoption was legal at the time when and in the jurisdiction in which it occurred.

A fetus *in utero* later born alive will be considered a person in being during the period of gestation.

### (b) Descendants

The term *descendants* means persons who directly descend from a person, such as children, grandchildren, or great-grandchildren. The term *descendants* does not include collateral descendants, such as nieces and nephews.

### (c) Good Faith

For the purposes of this trust, a Trustee has acted in good faith if:

an action or inaction is not a result of intentional wrongdoing;

the Trustee did not make the decision to act or not act with reckless indifference to the beneficiaries' interests; and

an action or inaction does not result in an improper personal benefit to the Trustee.

Further, all parties subject to the provisions of this trust will treat any action or inaction made in reliance on information, consent, or directions received from the Personal Representative of each of our estates as made in good faith for the purposes of this Section, except for cases of willful misconduct or malfeasance on the Trustee's part.

### (d) Grantor

*Grantor* has the same legal meaning as *Settlor*, *Trustor* or any other term referring to the maker of a trust.

### (e) Incapacity

Except as otherwise provided in this trust, a person is considered incapacitated in any of the following circumstances.

#### (1) The Opinion of Two Licensed Physicians

An individual is considered to be incapacitated whenever two licensed physicians give the opinion that the individual is unable to effectively manage his or her property or financial affairs, whether as a result of age; illness; use of prescription medications, drugs, or other substances; or any other cause. If an individual whose capacity is in question refuses to provide necessary documentation or otherwise submit to examination by licensed physicians, that individual will be considered incapacitated.

An individual is considered restored to capacity whenever the individual's personal or attending physician provides a

Fred L. Lieberman and Martha Londono Living Trust

12-3

written opinion that the individual is able to effectively manage his or her property and financial affairs.

### (2) Court Determination

An individual is considered incapacitated if a court of competent jurisdiction has declared the individual to be disabled, incompetent, or legally incapacitated.

### (3) Detention, Disappearance, or Absence

An individual is considered to be incapacitated whenever he or she cannot effectively manage his or her property or financial affairs due to the individual's unexplained disappearance or absence for more than 30 days, or whenever he or she is detained under duress.

An individual's disappearance, absence, or detention under duress may be established by an affidavit of our Trustee, or by the affidavit of any beneficiary if no Trustee is then serving. The affidavit must describe the circumstances of the individual's disappearance, absence, or detention, and may be relied upon by any third party dealing in good faith with our Trustee.

## (f) Income Beneficiary

The term *Income Beneficiary* means any beneficiary who is then entitled to receive distributions of the trust's net income, whether mandatory or discretionary.

Unless otherwise provided in this trust, the phrase *majority of the Income Beneficiaries* means any combination of Income Beneficiaries who would receive more than 50% of the accrued net income if that income were distributed on the day of a vote. For purposes of this calculation, beneficiaries who are eligible to receive discretionary distributions of net income receive the imputed income in equal shares.

References to a *majority* refer to a majority of the entire trust collectively until our Trustee allocates property to separate trusts or trust shares. After our Trustee allocates property to separate trusts or trust shares, references to a *majority* refer to a majority of each separate trust or trust share.

## (g) Income in Respect of a Decedent (IRD)

The term *income in respect of a decedent* (IRD) means income received after a decedent's death that would have been taxable to the decedent if the income had been received by the decedent during the decedent's lifetime. For example, payments under qualified retirement plans and other deferred compensation arrangements are IRD. For purposes of this trust, IRD means any income that would be classified as IRD under Internal Revenue Code Section 691(a).

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**(h)    Independent Trustee**

The term *Independent Trustee* means any Trustee who is not an Interested Trustee as defined in Subsection (i) and includes an Independent Special Trustee appointed under the provisions of Section 3.08.  Whenever a power or discretion is granted exclusively to our Independent Trustee, then any Interested Trustee who is then serving as our Trustee is prohibited from participating in the exercise of the power or discretion.  If there is no Independent Trustee then serving, then an Independent Special Trustee may be appointed under the provisions of Section 3.08 to exercise the power or discretion that is exercisable only by our Independent Trustee.

**(i)    Instrument**

The term *this instrument* means this trust, and includes all trusts created under the terms of this trust.

**(j)    Interested Trustee**

The term *Interested Trustee* means a Trustee who:

> is a transferor or beneficiary;
>
> is related or subordinate to a transferor or beneficiary;
>
> can be removed and replaced by a transferor with either the transferor or a party who is related or subordinate to the transferor; or
>
> can be removed and replaced by a beneficiary with either the beneficiary or a party who is related or subordinate to the beneficiary.

For purposes of this Subsection, *transferor* means a person who transferred property to the trust, including a person whose disclaimer resulted in property passing to the trust. *Beneficiary* means a person who is or may become eligible to receive income or principal from the trust under the terms of the trust, even if this person has only a remote contingent remainder interest in the trust, but not if the person's only interest is as a potential appointee under a power of appointment. *Related or subordinate* is used as defined in Internal Revenue Code Section 672(c).

Whenever this trust specifically prohibits or limits an Interested Trustee from exercising discretion or performing an act, then any Interested Trustee serving as our Trustee is prohibited from participating in the exercise of that discretion or performance of that act.  If there is no Trustee serving who is not an Interested Trustee, then an Independent Special Trustee may be appointed under the provisions of Section 3.08 to exercise the discretion or perform the act.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

### (k)    Internal Revenue Code and Treasury Regulations

Any references to a specific section of the Internal Revenue Code include subsequent versions of sections that replace the specific sections as a result of changes to the Internal Revenue Code after this date.

### (l)    Legal Representative or Personal Representative

As used in this trust document, the term *Legal Representative* or *Personal Representative* means a person's guardian, conservator, executor, administrator, Trustee, or any other person or entity representing a person or the person's estate.  In the case of a minor beneficiary, the beneficiary's parent or another adult with custody of the beneficiary, except for any transferor to a trust created under this instrument, will be considered the beneficiary's Legal Representative for purposes of this trust.

### (m)    Per Stirpes

Whenever a distribution is to be made to a person's descendants *per stirpes*, the distribution will be divided into as many equal shares as there are then-living children and deceased children who left then-living descendants.  Each then-living child will receive one share, and the share of each deceased child will be divided among the deceased child's then-living descendants in the same manner.

### (n)    Permissible Distributee

"Permissible Distributee" means a beneficiary who is currently eligible to receive distributions of trust income or principal, whether the distribution is mandatory or discretionary.

### (o)    Primary Beneficiary

The *Primary Beneficiary* of a trust created under this trust is that trust's oldest Income Beneficiary, unless some other individual is specifically designated as the Primary Beneficiary of that separate trust.

### (p)    Qualified Beneficiary

"Qualified Beneficiary" means a beneficiary who, on the date the beneficiary's qualification is determined:

    (1)   is a distributee or Permissible Distributee of trust income or principal;

    (2)   would be a distributee or Permissible Distributee of trust income or principal if the interests of the distributees described in subparagraph (1) terminated on that date; or

    (3)   would be a distributee or Permissible Distributee of trust income or principal if the trust terminated on that date.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

### (q)    Shall and May

Unless otherwise specifically provided in this trust or by the context in which used, we use the word *shall* in this trust to impose a duty, command, direct, or require, and the word *may* to allow or permit, but not require. In the context of our Trustee, when we use the word *shall* we intend to impose a fiduciary duty on our Trustee. When we use the word *may* we intend to empower our Trustee to act with the Trustee's sole and absolute discretion unless otherwise stated in this trust. When we use the words *may not* in reference to our Trustee, we specifically mean our Trustee *is not permitted to*.

### (r)    Trust

The terms *this trust, this document*, and *this trust document* refer to this trust and all trusts created under the terms of this trust.

### (s)    Trustee

The terms *our Trustee* and *Trustee* refer to the Initial Trustees named in Article One and to any successor, substitute, replacement, or additional person, corporation, or other entity that ever acts as the Trustee of any trust created under the terms of this trust. The term *Trustee* refers to singular or plural as the context may require.

### (t)    Trust Property

The term *trust property* means all property acquired from any source and held by a Trustee under this trust.

## Section 12.08    General Provisions and Rules of Construction

The following general provisions and rules of construction apply to this trust.

### (a)    Multiple Originals; Validity of Paper or Electronic Copies

This trust may be executed in any number of counterparts, each of which will be considered an original.

Any person may rely on a paper or electronic copy of this trust that the Trustee certifies to be a true copy as if it were an original.

### (b)    Singular and Plural; Gender

Unless the context requires otherwise, singular words may be construed as plural, and plural words may be construed as singular. Words of one gender may be construed as denoting another gender as is appropriate within the context. The word *or*, when used in a list of more than two items, may function as both a conjunction and a disjunction as the context requires.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**(c)      Headings of Articles, Sections, and Subsections**

The headings of Articles, Sections, and Subsections used within this trust are included solely for the convenience of the reader. They have no significance in the interpretation or construction of this trust.

**(d)      Governing State Law**

This trust is governed, construed, and administered according to the laws of California, as amended except as to trust property required by law to be governed by the laws of another jurisdiction and unless the situs of administration is changed under Section 12.06.

**(e)      Notices**

Unless otherwise stated, any notice required under this trust will be in writing. The notice may be personally delivered with proof of delivery to the party requiring notice and will be effective on the date personally delivered. Notice may also be mailed, postage prepaid, by certified mail with return receipt requested to the last known address of the party requiring notice. Mailed notice is effective on the date of the return receipt. If a party giving notice does not receive the return receipt but has proof that he or she mailed the notice, notice will be effective on the date it would normally have been received via certified mail. If the party requiring notice is a minor or incapacitated individual, notice will be given to the parent or Legal Representative.

**(f)      Severability**

The invalidity or unenforceability of any provision of this trust does not affect the validity or enforceability of any other provision of this trust. If a court of competent jurisdiction determines that any provision is invalid, the remaining provisions of this trust are to be interpreted as if the invalid provision had never been included.

We have executed this trust on May 27, 2015. This trust instrument is effective when signed by us, whether or not now signed by a Trustee.

_Fred L. Lieberman_
Fred L. Lieberman, Grantor and Trustee

_Martha Londono_
Martha Londono, Grantor and Trustee

Fred L. Lieberman and Martha Londono Living Trust
12-8

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California           )

County of Los Angeles        )

On May 27, 2015 before me, Sara R. Rice, a Notary Public, personally appeared Fred L. Lieberman and Martha Londono, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

    WITNESS my hand and official seal.

SARA R. RICE
Commission # 2072633
Notary Public - California
Los Angeles County
My Comm. Expires Jul 23, 2018

Signature _____          (Seal)

Fred L. Lieberman and Martha Londono Living Trust

12-9

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Schedule C
# Community Property

19150 Pacific Coast Highway, Malibu, CA 90265

Fred L. Lieberman and Martha Londono Living Trust

C - 1

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Schedule H
# Husband's Separate Property

Fred L. Lieberman and Martha Londono Living Trust

H-1

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

## Schedule W
## Wife's Separate Property

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Fred L. Lieberman and Martha Londono Living Trust

W - 1

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

Exhibit B

# THE FRED LIEBERMAN'S SURVIVOR TRUST DATED
# DATED AUGUST 2, 2019

## Restatement dated December 17, 2021

KFB LAW GROUP, LLP

12100 WILSHIRE BLVD., SUITE 245
LOS ANGELES, CALIFORNIA 90025

Copyright © 2021 KFB Law Group, LLP

# The Fred Lieberman's Survivor Trust dated
# Table of Contents

Double-Click to Insert Table of Contents

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# The Fred Lieberman's Survivor Trust dated

## Article One
## Establishing My Trust

On August 2, 2019, I established the Fred Lieberman's Survivor Trust dated, and reserved the right to amend the trust, in whole or in part.  On this day, December 17, 2021, I revoke all restatements and amendments to that instrument and now exercise my power to amend that instrument in its entirety, so that after amendment the Fred Lieberman's Survivor Trust dated now states:

The parties to this restated trust are Fred Lieberman (the *Grantor*) and Fred Lieberman (my *Trustee*).

I intend to create a valid trust under the laws of Washington and under the laws of any state in which any trust created under this trust document is administered.  The terms of this trust prevail over any provision of Washington law, except those provisions that are mandatory and may not be waived.

### Section 1.01    Identifying My Trust

For convenience, my trust may be referred to as:

> "The Fred Lieberman's Survivor Trust dated August 2, 2019."

To the extent practicable, for the purpose of transferring property to my trust or identifying my trust in any beneficiary or pay-on-death designation, my trust should be identified as:

> "Fred Lieberman, Trustee, or his successors in interest, of the Fred Lieberman's Survivor Trust dated August 2, 2019, and any amendments thereto."

For all purposes concerning the identity of my trust or any property titled in or payable to my trust, any description referring to my trust will be effective if it reasonably identifies my trust and indicates that the trust property is held in a fiduciary capacity.

### Section 1.02    Reliance by Third Parties

Third parties may require documentation to verify the existence of this trust, or particular provisions of it, including the name of my Trustee or the powers held by my Trustee.  To protect the confidentiality of this instrument, my Trustee may use an affidavit or a certification of trust that identifies my Trustee and sets forth the authority of my Trustee to transact business on behalf of my trust instead of providing a copy of this instrument.  The affidavit or certification may include pertinent pages from this instrument, including title or signature pages.

KFB Law Group, LLP, 12100 Wilshire Blvd., Suite 245, Los Angeles, California 90025  |  (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

A third party may rely upon an affidavit or certification of trust that is signed by my Trustee with respect to the representations contained in it. A third party relying upon an affidavit or certification of trust will be exonerated from any liability for actions the third party takes or does not take in reliance upon the representations contained in the affidavit or certification of trust.

A third party dealing with my Trustee will not be required to inquire into this trust's terms or the authority of my Trustee, or to see to the application of funds or other property received by my Trustee. My Trustee's receipt of any money or property paid, transferred, or delivered to my Trustee will be a sufficient discharge to the third party from all liability in connection with its application. A written statement by my Trustee is conclusive evidence of my Trustee's authority. Third parties are not liable for any loss resulting from their reliance on a written statement by my Trustee asserting my Trustee's authority or seeking to effect a transfer of property to or from the trust.

### Section 1.03    Transferring Property to My Trust

Any person or entity may transfer any property to my trust in any manner authorized by law.

#### (a)    Initial Funding of My Trust

By executing this instrument, I transfer, convey, and assign to my Trustee the trust property described in the attached Schedule A.

#### (b)    Acceptance by My Trustee

By executing this instrument, my Trustee accepts and agrees to hold the property transferred to the trust as trust property. All property transferred to my trust after the date of this trust must be acceptable to my Trustee. My Trustee may refuse to accept any property. My Trustee shall hold, administer, and dispose of all accepted trust property for my benefit and for the benefit of my beneficiaries, in accordance with the terms of this trust.

### Section 1.04    Powers Reserved by Me as Grantor

As Grantor, I retain the powers set forth in this Section in addition to any powers that I reserve in other provisions of this instrument.

#### (a)    Action on Behalf of My Trust

Whenever I am serving as Trustee, I may act for and conduct business on behalf of my trust without the consent of any other Trustee.

#### (b)    Amendment, Restatement, or Revocation

I may amend, restate, or revoke this instrument, in whole or in part, for any purpose.

Any amendment, restatement, or revocation must be made in writing and delivered to my then-serving Trustee.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

### (c)    Addition or Removal of Trust Property

I may add property to my trust and may remove any property from my trust at any time.

### (d)    Control of Income and Principal Distributions

I retain the right to control the distribution of income and principal from my trust. I may direct my Trustee to distribute as much of the net income and principal of the trust property as I consider advisable to me or to other persons or entities. My Trustee may distribute the net income and principal to me or for my unrestricted use and benefit, even to the exhaustion of all trust property. Any undistributed net income is to be added to the principal of my trust.

### (e)    Approval of Investment Decisions

I reserve the absolute right to review and change my Trustee's investment decisions. But my Trustee is not required to seek my approval before making investment decisions.

## Section 1.05    Grantor Trust Status

By reserving the broad rights and powers set forth in Section 2.06 of this Article, I intend to qualify my trust as a *Grantor Trust* under Internal Revenue Code Sections 671 to 677. This means that, for federal income tax purposes, I will be treated as the owner of all the assets held in my trust during my lifetime, as if I held them in my individual capacity.

During any period that my trust is a Grantor Trust, the Taxpayer Identification Number of my trust will be my Social Security number, in accordance with Treasury Regulation Section 301.6109-1(a)(2).

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Two
# Family Information

I was married to Martha Londono on December 10, 1988, who died on August 20, 2019.

I have one child, Suzanne Kristi Lieberman.

All references in this document to *my children* are references to this child.

References to *my descendants* are to my children and their descendants, including any deceased child's descendants.

I have also provided for the following individuals in this trust:

| Name | Relationship |
|------|-------------|
| Clara Londono | step-daughter |
| Gloria Londono | step-daughter |
| Luis Londono | stepson |
| Miguel Londono | stepson |

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Three
# Trustee Succession and Trust Protector Provisions

### Section 3.01     Resignation of a Trustee

A Trustee may resign by giving written notice to me.  If I am incapacitated or deceased, a resigning Trustee must give written notice to the trust's Income Beneficiaries and to any other then-serving Trustee.

Upon the resignation of a Trustee, the resigning Trustee may appoint the resigning Trustee's successor as Trustee in the manner set forth in Section 2.04, concurrent with the written notice described above.  If the resigning Trustee fails to make the appointment, the other provisions of this Article regarding Trustee succession upon my incapacity or my death will govern, and the next named successor or successors to the resigning Trustee will serve in the order listed.  Likewise, if no named successors to the resigning Trustees are available to serve and the resigning Trustee fails to designate a successor, the other provisions of this Article regarding the filling of a vacant Trustee office will govern.

### Section 3.02     Trustee Succession during My Lifetime

During my lifetime, this Section governs the removal and replacement of my Trustees.

#### (a)     Removal and Replacement by Me

I may remove any Trustee with or without cause at any time.  If a Trustee is removed, resigns, or cannot continue to serve for any reason, I may serve as sole Trustee, appoint a Trustee to serve with me, or appoint a successor Trustee.

#### (b)     During My Incapacity

During any time that I am incapacitated, the following will replace any then-serving Trustee in this order:

> Suzanne Kristi Lieberman then
>
> Gloria Londono.

If I am incapacitated, a majority of my children may remove any Trustee with or without cause.  This does not limit the authority of a Trust Protector to remove a Trustee under the provisions of Section 2.11(i) of this Article.

If I am incapacitated and no named successor Trustee has been designated, my Trust Protector may appoint my successor Trustee.  If my Trust Protector is unable to name my successor Trustee, a majority of my children may appoint my successor Trustee.

If a Trustee vacancy due to resignation arises, the previous provisions apply only if the resigning Trustee fails to appoint a successor Trustee in the manner more fully set forth in Section 2.01.

Fred Lieberman's Survivor Trust dated
3-1

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

My Legal Representative may petition a court of competent jurisdiction to appoint a successor Trustee to fill any vacancy lasting longer than 30 days. The petition may subject the trust to the jurisdiction of the court only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

All appointments, removals, and revocations must be by signed written instrument.

### Section 3.03    Trustee Succession after My Death

After my death, this Section will govern the removal and replacement of my Trustees.

### (a)    Successor Trustee

I name the following, in this order, to serve as my successor Trustee after my death, replacing any then-serving Trustee:

> Suzanne Kristi Lieberman then
>
> Gloria Londono.

### (b)    Removal of a Trustee

A majority of the Income Beneficiaries of any trust created under this instrument may remove a Trustee of the trust at any time, with or without cause.

A Trustee may be removed under this Subsection only if the person having the right of removal appoints an individual or a corporate fiduciary by the effective removal date and the individual or corporate fiduciary simultaneously commences service as Trustee. This appointed Trustee may not be related or subordinate to the person or persons having the right of removal within the meaning of Internal Revenue Code Section 672(c).

The right to remove a Trustee under this Subsection is not to be interpreted as granting the person holding that right any of the powers of that Trustee.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

Nothing in this Subsection limits the authority of a Trust Protector to remove a Trustee under the provisions of Section 2.11(i) of this Article.

### (c)    Default of Designation

If the office of Trustee of a trust created under this instrument is vacant and no designated successor Trustee is able and willing to act as Trustee, my Trust Protector may appoint a successor Trustee. If my Trust Protector is unable or unwilling to act, the trust's Primary Beneficiary may appoint an individual or corporate fiduciary that is not related or subordinate to the person or persons making the appointment within the meaning of Section 672(c) of the Internal Revenue Code as successor Trustee.

KFB Law Group, LLP, 12100 Wilshire Blvd., Suite 245, Los Angeles, California 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

Any beneficiary may petition a court of competent jurisdiction to appoint a successor Trustee to fill any vacancy lasting longer than 30 days. The petition may subject the trust to the jurisdiction of the court only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

If a Trustee vacancy arises due to resignation, the previous provisions apply only if the resigning Trustee fails to appoint a successor Trustee in the manner more fully set forth in Section 2.01.

## Section 3.04    Notice of Removal and Appointment

Notice of removal must be in writing and delivered to the Trustee being removed and to any other then-serving Trustees. The removal becomes effective in accordance with its provisions.

Notice of appointment must be in writing and delivered to the successor Trustee and to any other then-serving Trustees. The appointment becomes effective at the time of acceptance by the successor Trustee. A copy of the notice may be attached to this instrument.

## Section 3.05    Appointment of a Co-Trustee

Any individual Trustee may appoint an individual or a corporate fiduciary as a Co-Trustee. This Co-Trustee serves only as long as the appointing Trustee serves, or as long as the last to serve if more than one Trustee appointed the Co-Trustee. This Co-Trustee will not become a successor Trustee upon the death, resignation, or incapacity of the appointing Trustee, unless appointed under the terms of this instrument. Although this Co-Trustee may exercise all the powers of the appointing Trustee, the combined powers of this Co-Trustee and the appointing Trustee may not exceed the powers of the appointing Trustee alone. The Trustee appointing a Co-Trustee may revoke the appointment at any time, with or without cause.

## Section 3.06    Corporate Fiduciaries

Any corporate fiduciary serving under this instrument as a Trustee must be a bank, trust company, or public charity that is qualified to act as a fiduciary under applicable federal and state law and that is not related or subordinate to any beneficiary within the meaning of Internal Revenue Code Section 672(c).

This corporate fiduciary must:

have a combined capital and surplus of at least Five Hundred Million Dollars; or

maintain in force an insurance policy with policy limits of not less than Five Hundred Million Dollars covering the errors and omissions of my Trustee with a solvent insurance carrier licensed to do business in the state in which

Fred Lieberman's Survivor Trust dated
3-3

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

my Trustee has its corporate headquarters[UNANSWERED: TF Corporate Fiduciary assets management]

[UNANSWERED: TF Corporate Fiduciary assets management]

## Section 3.07    Incapacity of a Trustee

If any individual Trustee becomes incapacitated, the incapacitated Trustee need not resign as Trustee. For Trustees other than me, a written declaration of incapacity by the Co-Trustee or, if none, by the party designated to succeed the incapacitated Trustee, made in good faith and supported by a written opinion of incapacity by a physician who has examined the incapacitated Trustee, will terminate the trusteeship. If the Trustee designated in the written declaration refuses to sign the necessary medical releases needed to obtain the physician's written opinion of incapacity within 10 days, the trusteeship will be terminated.

## Section 3.08    Appointment of Independent Special Trustee

If for any reason the Trustee of any trust created under this instrument is unwilling or unable to act with respect to any trust property or any provision of this instrument, my Trust Protector shall appoint, in writing, a corporate fiduciary or an individual to serve as an Independent Special Trustee as to this property or with respect to this provision. The Independent Special Trustee appointed may not be related or subordinate to any trust beneficiary within the meaning of Internal Revenue Code Section 672(c). My Trust Protector may revoke any appointment of this kind at any time.

An Independent Special Trustee will exercise all fiduciary powers granted by this trust unless expressly limited elsewhere in this instrument or by my Trust Protector in the instrument appointing the Independent Special Trustee. An Independent Special Trustee may resign at any time by delivering written notice of resignation to my Trust Protector. Notice of resignation will be effective in accordance with the terms of the notice.

## Section 3.09    Rights and Obligations of Successor Trustees

Each successor Trustee serving under this instrument, whether corporate or individual, will have all of the title, rights, powers, and privileges granted to the initial Trustee named under this instrument. In addition, each successor Trustee will be subject to all of the restrictions imposed upon, as well as to all discretionary and ministerial obligations and duties given to the initial Trustee named under this instrument.

## Section 3.10    Prohibited Trustees

Notwithstanding anything in this instrument to the contrary, a beneficiary of a supplemental needs trust established under this instrument may not, at any time, serve as Trustee of the supplemental needs trust. If a beneficiary has been nominated to serve as a Trustee of the supplemental needs trust, that nomination will be null and void and the remaining provisions of this instrument with respect to Trustee succession will apply.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

## Section 3.11    Provisions for Trust Protector

The function of the Trust Protector is to direct my Trustee in matters concerning the trust, and to assist, if needed, in achieving my objectives as manifested by the other provisions of my estate plan.

Any Trust Protector named or appointed under this Section must be a corporate fiduciary or an individual who is not related or subordinate to me while I am still living or to any beneficiary within the meaning of Internal Revenue Code Section 672(c). Notwithstanding any provision that may seem to the contrary, a Trust Protector shall not act while I am still living unless I am incapacitated.

### (a)    Designation of Trust Protector

During any period this instrument authorizes or requires a Trust Protector to act, a majority of the Income Beneficiaries of this trust or any trust created under this instrument may appoint a corporate fiduciary or individual of a type described in Section 2.11 of this instrument as Trust Protector. During the period of my incapacity, if the trust names no Income Beneficiaries except me, my Legal Representative may make the appointment of a Trust Protector.

But during any period this instrument requires a Trust Protector to act and no Trust Protector is then serving and a majority of the trust's Income Beneficiaries or my Legal Representative fails to make the appointment after 30 days, any beneficiary may petition a court of competent jurisdiction to appoint a Trust Protector.

The court acting to appoint a Trust Protector will acquire jurisdiction or authority over the trust only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

### (b)    Resignation of Trust Protector

A Trust Protector may resign by giving notice to the trust's Income Beneficiaries and the then-serving Trustee.

A Trust Protector's resignation takes effect on the date set forth in the notice, but never earlier than 30 days after the delivery date of the resignation notice, unless an earlier effective date is agreed to by me or the Trustee. A resigning Trust Protector will not be liable or responsible for the act of any successor Trust Protector.

### (c)    Authority of My Trust Protector to Appoint a Successor Trust Protector

Any Trust Protector, including successor Trust Protectors, may appoint a successor Trust Protector in writing. The appointment of a successor will

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

take effect upon the death, resignation, or incapacity of the appointing Trust Protector.

### (d)    Removal of a Trust Protector

After my death, Fred Lieberman may remove a Trust Protector of any trust at any time, with or without cause.

### (e)    Rights of Successor Trust Protectors

A successor Trust Protector has all of the authority of any predecessor Trust Protector, but will not be responsible for the predecessor's acts, omissions, or forbearances.

### (f)    Power to Remove and Appoint Trustees

During any time I am incapacitated and following my death, my Trust Protector may remove any Trustee of a trust created under this instrument.

If the office of Trustee of a trust is vacant and no successor Trustee is designated, my Trust Protector may appoint an individual or a corporate fiduciary to serve as Trustee.

A Trust Protector may not appoint itself as a Trustee, and may not simultaneously serve as both Trust Protector and Trustee.

### (g)    Good Faith Standard Imposed

The authority of my Trust Protector is conferred in a nonfiduciary capacity, and my Trust Protector is not liable for any action taken in good faith. My Trust Protector is not liable for any act, omission, or forbearance. My Trust Protector must be reimbursed promptly for any costs incurred in defending or settling any claim brought against it in its capacity as Trust Protector, unless it is conclusively established that the act, omission, or forbearance was motivated by an actual intent to harm the trust beneficiaries, or was an act of self-dealing for personal benefit.

### (h)    Power to Amend Trust Provisions

During any time I am incapacitated and following my death, my Trust Protector may amend any provision of this instrument as it applies to any trust to which the Trust Protector is serving as Trust Protector to:

> alter the administrative and investment powers of my Trustee;

> reflect tax or other legal changes that affect trust administration. I recognize that the gift, estate, generation-skipping transfer tax, and income tax provisions of the Internal Revenue Code and Treasury Regulations are subject to change. I grant my Trust Protector the authority to amend this trust instrument's terms in this manner as will, in my

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

Trust Protector's sole and absolute discretion, eliminate or minimize the state and federal taxes payable to my estate, and provide the maximum benefit to my beneficiaries as expressed in this instrument. This includes dividing the trust property into separate shares or funds;

correct ambiguities, including scrivener errors, that might otherwise require court construction or reformation; and

grant a beneficiary of any trust created under this instrument the testamentary power to appoint all or part of the beneficiary's trust or trust share to the creditors of the beneficiary's estate. As a condition for the beneficiary's exercise of this power, my Trust Protector may require that the beneficiary first obtain the consent of my Trust Protector. Any testamentary power of appointment granted by my Trust Protector must be in writing, and may be revoked by my Trust Protector throughout that beneficiary's lifetime. I suggest that my Trust Protector exercise this authority to subject trust property to estate tax instead of the generation-skipping transfer tax when it appears that it may reduce overall taxes.

My Trust Protector may not amend this instrument in any manner that would result in a reduction in the estate tax charitable deduction under Section 2055 to which my estate would otherwise be entitled. Further, my Trust Protector may not limit or alter the rights of a beneficiary in any trust assets held by the trust before the amendment.

Any amendment made by my Trust Protector in good faith is conclusive on all persons interested in the trust, and my Trust Protector is not liable for the consequences of making or not making any amendment. Any amendment to this instrument made by my Trust Protector must be made in a written instrument signed by my Trust Protector. My Trust Protector must deliver a copy of the amendment to the Income Beneficiaries and my Trustee.

**(i)     Not a General Power of Appointment**

My Trust Protector may not participate in the exercise of a power or a discretion conferred under this instrument that would cause my Trust Protector to possess a general power of appointment within the meaning of Internal Revenue Code Sections 2041 and 2514. Specifically, my Trust Protector may not use these powers for his or her personal benefit, nor for the discharge of his or her financial obligations.

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**(j)    Release of Powers**

My Trust Protector, acting on its own behalf and on behalf of all successor Trust Protectors, may irrevocably release, renounce, suspend, or reduce any or all powers and discretions conferred on my Trust Protector by this instrument by a written instrument delivered to my Trustee.

**(k)    No Duty to Monitor**

My Trust Protector has no duty to monitor any trust created under this instrument in order to determine whether any of the powers and discretions conferred by this instrument on my Trust Protector should be exercised. Further, my Trust Protector has no duty to be informed as to the acts or omissions of others, or to take any action to prevent or minimize loss. Any exercise or non-exercise of the powers and discretions granted to my Trust Protector is in his or her sole and absolute discretion, and will be binding and conclusive on all persons. My Trust Protector is not required to exercise any power or discretion granted under this instrument.

**(l)    Compensation**

Though not required to accept, any Trust Protector serving under this instrument is entitled to receive reasonable compensation for services as determined by my Trustee. My Trust Protector is entitled to reimbursement for all expenses incurred in the performance of its duties as Trust Protector, including travel expenses.

Serving in the capacity of Trust Protector does not prevent my Trust Protector from also providing legal, investment, or accounting services on behalf of the trust or the trust beneficiaries. If my Trust Protector is providing professional services, my Trust Protector may charge its typical fees for professional services, and may also be compensated for its services as Trust Protector.

**(m)    Right to Examine**

The books and records of each trust created under this instrument, including all documentation, inventories, and accountings, must be open and available for inspection by my Trust Protector at all reasonable times.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Four
# Administration of My Trust During My Incapacity

### Section 4.01    Definition of My Incapacity

I will be considered incapacitated during any time when I am unable to effectively manage my property or financial affairs because of age, illness, mental disorder, dependence on prescription medication or other substances, or any other cause.

### Section 4.02    Determination of My Incapacity

For purposes of this instrument, I am incapacitated if I am determined to be so under any one of the following Subsections.

#### (a)    Determination by Physicians

I will be considered incapacitated if two independent licensed physicians have determined my then-existing circumstances fall within the definition of incapacity as provided in Section 2.04.   For purposes of this determination, *two independent physicians* means two physicians who are not related to each other by blood or marriage, and are neither employed by nor principals of the same employer.  Physicians who are merely affiliated with the same hospital or other medical care facility may still qualify as independent physicians.

I will be considered restored to capacity if my personal or attending physician signs a written opinion that I can effectively manage my property and financial affairs.

#### (b)    Court Determination

I will be considered incapacitated if a court of competent jurisdiction determines that I am legally incapacitated, incompetent, or otherwise unable to effectively manage my property or financial affairs.

#### (c)    Detention, Disappearance, or Absence

I will be considered incapacitated if I have an unexplained disappearance or absence for more than 30 days, or if I am detained under duress.  My disappearance, absence, or detention under duress may be established by an affidavit of my Trustee, or, if no Trustee is then serving under this trust, by the affidavit of any beneficiary of any trust created under this instrument. The affidavit must describe the circumstances of my disappearance, absence, or detention under duress.  A third party dealing with my Trustee in good faith may always rely on the representations contained in the affidavit.

I will be considered restored to capacity upon my written notice to the successor Trustee that I can manage my property and financial affairs.

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025  |  (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

## Section 4.03    Trust Distributions during My Incapacity

During any period of time when I am incapacitated, my Trustee shall administer my trust and distribute its net income and principal as provided in this Section.

### (a)    Distributions for My Benefit

My Trustee shall regularly and conscientiously make appropriate distributions of income and principal for my general welfare and comfort under the circumstances existing at the time each distribution is made.

Appropriate distributions under this Subsection include the payment of any of my enforceable legal obligations and premiums for insurance policies owned by me or by my trust, including life, medical, disability, property and casualty, errors and omissions, and longterm health care policies.

My Trustee is authorized to honor pledges and continue to make gifts to charitable organizations that I have regularly supported in the customarily given amounts.

The examples included in this Subsection are for purposes of illustration only and are not intended to limit the authority of my Trustee to make any distribution for my benefit that my Trustee determines appropriate.

### (b)    Manner of Making Distributions

My Trustee may make distributions for my benefit in any one or more of the following ways:

> to me, but only to the extent I am able to manage these distributions;

> to other persons and entities for my use and benefit;

> to an agent or attorney in fact authorized to act for me under a legally valid durable power of attorney executed by me before my incapacity; and

> to my guardian or conservator who has assumed responsibility for me under any court order, decree, or judgment issued by a court of competent jurisdiction.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Five
# Administration of My Trust Upon My Death

### Section 5.01      My Trust Becomes Irrevocable

After my death, my trust is irrevocable and my Social Security number may no longer be used to identify the trust. My Trustee may need to apply for a separate Taxpayer Identification Number for the trust.

### Section 5.02      Administrative Trust

After my death and before the distribution of trust property as provided in the subsequent Articles of this trust, the trust will be an *administrative trust*, but may continue to be known as the Fred Lieberman's Survivor Trust dated. The administrative trust will continue for a reasonable period of time necessary to complete the administrative tasks set forth in this Article.

### Section 5.03      Payment of Expenses and Taxes

My Trustee may pay from the trust property:

> expenses of my last illness, funeral, and burial or cremation, including expenses of memorials and memorial services;

> legally enforceable claims against me or my estate;

> expenses of administering the trust and my estate; and

> court-ordered allowances for those dependent upon me.

These payments are discretionary with my Trustee. My Trustee may make decisions on these payments without regard to any limitation on payment of the expenses and may make payments without any court's approval. No third party may enforce any claim or right to payment against the trust by virtue of this discretionary authority.

If payment would decrease the federal estate tax charitable deduction available to my estate, my Trustee may not pay any administrative expenses from assets passing to an organization that qualifies for the federal estate tax charitable deduction.

My Trustee shall pay death taxes out of the trust property's principal, as provided in Section 2.13. But if a probate estate is opened within six months after the date of my death, my Personal Representative shall pay any outstanding claims and expenses as authorized by the Personal Representative, as well as any death taxes from my probate estate to the extent that the cash and readily marketable assets in my probate estate are sufficient.

### Section 5.04      Excluding Life Insurance Proceeds from Creditors

Despite anything to the contrary in this instrument, any life insurance proceeds payable to the Trustee under this instrument must never be or become part of my probate or

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

testamentary estate. Nothing in this instrument directs that these life insurance proceeds be used to pay my debts or expenses.

## Section 5.05     Payment of Death Taxes

For the purposes of this Article, the term *death taxes* refers to any taxes imposed by reason of my death by federal, state, or local authorities, including estate, inheritance, gift, and direct-skip generation-skipping transfer taxes.  For purposes of this Section, *death taxes* does not include any additional estate tax imposed by Internal Revenue Code Section 2031(c)(5)(C) or Section 2032A(c), or any other comparable recapture tax imposed by any taxing authority.  Nor does the term include any generation-skipping transfer tax, other than a direct-skip generation-skipping transfer tax.

Except as otherwise specified in this Article or elsewhere in this trust, my Trustee shall apportion death taxes among the beneficiaries as those beneficiaries are determined for the purpose of the tax.  In doing this, my Trustee shall charge the death taxes only against the property generating the tax, taking into consideration the applicable provisions of the Internal Revenue Code, other applicable laws apportioning the death taxes, and the provisions of any instrument governing the property.  The values used in determining the tax are to be used for tax apportionment purposes.

To the extent practicable, the Trustee shall deduct the death taxes from the property distributable under this trust, and must recover the allocable share of death taxes from the beneficiaries of property passing other than under this trust, unless the Trustee determines that the cost of recovery is greater than warranted.  If death taxes are not collected from the beneficiaries of property passing other than under this trust, the Trustee shall apportion this unrecovered amount equitably among the beneficiaries who are subject to apportionment.

## Section 5.06     Coordination with My Personal Representative

The following provisions are intended to help facilitate the coordination between my Personal Representative and my Trustee.  These provisions apply even if the Personal Representative and the Trustee are the same person or entity.

### (a)     Reliance on Information from My Personal Representative

My Trustee may rely upon the written request of my Personal Representative for payments authorized under this Article and the amounts included in those payments without computing the sums involved.  If a payment is made under this Article to my Personal Representative, my Trustee will have no duty to inquire into the application of the payment.

### (b)     Receipt of Probate Property

My Trustee may accept or decline any distributions of property tendered to my Trustee by my Personal Representative.  If my Trustee accepts the property, my Trustee may do so without audit, and will not be required to review the Personal Representative's records.

Fred Lieberman's Survivor Trust dated
5-2

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**(c)    Discretionary Distributions to My Personal Representative**

My Trustee may distribute cash, accrued income, or other trust property to my probate estate as a beneficiary of this trust, to the extent my Trustee determines that doing so is in the best interests of the trust beneficiaries.

## Section 5.07    Authority to Make Tax Elections

After my death, my Trustee may make tax elections as provided in this Section. But if a Personal Representative is appointed for my probate estate, the discretionary authority granted to my Trustee as to any tax election will be subordinate to the Personal Representative's statutorily delegated authority.

**(a)    Tax Elections**

My Trustee may make any tax elections necessary for the efficient administration of my estate, including:

> valuing assets according to an alternate valuation date;
>
> electing whether to take administration expenses as estate tax deductions or income tax deductions;
>
> allocating my unused generation-skipping exemption to any portion of the trust property;
>
> electing special-use valuation;
>
> deferring payment of all or any portion of any taxes;
>
> making any elections relative to the *Deceased Spousal Unused Exclusion Amount* to the extent and amount allowable under Internal Revenue Code Sections 2010(c)(4) and (5), all as my Trustee considers appropriate under then-prevailing circumstances; and
>
> treating any portion of my administrative trust as part of my estate for federal or state income tax purposes, or both.

In addition, my Trustee, in its sole and absolute discretion, may elect to waive, in whole or in part, my right to have my estate reimbursed for any tax paid as a result of the inclusion in my taxable estate of property held in a qualified terminable interest property (QTIP) trust created for me by my wife.

My Trustee may make equitable adjustments between income and principal because of any tax elections made by my Trustee.

**(b)    Allocation of GST Exemption**

My Trustee may elect to allocate or not allocate any portion of the Available GST Exemption under Internal Revenue Code Section 2631, or a

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

counterpart exemption under any applicable state law to any property of which I am considered the transferor for generation-skipping transfer tax purposes. This includes any property transferred by me during my life for which I did not make an allocation prior to death. The exercise of my Trustee's discretion should be based on the transfers, gift tax returns, and other information known to my Trustee, with no requirement that allocations benefit the various transferees or beneficiaries in any particular manner.

## Section 5.08    Payment of Charitable Bequests

To the extent possible, my Trustee must make all charitable distributions from property that constitutes *income in respect of a decedent* (IRD) as that term is defined under the U.S. income tax laws. The distribution will qualify for the income tax charitable deduction under Internal Revenue Code Section 642(c)(2), as amended.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Six
# Disposition of Tangible Personal Property

### Section 6.01     Distribution of Tangible Personal Property by Memorandum

I may dispose of items of tangible personal property by a signed written memorandum executed after I sign this instrument. The memorandum must refer to my trust and must reasonably identify the items and the beneficiary designated to receive each item. If I execute a memorandum, my Trustee shall incorporate the memorandum by reference into this instrument to the extent permitted by law.

My Trustee shall distribute the items of tangible personal property listed in the memorandum as promptly as practicable after my death, together with any insurance policies covering the property and any claims under those policies, as provided in the memorandum. If I leave multiple written memoranda that conflict as to the disposition of any item of tangible personal property, the memorandum with the most recent date will control as to that item.

If the memorandum with the most recent date conflicts with a provision of this instrument as to the specific distribution of any item of tangible personal property, the provisions of the memorandum with the most recent date will control as to those items that are in conflict.

If the law does not permit incorporation of the memorandum by reference, the memorandum will then serve as an amendment to my trust, but only to the extent this amendment solely disposes of tangible personal property. I request that my Trustee follow my wishes and distribute the items of tangible personal property listed in the memorandum according to its terms.

### Section 6.02     Distribution of Remaining Tangible Personal Property

My Trustee shall distribute any remaining tangible personal property not disposed of by a written memorandum to Suzanne Kristi Lieberman. If Suzanne Kristi Lieberman should predecease me, my Trustee shall distribute her share to her then living descendants as those descendants agree.

If Suzanne Kristi Lieberman should predecease me, and my Trustee determines that a descendant of Suzanne Kristi Lieberman is incapable of acting in his or her own best interest, my Trustee shall appoint a person to represent the descendant of Suzanne Kristi Lieberman in the division of the property. If Suzanne Kristi Lieberman's descendants are unable to agree upon the division of the property within six months after my death, my Trustee shall make the division according to my Trustee's discretion. My Trustee may use a lottery, rotation system, or any other method of allocation to determine the order of selection and distribution of the property. As an alternative, my Trustee may sell all or any portion of the property and distribute the net proceeds equally among Suzanne Kristi Lieberman's then-living descendants. Then my Trustee will not incur any liability to any party for decisions made by my Trustee with respect to the division or sale of tangible personal property. Any decision made by my Trustee will be final and binding on all beneficiaries.

Fred Lieberman's Survivor Trust dated
6-1

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

### Section 6.03    Apportionment of Taxes

My Trustee shall apportion death taxes to the recipient of any distribution of any item or items of tangible personal property, notwithstanding the provisions of .

### Section 6.04    Definition of Tangible Personal Property

For purposes of this Article, the term *tangible personal property* includes household furnishings, appliances and fixtures, works of art, motor vehicles, pictures, collectibles, apparel and jewelry, books, sporting goods, and hobby paraphernalia. The term does not include any property that my Trustee, in its sole and absolute discretion, determines to be part of any business or business interest owned by me or my trust.

After my death, if my Trustee receives property to be distributed under this Article from my probate estate or in any other manner, my Trustee shall distribute the property in accordance with this Article's terms. The fact that an item of tangible personal property was not received by my trust until after my death does not diminish the validity of the gift. If property to be distributed under this Article is not part of the trust property upon my death and is not subsequently transferred to my Trustee from my probate estate or in any other manner, then the specific distribution of property made in this Article is null and void, without any legal or binding effect.

### Section 6.05    Incidental Expenses and Encumbrances

Until property distributed in accordance with this Article is delivered to the appropriate beneficiary or his or her Legal Representative, my Trustee shall pay the reasonable expenses of securing, storing, insuring, packing, transporting, and otherwise caring for the property as an administration expense. Except as otherwise provided in my trust, my Trustee shall distribute property under this Article subject to all liens, security interests, and other encumbrances on the property.

### Section 6.06    Residuary Distribution

Any property not distributed under this or prior Articles of this instrument will be distributed as provided in the following Articles.

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Seven
## Distribution to My Descendants

My Trustee shall distribute my remaining trust property (not distributed under prior Articles of this instrument) outright and free of trust to my descendants, *by representation*. If a share is to be distributed to an incapacitated beneficiary or a beneficiary under the age of 25, my Trustee shall hold or distribute the share under the terms of .

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Eight
## Remote Contingent Distribution

If at any time no person or entity is qualified to receive final distribution of any part of my trust estate, this portion of my trust estate must be distributed to those persons who would inherit it had I then died intestate owning the property, as determined and in the proportions provided by the laws of Washington then in effect.

Notwithstanding the foregoing, if necessary to preserve a longer applicable distribution period, for each separate trust created under this trust which is governed by the accumulation trust provisions contained in , a person will be considered deceased if born before the Primary Beneficiary or, if there is no Primary Beneficiary, the oldest Income Beneficiary, of that separate trust who is entitled to distributions under the terms of that trust determined as of September 30th of the year following the year of my death, and any provision of the laws of Washington potentially requiring escheat or distribution to the state or a non-individual will be disregarded.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Nine
# Distributions to Underage and Incapacitated Beneficiaries

### Section 9.01    Supplemental Needs Trust

If under any provision of this trust my Trustee is directed to distribute to or for the benefit of any beneficiary when that person is receiving or applying for needs-based government benefits, my Trustee shall retain and administer the trust property as follows:

### (a)    Conduit Trust Distributions Not Included

Distributions from qualified retirement plans subject to the conduit trust provisions set forth in  are excluded from the application of this Section 1.01.

### (b)    Distributions for Supplemental Needs

In its sole, absolute, and unreviewable discretion, my Trustee may distribute discretionary amounts of net income and principal for supplemental needs of the beneficiary not otherwise provided by governmental financial assistance and benefits, or by the providers of services.

*Supplemental needs* refers to the basic requirements for maintaining the good health, safety, and welfare when, in the discretion of my Trustee, these basic requirements are not being provided by any public agency, office, or department of any state or of the United States.

*Supplemental needs* will also include medical and dental expenses; annual independent checkups; clothing and equipment; programs of training, education, treatment, and rehabilitation; private residential care; transportation, including vehicle purchases; maintenance; insurance; and essential dietary needs. *Supplemental needs* may include spending money; additional food; clothing; electronic equipment such as radio, recording and playback, television and computer equipment; camping; vacations; athletic contests; movies; trips; and money to purchase appropriate gifts for relatives and friends.

My Trustee will have no obligation to expend trust assets for these needs. But if my Trustee, in its sole, absolute and unreviewable discretion, decides to expend trust assets, under no circumstances should any amounts be paid to or reimbursed to the federal government, any state, or any governmental agency for any purpose, including for the care, support, and maintenance of the beneficiary.

Fred Lieberman's Survivor Trust dated
9-1
KFB Law Group, LLP, 12100 Wilshire Blvd., Suite 245, Los Angeles, California 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

Exhibit C

# The Fred Lieberman's Survivor Trust dated

## Article One
## Establishing My Trust

On August 2, 2019, I established the Fred Lieberman's Survivor Trust dated, and reserved the right to amend the trust, in whole or in part. On this day, June 15, 2022, I revoke all restatements and amendments to that instrument and now exercise my power to amend that instrument in its entirety, so that after amendment the Fred Lieberman's Survivor Trust dated now states:

The parties to this restated trust are Fred Lieberman (the *Grantor*) and Fred Lieberman (my *Trustee*).

I intend to create a valid trust under the laws of Washington and under the laws of any state in which any trust created under this trust document is administered. The terms of this trust prevail over any provision of Washington law, except those provisions that are mandatory and may not be waived.

### Section 1.01    Identifying My Trust

For convenience, my trust may be referred to as:

> "The Fred Lieberman's Survivor Trust dated August 2, 2019."

To the extent practicable, for the purpose of transferring property to my trust or identifying my trust in any beneficiary or pay-on-death designation, my trust should be identified as:

> "Fred Lieberman, Trustee, or his successors in interest, of the Fred Lieberman's Survivor Trust dated August 2, 2019, and any amendments thereto."

For all purposes concerning the identity of my trust or any property titled in or payable to my trust, any description referring to my trust will be effective if it reasonably identifies my trust and indicates that the trust property is held in a fiduciary capacity.

### Section 1.02    Reliance by Third Parties

Third parties may require documentation to verify the existence of this trust, or particular provisions of it, including the name of my Trustee or the powers held by my Trustee. To protect the confidentiality of this instrument, my Trustee may use an affidavit or a certification of trust that identifies my Trustee and sets forth the authority of my Trustee to transact business on behalf of my trust instead of providing a copy of this instrument. The affidavit or certification may include pertinent pages from this instrument, including title or signature pages.

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

A third party may rely upon an affidavit or certification of trust that is signed by my Trustee with respect to the representations contained in it. A third party relying upon an affidavit or certification of trust will be exonerated from any liability for actions the third party takes or does not take in reliance upon the representations contained in the affidavit or certification of trust.

A third party dealing with my Trustee will not be required to inquire into this trust's terms or the authority of my Trustee, or to see to the application of funds or other property received by my Trustee. My Trustee's receipt of any money or property paid, transferred, or delivered to my Trustee will be a sufficient discharge to the third party from all liability in connection with its application. A written statement by my Trustee is conclusive evidence of my Trustee's authority. Third parties are not liable for any loss resulting from their reliance on a written statement by my Trustee asserting my Trustee's authority or seeking to effect a transfer of property to or from the trust.

## Section 1.03    Transferring Property to My Trust

Any person or entity may transfer any property to my trust in any manner authorized by law.

### (a)    Initial Funding of My Trust

By executing this instrument, I transfer, convey, and assign to my Trustee the trust property described in the attached Schedule A.

### (b)    Acceptance by My Trustee

By executing this instrument, my Trustee accepts and agrees to hold the property transferred to the trust as trust property. All property transferred to my trust after the date of this trust must be acceptable to my Trustee. My Trustee may refuse to accept any property. My Trustee shall hold, administer, and dispose of all accepted trust property for my benefit and for the benefit of my beneficiaries, in accordance with the terms of this trust.

## Section 1.04    Powers Reserved by Me as Grantor

As Grantor, I retain the powers set forth in this Section in addition to any powers that I reserve in other provisions of this instrument.

### (a)    Action on Behalf of My Trust

Whenever I am serving as Trustee, I may act for and conduct business on behalf of my trust without the consent of any other Trustee.

### (b)    Amendment, Restatement, or Revocation

I may amend, restate, or revoke this instrument, in whole or in part, for any purpose.

Any amendment, restatement, or revocation must be made in writing and delivered to my then-serving Trustee.

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**(c)     Addition or Removal of Trust Property**

I may add property to my trust and may remove any property from my trust at any time.

**(d)     Control of Income and Principal Distributions**

I retain the right to control the distribution of income and principal from my trust.  I may direct my Trustee to distribute as much of the net income and principal of the trust property as I consider advisable to me or to other persons or entities.  My Trustee may distribute the net income and principal to me or for my unrestricted use and benefit, even to the exhaustion of all trust property.  Any undistributed net income is to be added to the principal of my trust.

**(e)     Approval of Investment Decisions**

I reserve the absolute right to review and change my Trustee's investment decisions.  But my Trustee is not required to seek my approval before making investment decisions.

## Section 1.05     Grantor Trust Status

By reserving the broad rights and powers set forth in Section 2.06 of this Article, I intend to qualify my trust as a *Grantor Trust* under Internal Revenue Code Sections 671 to 677. This means that, for federal income tax purposes, I will be treated as the owner of all the assets held in my trust during my lifetime, as if I held them in my individual capacity.

During any period that my trust is a Grantor Trust, the Taxpayer Identification Number of my trust will be my Social Security number, in accordance with Treasury Regulation Section 301.6109-1(a)(2).

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

## Article Two
## Family Information

I was married to Martha Londono on December 10, 1988, who died on August 20, 2019.

I have one child, Suzanne Kristi Lieberman.

All references in this document to *my children* are references to this child.

References to *my descendants* are to my children and their descendants, including any deceased child's descendants.

I have also provided for the following individuals in this trust:

| Name | Relationship |
|------|--------------|
| Clara Londono | step-daughter |
| Gloria Londono | step-daughter |
| Luis Londono | stepson |
| Miguel Londono | stepson |

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Three
# Trustee Succession and Trust Protector Provisions

### Section 3.01    Resignation of a Trustee

A Trustee may resign by giving written notice to me. If I am incapacitated or deceased, a resigning Trustee must give written notice to the trust's Income Beneficiaries and to any other then-serving Trustee.

Upon the resignation of a Trustee, the resigning Trustee may appoint the resigning Trustee's successor as Trustee in the manner set forth in Section 2.04, concurrent with the written notice described above. If the resigning Trustee fails to make the appointment, the other provisions of this Article regarding Trustee succession upon my incapacity or my death will govern, and the next named successor or successors to the resigning Trustee will serve in the order listed. Likewise, if no named successors to the resigning Trustees are available to serve and the resigning Trustee fails to designate a successor, the other provisions of this Article regarding the filling of a vacant Trustee office will govern.

### Section 3.02    Trustee Succession during My Lifetime

During my lifetime, this Section governs the removal and replacement of my Trustees.

#### (a)    Removal and Replacement by Me

I may remove any Trustee with or without cause at any time. If a Trustee is removed, resigns, or cannot continue to serve for any reason, I may serve as sole Trustee, appoint a Trustee to serve with me, or appoint a successor Trustee.

#### (b)    During My Incapacity

During any time that I am incapacitated, the following will replace any then-serving Trustee in this order:

Suzanne Kristi Lieberman then

David L. Rice

If I am incapacitated, a majority of my children may remove any Trustee with or without cause. This does not limit the authority of a Trust Protector to remove a Trustee under the provisions of Section 2.11(i) of this Article.

If I am incapacitated and no named successor Trustee has been designated, my Trust Protector may appoint my successor Trustee. If my Trust Protector is unable to name my successor Trustee, a majority of my children may appoint my successor Trustee.

If a Trustee vacancy due to resignation arises, the previous provisions apply only if the resigning Trustee fails to appoint a successor Trustee in the manner more fully set forth in Section 2.01.

Fred Lieberman's Survivor Trust dated

3-1

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

My Legal Representative may petition a court of competent jurisdiction to appoint a successor Trustee to fill any vacancy lasting longer than 30 days. The petition may subject the trust to the jurisdiction of the court only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

All appointments, removals, and revocations must be by signed written instrument.

## Section 3.03    Trustee Succession after My Death

After my death, this Section will govern the removal and replacement of my Trustees.

### (a)    Successor Trustee

I name the following, in this order, to serve as my successor Trustee after my death, replacing any then-serving Trustee:

Suzanne Kristi Lieberman

### (b)    Removal of a Trustee

A majority of the Income Beneficiaries of any trust created under this instrument may remove a Trustee of the trust at any time, with or without cause.

A Trustee may be removed under this Subsection only if the person having the right of removal appoints an individual or a corporate fiduciary by the effective removal date and the individual or corporate fiduciary simultaneously commences service as Trustee. This appointed Trustee may not be related or subordinate to the person or persons having the right of removal within the meaning of Internal Revenue Code Section 672(c).

The right to remove a Trustee under this Subsection is not to be interpreted as granting the person holding that right any of the powers of that Trustee.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

Nothing in this Subsection limits the authority of a Trust Protector to remove a Trustee under the provisions of Section 2.11(i) of this Article.

### (c)    Default of Designation

If the office of Trustee of a trust created under this instrument is vacant and no designated successor Trustee is able and willing to act as Trustee, my Trust Protector may appoint a successor Trustee. If my Trust Protector is unable or unwilling to act, the trust's Primary Beneficiary may appoint an individual or corporate fiduciary that is not related or subordinate to the person or persons making the appointment within the meaning of Section 672(c) of the Internal Revenue Code as successor Trustee.

Fred Lieberman's Survivor Trust dated
3-2

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

Any beneficiary may petition a court of competent jurisdiction to appoint a successor Trustee to fill any vacancy lasting longer than 30 days. The petition may subject the trust to the jurisdiction of the court only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

If a Trustee vacancy arises due to resignation, the previous provisions apply only if the resigning Trustee fails to appoint a successor Trustee in the manner more fully set forth in Section 2.01.

## Section 3.04    Notice of Removal and Appointment

Notice of removal must be in writing and delivered to the Trustee being removed and to any other then-serving Trustees. The removal becomes effective in accordance with its provisions.

Notice of appointment must be in writing and delivered to the successor Trustee and to any other then-serving Trustees. The appointment becomes effective at the time of acceptance by the successor Trustee. A copy of the notice may be attached to this instrument.

## Section 3.05    Appointment of a Co-Trustee

Any individual Trustee may appoint an individual or a corporate fiduciary as a Co-Trustee. This Co-Trustee serves only as long as the appointing Trustee serves, or as long as the last to serve if more than one Trustee appointed the Co-Trustee. This Co-Trustee will not become a successor Trustee upon the death, resignation, or incapacity of the appointing Trustee, unless appointed under the terms of this instrument. Although this Co-Trustee may exercise all the powers of the appointing Trustee, the combined powers of this Co-Trustee and the appointing Trustee may not exceed the powers of the appointing Trustee alone. The Trustee appointing a Co-Trustee may revoke the appointment at any time, with or without cause.

## Section 3.06    Corporate Fiduciaries

Any corporate fiduciary serving under this instrument as a Trustee must be a bank, trust company, or public charity that is qualified to act as a fiduciary under applicable federal and state law and that is not related or subordinate to any beneficiary within the meaning of Internal Revenue Code Section 672(c).

This corporate fiduciary must:

> have a combined capital and surplus of at least Five Hundred Million Dollars; or

> maintain in force an insurance policy with policy limits of not less than Five Hundred Million Dollars covering the errors and omissions of my Trustee

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

with a solvent insurance carrier licensed to do business in the state in which my Trustee has its corporate headquarters.

## Section 3.07    Incapacity of a Trustee

If any individual Trustee becomes incapacitated, the incapacitated Trustee need not resign as Trustee. For Trustees other than me, a written declaration of incapacity by the Co-Trustee or, if none, by the party designated to succeed the incapacitated Trustee, made in good faith and supported by a written opinion of incapacity by a physician who has examined the incapacitated Trustee, will terminate the trusteeship. If the Trustee designated in the written declaration refuses to sign the necessary medical releases needed to obtain the physician's written opinion of incapacity within 10 days, the trusteeship will be terminated.

## Section 3.08    Appointment of Independent Special Trustee

If for any reason the Trustee of any trust created under this instrument is unwilling or unable to act with respect to any trust property or any provision of this instrument, my Trust Protector shall appoint, in writing, a corporate fiduciary or an individual to serve as an Independent Special Trustee as to this property or with respect to this provision. The Independent Special Trustee appointed may not be related or subordinate to any trust beneficiary within the meaning of Internal Revenue Code Section 672(c). My Trust Protector may revoke any appointment of this kind at any time.

An Independent Special Trustee will exercise all fiduciary powers granted by this trust unless expressly limited elsewhere in this instrument or by my Trust Protector in the instrument appointing the Independent Special Trustee. An Independent Special Trustee may resign at any time by delivering written notice of resignation to my Trust Protector. Notice of resignation will be effective in accordance with the terms of the notice.

## Section 3.09    Rights and Obligations of Successor Trustees

Each successor Trustee serving under this instrument, whether corporate or individual, will have all of the title, rights, powers, and privileges granted to the initial Trustee named under this instrument. In addition, each successor Trustee will be subject to all of the restrictions imposed upon, as well as to all discretionary and ministerial obligations and duties given to the initial Trustee named under this instrument.

## Section 3.10    Prohibited Trustees

Notwithstanding anything in this instrument to the contrary, a beneficiary of a supplemental needs trust established under this instrument may not, at any time, serve as Trustee of the supplemental needs trust. If a beneficiary has been nominated to serve as a Trustee of the supplemental needs trust, that nomination will be null and void and the remaining provisions of this instrument with respect to Trustee succession will apply.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

## Section 3.11    Provisions for Trust Protector

The function of the Trust Protector is to direct my Trustee in matters concerning the trust, and to assist, if needed, in achieving my objectives as manifested by the other provisions of my estate plan.

Any Trust Protector named or appointed under this Section must be a corporate fiduciary or an individual who is not related or subordinate to me while I am still living or to any beneficiary within the meaning of Internal Revenue Code Section 672(c). Notwithstanding any provision that may seem to the contrary, a Trust Protector shall not act while I am still living unless I am incapacitated.

### (a)    Designation of Trust Protector

During any period this instrument authorizes or requires a Trust Protector to act, a majority of the Income Beneficiaries of this trust or any trust created under this instrument may appoint a corporate fiduciary or individual of a type described in Section 2.11 of this instrument as Trust Protector. During the period of my incapacity, if the trust names no Income Beneficiaries except me, my Legal Representative may make the appointment of a Trust Protector.

But during any period this instrument requires a Trust Protector to act and no Trust Protector is then serving and a majority of the trust's Income Beneficiaries or my Legal Representative fails to make the appointment after 30 days, any beneficiary may petition a court of competent jurisdiction to appoint a Trust Protector.

The court acting to appoint a Trust Protector will acquire jurisdiction or authority over the trust only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

### (b)    Resignation of Trust Protector

A Trust Protector may resign by giving notice to the trust's Income Beneficiaries and the then-serving Trustee.

A Trust Protector's resignation takes effect on the date set forth in the notice, but never earlier than 30 days after the delivery date of the resignation notice, unless an earlier effective date is agreed to by me or the Trustee. A resigning Trust Protector will not be liable or responsible for the act of any successor Trust Protector.

### (c)    Authority of My Trust Protector to Appoint a Successor Trust Protector

Any Trust Protector, including successor Trust Protectors, may appoint a successor Trust Protector in writing. The appointment of a successor will

Fred Lieberman's Survivor Trust dated
3-5

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

take effect upon the death, resignation, or incapacity of the appointing Trust Protector.

### (d)    Removal of a Trust Protector

After my death, Suzanne Kristi Lieberman may remove a Trust Protector of any trust at any time, with or without cause.

### (e)    Rights of Successor Trust Protectors

A successor Trust Protector has all of the authority of any predecessor Trust Protector, but will not be responsible for the predecessor's acts, omissions, or forbearances.

### (f)    Power to Remove and Appoint Trustees

During any time I am incapacitated and following my death, my Trust Protector may remove any Trustee of a trust created under this instrument.

If the office of Trustee of a trust is vacant and no successor Trustee is designated, my Trust Protector may appoint an individual or a corporate fiduciary to serve as Trustee.

A Trust Protector may not appoint itself as a Trustee, and may not simultaneously serve as both Trust Protector and Trustee.

### (g)    Good Faith Standard Imposed

The authority of my Trust Protector is conferred in a nonfiduciary capacity, and my Trust Protector is not liable for any action taken in good faith. My Trust Protector is not liable for any act, omission, or forbearance. My Trust Protector must be reimbursed promptly for any costs incurred in defending or settling any claim brought against it in its capacity as Trust Protector, unless it is conclusively established that the act, omission, or forbearance was motivated by an actual intent to harm the trust beneficiaries, or was an act of self-dealing for personal benefit.

### (h)    Power to Amend Trust Provisions

During any time I am incapacitated and following my death, my Trust Protector may amend any provision of this instrument as it applies to any trust to which the Trust Protector is serving as Trust Protector to:

> alter the administrative and investment powers of my Trustee;

> reflect tax or other legal changes that affect trust administration. I recognize that the gift, estate, generation-skipping transfer tax, and income tax provisions of the Internal Revenue Code and Treasury Regulations are subject to change. I grant my Trust Protector the authority to amend this trust instrument's terms in this manner as will, in my

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

Trust Protector's sole and absolute discretion, eliminate or minimize the state and federal taxes payable to my estate, and provide the maximum benefit to my beneficiaries as expressed in this instrument. This includes dividing the trust property into separate shares or funds;

correct ambiguities, including scrivener errors, that might otherwise require court construction or reformation; and

grant a beneficiary of any trust created under this instrument the testamentary power to appoint all or part of the beneficiary's trust or trust share to the creditors of the beneficiary's estate. As a condition for the beneficiary's exercise of this power, my Trust Protector may require that the beneficiary first obtain the consent of my Trust Protector. Any testamentary power of appointment granted by my Trust Protector must be in writing, and may be revoked by my Trust Protector throughout that beneficiary's lifetime. I suggest that my Trust Protector exercise this authority to subject trust property to estate tax instead of the generation-skipping transfer tax when it appears that it may reduce overall taxes.

My Trust Protector may not amend this instrument in any manner that would result in a reduction in the estate tax charitable deduction under Section 2055 to which my estate would otherwise be entitled. Further, my Trust Protector may not limit or alter the rights of a beneficiary in any trust assets held by the trust before the amendment.

Any amendment made by my Trust Protector in good faith is conclusive on all persons interested in the trust, and my Trust Protector is not liable for the consequences of making or not making any amendment. Any amendment to this instrument made by my Trust Protector must be made in a written instrument signed by my Trust Protector. My Trust Protector must deliver a copy of the amendment to the Income Beneficiaries and my Trustee.

## (i)    Not a General Power of Appointment

My Trust Protector may not participate in the exercise of a power or a discretion conferred under this instrument that would cause my Trust Protector to possess a general power of appointment within the meaning of Internal Revenue Code Sections 2041 and 2514. Specifically, my Trust Protector may not use these powers for his or her personal benefit, nor for the discharge of his or her financial obligations.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**(j)      Release of Powers**

My Trust Protector, acting on its own behalf and on behalf of all successor Trust Protectors, may irrevocably release, renounce, suspend, or reduce any or all powers and discretions conferred on my Trust Protector by this instrument by a written instrument delivered to my Trustee.

**(k)      No Duty to Monitor**

My Trust Protector has no duty to monitor any trust created under this instrument in order to determine whether any of the powers and discretions conferred by this instrument on my Trust Protector should be exercised. Further, my Trust Protector has no duty to be informed as to the acts or omissions of others, or to take any action to prevent or minimize loss. Any exercise or non-exercise of the powers and discretions granted to my Trust Protector is in his or her sole and absolute discretion, and will be binding and conclusive on all persons. My Trust Protector is not required to exercise any power or discretion granted under this instrument.

**(l)      Compensation**

Though not required to accept, any Trust Protector serving under this instrument is entitled to receive reasonable compensation for services as determined by my Trustee. My Trust Protector is entitled to reimbursement for all expenses incurred in the performance of its duties as Trust Protector, including travel expenses.

Serving in the capacity of Trust Protector does not prevent my Trust Protector from also providing legal, investment, or accounting services on behalf of the trust or the trust beneficiaries. If my Trust Protector is providing professional services, my Trust Protector may charge its typical fees for professional services, and may also be compensated for its services as Trust Protector.

**(m)      Right to Examine**

The books and records of each trust created under this instrument, including all documentation, inventories, and accountings, must be open and available for inspection by my Trust Protector at all reasonable times.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Four
## Administration of My Trust During My Incapacity

### Section 4.01    Definition of My Incapacity

I will be considered incapacitated during any time when I am unable to effectively manage my property or financial affairs because of age, illness, mental disorder, dependence on prescription medication or other substances, or any other cause.

### Section 4.02    Determination of My Incapacity

For purposes of this instrument, I am incapacitated if I am determined to be so under any one of the following Subsections.

#### (a)    Determination by Physicians

I will be considered incapacitated if two independent licensed physicians have determined my then-existing circumstances fall within the definition of incapacity as provided in Section 2.04.   For purposes of this determination, *two independent physicians* means two physicians who are not related to each other by blood or marriage, and are neither employed by nor principals of the same employer.  Physicians who are merely affiliated with the same hospital or other medical care facility may still qualify as independent physicians.

I will be considered restored to capacity if my personal or attending physician signs a written opinion that I can effectively manage my property and financial affairs.

#### (b)    Court Determination

I will be considered incapacitated if a court of competent jurisdiction determines that I am legally incapacitated, incompetent, or otherwise unable to effectively manage my property or financial affairs.

#### (c)    Detention, Disappearance, or Absence

I will be considered incapacitated if I have an unexplained disappearance or absence for more than 30 days, or if I am detained under duress.  My disappearance, absence, or detention under duress may be established by an affidavit of my Trustee, or, if no Trustee is then serving under this trust, by the affidavit of any beneficiary of any trust created under this instrument. The affidavit must describe the circumstances of my disappearance, absence, or detention under duress.  A third party dealing with my Trustee in good faith may always rely on the representations contained in the affidavit.

I will be considered restored to capacity upon my written notice to the successor Trustee that I can manage my property and financial affairs.

Fred Lieberman's Survivor Trust dated

4-1

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

### Section 4.03    Trust Distributions during My Incapacity

During any period of time when I am incapacitated, my Trustee shall administer my trust and distribute its net income and principal as provided in this Section.

#### (a)    Distributions for My Benefit

My Trustee shall regularly and conscientiously make appropriate distributions of income and principal for my general welfare and comfort under the circumstances existing at the time each distribution is made.

Appropriate distributions under this Subsection include the payment of any of my enforceable legal obligations and premiums for insurance policies owned by me or by my trust, including life, medical, disability, property and casualty, errors and omissions, and longterm health care policies.

My Trustee is authorized to honor pledges and continue to make gifts to charitable organizations that I have regularly supported in the customarily given amounts.

The examples included in this Subsection are for purposes of illustration only and are not intended to limit the authority of my Trustee to make any distribution for my benefit that my Trustee determines appropriate.

#### (b)    Manner of Making Distributions

My Trustee may make distributions for my benefit in any one or more of the following ways:

> to me, but only to the extent I am able to manage these distributions;

> to other persons and entities for my use and benefit;

> to an agent or attorney in fact authorized to act for me under a legally valid durable power of attorney executed by me before my incapacity; and

> to my guardian or conservator who has assumed responsibility for me under any court order, decree, or judgment issued by a court of competent jurisdiction.

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025  |  (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Five
# Administration of My Trust Upon My Death

### Section 5.01    My Trust Becomes Irrevocable

After my death, my trust is irrevocable and my Social Security number may no longer be used to identify the trust. My Trustee may need to apply for a separate Taxpayer Identification Number for the trust.

### Section 5.02    Administrative Trust

After my death and before the distribution of trust property as provided in the subsequent Articles of this trust, the trust will be an *administrative trust*, but may continue to be known as the Fred Lieberman's Survivor Trust dated. The administrative trust will continue for a reasonable period of time necessary to complete the administrative tasks set forth in this Article.

### Section 5.03    Payment of Expenses and Taxes

My Trustee may pay from the trust property:

> expenses of my last illness, funeral, and burial or cremation, including expenses of memorials and memorial services;

> legally enforceable claims against me or my estate;

> expenses of administering the trust and my estate; and

> court-ordered allowances for those dependent upon me.

These payments are discretionary with my Trustee. My Trustee may make decisions on these payments without regard to any limitation on payment of the expenses and may make payments without any court's approval. No third party may enforce any claim or right to payment against the trust by virtue of this discretionary authority.

If payment would decrease the federal estate tax charitable deduction available to my estate, my Trustee may not pay any administrative expenses from assets passing to an organization that qualifies for the federal estate tax charitable deduction.

My Trustee shall pay death taxes out of the trust property's principal, as provided in Section 2.13. But if a probate estate is opened within six months after the date of my death, my Personal Representative shall pay any outstanding claims and expenses as authorized by the Personal Representative, as well as any death taxes from my probate estate to the extent that the cash and readily marketable assets in my probate estate are sufficient.

### Section 5.04    Excluding Life Insurance Proceeds from Creditors

Despite anything to the contrary in this instrument, any life insurance proceeds payable to the Trustee under this instrument must never be or become part of my probate or

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

testamentary estate. Nothing in this instrument directs that these life insurance proceeds be used to pay my debts or expenses.

### Section 5.05    Payment of Death Taxes

For the purposes of this Article, the term *death taxes* refers to any taxes imposed by reason of my death by federal, state, or local authorities, including estate, inheritance, gift, and direct-skip generation-skipping transfer taxes. For purposes of this Section, *death taxes* does not include any additional estate tax imposed by Internal Revenue Code Section 2031(c)(5)(C) or Section 2032A(c), or any other comparable recapture tax imposed by any taxing authority. Nor does the term include any generation-skipping transfer tax, other than a direct-skip generation-skipping transfer tax.

Except as otherwise specified in this Article or elsewhere in this trust, my Trustee shall apportion death taxes among the beneficiaries as those beneficiaries are determined for the purpose of the tax. In doing this, my Trustee shall charge the death taxes only against the property generating the tax, taking into consideration the applicable provisions of the Internal Revenue Code, other applicable laws apportioning the death taxes, and the provisions of any instrument governing the property. The values used in determining the tax are to be used for tax apportionment purposes.

To the extent practicable, the Trustee shall deduct the death taxes from the property distributable under this trust, and must recover the allocable share of death taxes from the beneficiaries of property passing other than under this trust, unless the Trustee determines that the cost of recovery is greater than warranted. If death taxes are not collected from the beneficiaries of property passing other than under this trust, the Trustee shall apportion this unrecovered amount equitably among the beneficiaries who are subject to apportionment.

### Section 5.06    Coordination with My Personal Representative

The following provisions are intended to help facilitate the coordination between my Personal Representative and my Trustee. These provisions apply even if the Personal Representative and the Trustee are the same person or entity.

#### (a)    Reliance on Information from My Personal Representative

My Trustee may rely upon the written request of my Personal Representative for payments authorized under this Article and the amounts included in those payments without computing the sums involved. If a payment is made under this Article to my Personal Representative, my Trustee will have no duty to inquire into the application of the payment.

#### (b)    Receipt of Probate Property

My Trustee may accept or decline any distributions of property tendered to my Trustee by my Personal Representative. If my Trustee accepts the property, my Trustee may do so without audit, and will not be required to review the Personal Representative's records.

Fred Lieberman's Survivor Trust dated

5-2

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**(c)    Discretionary Distributions to My Personal Representative**

My Trustee may distribute cash, accrued income, or other trust property to my probate estate as a beneficiary of this trust, to the extent my Trustee determines that doing so is in the best interests of the trust beneficiaries.

### Section 5.07    Authority to Make Tax Elections

After my death, my Trustee may make tax elections as provided in this Section. But if a Personal Representative is appointed for my probate estate, the discretionary authority granted to my Trustee as to any tax election will be subordinate to the Personal Representative's statutorily delegated authority.

**(a)    Tax Elections**

My Trustee may make any tax elections necessary for the efficient administration of my estate, including:

> valuing assets according to an alternate valuation date;

> electing whether to take administration expenses as estate tax deductions or income tax deductions;

> allocating my unused generation-skipping exemption to any portion of the trust property;

> electing special-use valuation;

> deferring payment of all or any portion of any taxes;

> making any elections relative to the *Deceased Spousal Unused Exclusion Amount* to the extent and amount allowable under Internal Revenue Code Sections 2010(c)(4) and (5), all as my Trustee considers appropriate under then-prevailing circumstances; and

> treating any portion of my administrative trust as part of my estate for federal or state income tax purposes, or both.

In addition, my Trustee, in its sole and absolute discretion, may elect to waive, in whole or in part, my right to have my estate reimbursed for any tax paid as a result of the inclusion in my taxable estate of property held in a qualified terminable interest property (QTIP) trust created for me by my wife.

My Trustee may make equitable adjustments between income and principal because of any tax elections made by my Trustee.

**(b)    Allocation of GST Exemption**

My Trustee may elect to allocate or not allocate any portion of the Available GST Exemption under Internal Revenue Code Section 2631, or a

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

counterpart exemption under any applicable state law to any property of which I am considered the transferor for generation-skipping transfer tax purposes. This includes any property transferred by me during my life for which I did not make an allocation prior to death. The exercise of my Trustee's discretion should be based on the transfers, gift tax returns, and other information known to my Trustee, with no requirement that allocations benefit the various transferees or beneficiaries in any particular manner.

### Section 5.08    Payment of Charitable Bequests

To the extent possible, my Trustee must make all charitable distributions from property that constitutes *income in respect of a decedent* (IRD) as that term is defined under the U.S. income tax laws. The distribution will qualify for the income tax charitable deduction under Internal Revenue Code Section 642(c)(2), as amended.

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Six
# Disposition of Tangible Personal Property

### Section 6.01    Distribution of Tangible Personal Property by Memorandum

I may dispose of items of tangible personal property by a signed written memorandum executed after I sign this instrument. The memorandum must refer to my trust and must reasonably identify the items and the beneficiary designated to receive each item. If I execute a memorandum, my Trustee shall incorporate the memorandum by reference into this instrument to the extent permitted by law.

My Trustee shall distribute the items of tangible personal property listed in the memorandum as promptly as practicable after my death, together with any insurance policies covering the property and any claims under those policies, as provided in the memorandum. If I leave multiple written memoranda that conflict as to the disposition of any item of tangible personal property, the memorandum with the most recent date will control as to that item.

If the memorandum with the most recent date conflicts with a provision of this instrument as to the specific distribution of any item of tangible personal property, the provisions of the memorandum with the most recent date will control as to those items that are in conflict.

If the law does not permit incorporation of the memorandum by reference, the memorandum will then serve as an amendment to my trust, but only to the extent this amendment solely disposes of tangible personal property. I request that my Trustee follow my wishes and distribute the items of tangible personal property listed in the memorandum according to its terms.

### Section 6.02    Distribution of Remaining Tangible Personal Property

My Trustee shall distribute any remaining tangible personal property not disposed of by a written memorandum to Suzanne Kristi Lieberman. If Suzanne Kristi Lieberman should predecease me, my Trustee shall distribute her share to her then living descendants as those descendants agree.

If Suzanne Kristi Lieberman should predecease me, and my Trustee determines that a descendant of Suzanne Kristi Lieberman is incapable of acting in his or her own best interest, my Trustee shall appoint a person to represent the descendant of Suzanne Kristi Lieberman in the division of the property. If Suzanne Kristi Lieberman's descendants are unable to agree upon the division of the property within six months after my death, my Trustee shall make the division according to my Trustee's discretion. My Trustee may use a lottery, rotation system, or any other method of allocation to determine the order of selection and distribution of the property. As an alternative, my Trustee may sell all or any portion of the property and distribute the net proceeds equally among Suzanne Kristi Lieberman's then-living descendants. My Trustee will not incur any liability to any party for decisions made by my Trustee with respect to the division or sale of tangible personal property. Any decision made by my Trustee will be final and binding on all beneficiaries.

KFB Law Group, LLP, 12100 Wilshire Blvd., Suite 245, Los Angeles, California 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

### Section 6.03    Apportionment of Taxes

My Trustee shall apportion death taxes to the recipient of any distribution of any item or items of tangible personal property, notwithstanding the provisions of .

### Section 6.04    Definition of Tangible Personal Property

For purposes of this Article, the term *tangible personal property* includes household furnishings, appliances and fixtures, works of art, motor vehicles, pictures, collectibles, apparel and jewelry, books, sporting goods, and hobby paraphernalia. The term does not include any property that my Trustee, in its sole and absolute discretion, determines to be part of any business or business interest owned by me or my trust.

After my death, if my Trustee receives property to be distributed under this Article from my probate estate or in any other manner, my Trustee shall distribute the property in accordance with this Article's terms. The fact that an item of tangible personal property was not received by my trust until after my death does not diminish the validity of the gift. If property to be distributed under this Article is not part of the trust property upon my death and is not subsequently transferred to my Trustee from my probate estate or in any other manner, then the specific distribution of property made in this Article is null and void, without any legal or binding effect.

### Section 6.05    Incidental Expenses and Encumbrances

Until property distributed in accordance with this Article is delivered to the appropriate beneficiary or his or her Legal Representative, my Trustee shall pay the reasonable expenses of securing, storing, insuring, packing, transporting, and otherwise caring for the property as an administration expense. Except as otherwise provided in my trust, my Trustee shall distribute property under this Article subject to all liens, security interests, and other encumbrances on the property.

### Section 6.06    Residuary Distribution

Any property not distributed under this or prior Articles of this instrument will be distributed as provided in the following Articles.

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Seven
## Distribution to My Descendants

My Trustee shall distribute my remaining trust property (not distributed under prior Articles of this instrument) outright and free of trust to my descendants, *by representation*. If a share is to be distributed to an incapacitated beneficiary or a beneficiary under the age of 25, my Trustee shall hold or distribute the share under the terms of .

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Eight
# Remote Contingent Distribution

If at any time no person or entity is qualified to receive final distribution of any part of my trust estate, this portion of my trust estate must be distributed to those persons who would inherit it had I then died intestate owning the property, as determined and in the proportions provided by the laws of Washington then in effect.

Notwithstanding the foregoing, if necessary to preserve a longer applicable distribution period, for each separate trust created under this trust which is governed by the accumulation trust provisions contained in , a person will be considered deceased if born before the Primary Beneficiary or, if there is no Primary Beneficiary, the oldest Income Beneficiary, of that separate trust who is entitled to distributions under the terms of that trust determined as of September 30th of the year following the year of my death, and any provision of the laws of Washington potentially requiring escheat or distribution to the state or a non-individual will be disregarded.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Nine
# Distributions to Underage and Incapacitated Beneficiaries

## Section 9.01    Supplemental Needs Trust

If under any provision of this trust my Trustee is directed to distribute to or for the benefit of any beneficiary when that person is receiving or applying for needs-based government benefits, my Trustee shall retain and administer the trust property as follows:

### (a)    Conduit Trust Distributions Not Included

Distributions from qualified retirement plans subject to the conduit trust provisions set forth in   are excluded from the application of this Section 1.01.

### (b)    Distributions for Supplemental Needs

In its sole, absolute, and unreviewable discretion, my Trustee may distribute discretionary amounts of net income and principal for supplemental needs of the beneficiary not otherwise provided by governmental financial assistance and benefits, or by the providers of services.

*Supplemental needs* refers to the basic requirements for maintaining the good health, safety, and welfare when, in the discretion of my Trustee, these basic requirements are not being provided by any public agency, office, or department of any state or of the United States.

*Supplemental needs* will also include medical and dental expenses; annual independent checkups; clothing and equipment; programs of training, education, treatment, and rehabilitation; private residential care; transportation, including vehicle purchases; maintenance; insurance; and essential dietary needs. *Supplemental needs* may include spending money; additional food; clothing; electronic equipment such as radio, recording and playback, television and computer equipment; camping; vacations; athletic contests; movies; trips; and money to purchase appropriate gifts for relatives and friends.

My Trustee will have no obligation to expend trust assets for these needs. But if my Trustee, in its sole, absolute and unreviewable discretion, decides to expend trust assets, under no circumstances should any amounts be paid to or reimbursed to the federal government, any state, or any governmental agency for any purpose, including for the care, support, and maintenance of the beneficiary.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**(c)    Objective to Promote Independence of the Beneficiary**

While actions are in my Trustee's sole, absolute, and unreviewable discretion, all parties to this trust should be mindful that my wish is that the beneficiary live as independently, productively, and happily as possible.

**(d)    Trust Assets Not to be Considered Available Resource to the Beneficiary**

The purpose of the provisions of this Section 1.01 is to supplement any benefits received, or for which the beneficiary may be eligible, from various governmental assistance programs, and not to supplant any benefits of this kind. All actions of my Trustee shall be directed toward carrying out this intent, and my Trustee's discretion granted under this instrument to carry out this intent is sole, absolute, and unreviewable.

For purposes of determining the beneficiary's eligibility for any of these benefits, no part of the trust estate's principal or undistributed income will be considered available to the beneficiary for public benefit purposes. The beneficiary must not be considered to have access to the trust's principal or income, or to have ownership, right, authority, or power to convert any asset into cash for his or her own use.

My Trustee shall hold, administer, and distribute all property allocated to this trust for the exclusive benefit of the beneficiary during his or her lifetime. All distributions from this trust share are in the sole, absolute, and unreviewable discretion of my Trustee, and the beneficiary is legally restricted from demanding trust assets for his or her support and maintenance.

In the event my Trustee is requested to release principal or income of the trust to or on behalf of the beneficiary to pay for equipment, medication, or services that any government agency is authorized to provide, or to petition a court or any other administrative agency for the release of trust principal or income for this purpose, my Trustee is authorized to deny this request and to take whatever administrative or judicial steps are necessary to continue the beneficiary's eligibility for benefits. This includes obtaining legal advice about the beneficiary's specific entitlement to public benefits and obtaining instructions from a court of competent jurisdiction ruling that neither the trust corpus nor the trust income is available to the beneficiary for eligibility purposes. Any expenses incurred by my Trustee in this regard, including reasonable attorney fees, will be a proper charge to the trust estate.

**(e)    Distribution Guidelines**

My Trustee shall be responsible for determining what discretionary distributions will be made from this trust. My Trustee may distribute discretionary amounts of income and principal to or for the benefit of the

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

beneficiary for those supplemental needs not otherwise provided by governmental financial assistance and benefits, or by the providers of services. Any undistributed income will be added to principal. In making distributions, my Trustee must:

consider any other known income or resources of the beneficiary that are reasonably available;

consider all entitlement benefits from any government agency, including Social Security disability payments, Medicare, Medicaid (or any state Medicaid program equivalent), Supplemental Security Income (SSI), In-Home Support Service (IHSS), and any other supplemental purpose benefits for which the beneficiary is eligible;

consider resource and income limitations of any assistance program;

make expenditures so that the beneficiary's standard of living will be comfortable and enjoyable;

not be obligated or compelled to make specific payments;

not pay or reimburse any amounts to any governmental agency or department, unless proper demand is made by this governmental agency or reimbursement is required by the state; and

not be liable for any loss of benefits.

**(f)     No Seeking of Order to Distribute**

For purposes of determining the beneficiary's state Medicaid program equivalent eligibility, no part of the trust estate's principal or undistributed income may be considered available to the beneficiary. My Trustee shall deny any request by the beneficiary to:

release trust principal or income to or on behalf of the beneficiary to pay for equipment, medication, or services that the state Medicaid program equivalent would provide if the trust did not exist; or

petition a court or any other administrative agency for the release of trust principal or income for this purpose.

In its sole, absolute, and unreviewable discretion, my Trustee may take necessary administrative or legal steps to protect the beneficiary's state Medicaid program equivalent eligibility. This includes obtaining a ruling from a court of competent jurisdiction that the trust principal is not available to the beneficiary for purposes of determining state Medicaid program

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

equivalent eligibility. Expenses for this action, including reasonable attorney fees, will be a proper charge to the trust estate.

**(g)     Indemnification of Trustee When Acting in Good Faith**

My Trustee will be indemnified from the trust property for any loss or reduction of public benefits sustained by the beneficiary as a result of my Trustee exercising the authority granted to my Trustee under this Section in good faith.

**(h)     Distribution upon the Death of the Beneficiary**

Upon the beneficiary's death, my Trustee shall distribute or retain the remaining property according to the other provisions of this trust as though the provisions of this 0 had not been effective. If the other provisions of this trust provide for the beneficiary's share to be held in trust, then those provisions will be interpreted as though the beneficiary died after the establishment of that trust.

If the other provisions of this trust do not provide for the distribution or retention of the remaining property, then the beneficiary will have the testamentary limited power to appoint all or any portion of the principal and undistributed income remaining in the beneficiary's trust at his or her death among one or more individuals. But the beneficiary may not exercise this limited power of appointment to appoint to himself or herself, his or her estate, his or her creditors or the creditors of his or her estate.

I intend to create a limited power of appointment and not a general power of appointment as defined in Internal Revenue Code Section 2041.

If any part of the beneficiary's trust is not effectively appointed, my Trustee shall distribute the remaining unappointed balance *by representation* to the beneficiary's descendants. If the beneficiary has no then-living descendants, my Trustee shall distribute the unappointed balance *by representation* to the then-living descendants of the beneficiary's nearest lineal ancestor who was a descendant of mine or, if there is no then-living descendant, *by representation* to my descendants.

If I have no then-living descendants, my Trustee shall distribute the balance of the trust property as provided in .

## Section 9.02     Underage and Incapacitated Beneficiaries

If my Trustee is authorized or directed under any provision of this trust to distribute net income or principal to a person who has not yet reached 25 years of age or who is incapacitated as defined in , my Trustee may make the distribution by any one or more of the methods described in Section 2.04. Alternatively, my Trustee may retain the trust property in a separate trust to be administered by my Trustee under Section 2.05.

Fred Lieberman's Survivor Trust dated
9-4

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

I request that before making a distribution to a beneficiary, my Trustee consider, to the extent reasonable, the ability the beneficiary has demonstrated in managing prior distributions of trust property.

## Section 9.03    Methods of Distribution

My Trustee may distribute trust property for any beneficiary's benefit, subject to the provisions of Section 2.02 in any one or more of the following methods:

My Trustee may distribute trust property directly to the beneficiary.

My Trustee may distribute trust property to the beneficiary's guardian, conservator, parent, other family member, or any person who has assumed the responsibility of caring for the beneficiary.

My Trustee may distribute trust property to any person or entity, including my Trustee, as custodian for the beneficiary under the Uniform Transfers to Minors Act or similar statute.

My Trustee may distribute trust property to other persons and entities for the beneficiary's use and benefit.

My Trustee may distribute trust property to an agent or attorney in fact authorized to act for the beneficiary under a valid durable power of attorney executed by the beneficiary before becoming incapacitated.

## Section 9.04    Retention in Trust

My Trustee may retain and administer trust property in a separate trust for any beneficiary's benefit, subject to the provisions of Section 2.02 as follows.

### (a)    Distribution of Net Income and Principal

My Independent Trustee may distribute to the beneficiary as much of the net income and principal of any trust created under this Section as my Independent Trustee may determine advisable for any purpose. If there is no then-serving Independent Trustee, my Trustee shall distribute to the beneficiary as much of the net income and principal of the trust created under this Section as my Trustee determines is necessary or advisable for the beneficiary's health, education, maintenance, and support. Any undistributed net income will be accumulated and added to principal.

### (b)    Right of Withdrawal

When the beneficiary whose trust is created under this Section either reaches 25 years of age or is no longer incapacitated, the beneficiary may withdraw all or any portion of the accumulated net income and principal from the trust.

Fred Lieberman's Survivor Trust dated
9-5

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**(c)    Distribution upon the Death of the Beneficiary**

Subject to the terms of the next paragraph, the beneficiary whose trust is created under this Section may appoint all or any portion of the principal and undistributed net income remaining in the beneficiary's trust at the beneficiary's death among one or more individuals. The beneficiary has the exclusive right to exercise this power of appointment.

The beneficiary may not exercise this power of appointment to appoint to the beneficiary, the beneficiary's estate, the beneficiary's creditors, or creditors of the beneficiary's estate from the *limited share* of the beneficiary's trust. For purposes of this power of appointment, the *limited share* of the beneficiary's trust is that portion of the beneficiary's trust that has an inclusion ratio for generation-skipping transfer tax purposes of zero or that without the exercise of the power of appointment, would not constitute a taxable generation-skipping transfer at the beneficiary's death. If the generation-skipping tax does not then apply, the limited share will be the beneficiary's entire trust.

If any part of the beneficiary's trust is not effectively appointed, my Trustee shall distribute the remaining unappointed balance *by representation* to the beneficiary's descendants. If the beneficiary has no then-living descendants, my Trustee shall distribute the unappointed balance *by representation* to the then-living descendants of the beneficiary's nearest lineal ancestor who was a descendant of mine or, if there is no then-living descendant, *by representation* to my descendants.

If I have no then-living descendants, my Trustee shall distribute the balance of the trust property as provided in .

## Section 9.05    Application of Article

Any decision made by my Trustee under this Article is final, controlling, and binding upon all beneficiaries subject to the provisions of this Article.

The provisions of this Article do not apply to distributions to me.

Except as provided in , the provisions of this Article do not apply to distributions that are required to be made to a beneficiary under the provisions of  except to the extent that a beneficiary qualifies as a chronically ill or disabled eligible designated beneficiary under Internal Revenue Code Section 401(a)(9).

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Ten
# Retirement Plans and Life Insurance Policies

The provisions of this Article apply to qualified retirement plans and insurance policies owned by or made payable to my trust.

## Section 10.01   Retirement Plans

Notwithstanding any contrary provision in this trust, this section's provisions apply to qualified retirement plans.

### (a)   Rights of My Trustee

Subject to the provisions below pertaining to distributions from qualified retirement plans, my Trustee may exercise the right to determine the manner and timing of qualified retirement plan benefit payments permitted under these plans and consistent with the federal income tax rules regarding required minimum distributions under Internal Revenue Code Section 401(a)(9).

My Trustee may make a qualified disclaimer of any qualified retirement benefits or non-qualified annuity benefits payable to my trust.

My Trustee may not be held liable to any beneficiary for any decision regarding the death benefit election or the disclaimer of any qualified retirement benefits payable to my trust.

My Trustee may not change or designate beneficiaries under any retirement plan. Any power extended to my Trustee under the terms of a retirement plan that gives or appears to give my Trustee the power to change the identity or rights of any beneficiaries under the plan is void *ab initio*.

### (b)   Distributions from Qualified Retirement Plans to Trusts

#### (1)   Conduit Trust Provisions

Except as specifically provided otherwise in this instrument, if any trust created under this instrument, becomes the beneficiary of death benefits under any qualified retirement plan, and if the Primary Beneficiary of such trust at the time of my death is my child who has not reached majority as defined in Section 401(a)(9) of the Internal Revenue Code and applicable United States Treasury Regulations, my Trustee must annually withdraw from the trust's share of the plan the required minimum distribution under Internal Revenue Code Section 401(a)(9). This subsection applies to any administrative trust created under . My Trustee may withdraw additional amounts from the trust's share of the

Fred Lieberman's Survivor Trust dated
10-1

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

plan as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee may withdraw any additional amounts from the trust's share of the plan that my Trustee determines necessary or advisable for the beneficiary's health, education, maintenance, and support. My Trustee shall immediately distribute all amounts withdrawn to the Primary Beneficiary of the trust. My intent is that any such trust will be a conduit trust, the beneficiaries of which qualify as designated beneficiaries under Internal Revenue Code Section 401(a)(9).

Amounts withdrawn and distributed under these conduit trust provisions will reduce mandatory distribution amounts under other provisions of this trust that otherwise require distribution of all the trust's income or distribution of a unitrust amount.

If my child dies before reaching majority, my Trustee must distribute to the remainder beneficiary any remaining amount that would have been required to be distributed to my child in the year of my child's death. All remaining qualified plan assets must be distributed by December 31 of the year that contains the tenth anniversary of my child attaining majority or my child's death, whichever occurs earlier.

**(2)    Accumulation Trust Provisions**

Except as specifically provided otherwise in this instrument, if any other trust created under this instrument becomes the beneficiary of death benefits under any qualified retirement plan, my Trustee must withdraw the trust's share of the plan assets in accordance with the provisions of Internal Revenue Code Section 401(a)(9). My Trustee may withdraw additional amounts from the trust's share of the plan as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee may withdraw any additional amounts from the trust's share of the plan that my Trustee determines necessary or advisable for the beneficiary's health, education, maintenance, and support. My Trustee may distribute as much of the amounts withdrawn from the trust's share of the plan as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee may distribute as much of the amounts

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025  |  (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

withdrawn from the trust's share of the plan that my Trustee determines necessary or advisable for the beneficiary's health, education, maintenance, and support. My intent is that any such trust will be an accumulation trust, the beneficiaries of which qualify as designated beneficiaries under Internal Revenue Code Section 401(a)(9). Upon the death of the Primary Beneficiary of a trust governed by these accumulation trust provisions, my Trustee must withdraw any amounts remaining in the qualified retirement plan in accordance with the provisions of Internal Revenue Code Section 401(a)(9).

Notwithstanding any other provision of this instrument or state law to the contrary, my Trustee may not distribute any qualified retirement benefit payable to an accumulation trust established under this instrument, the beneficiaries of which qualify as designated beneficiaries under Internal Revenue Code Section 401(a)(9), to or for the benefit of my estate, any charity, or any beneficiary other than an individual, on or after the *designation date*. My intent is that all qualified retirement benefits held by or payable to such trust on or after the designation date be distributed to or held only for identifiable individual beneficiaries, within the meaning of Internal Revenue Code Section 401(a)(9) and applicable United States Treasury Regulations. As used in this paragraph, *beneficiary* means any person who is entitled or who becomes entitled to receive distributions of income or principal from the trust, including, without limitation, the appointees of a power of appointment. To the extent that any accumulation trust established under this instrument becomes the beneficiary of a qualified retirement plan, any power of appointment within such trust with respect to qualified retirement plan assets shall only be exercisable in favor of an identifiable individual beneficiary and, if necessary to preserve a longer applicable distribution period, must not be exercised in favor of an individual born before the Primary Beneficiary or, if there is no Primary Beneficiary, the oldest Income Beneficiary. This provision is not intended to diminish the share of trust beneficiaries to whom qualified retirement benefits proceeds may not be distributed, except to the extent that non–retirement plan trust assets are insufficient to satisfy those beneficiaries' shares, in which case their shares will be diminished on a *pro rata* basis. My Trustee may sever any trust created under

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

this instrument as provided in   to effect the intent of this paragraph.

### (3)    Purpose

This subsection's purpose is to ensure that, for any trust that qualifies under Internal Revenue Code Section 401(a)(9) to use the life expectancy of a designated beneficiary of that trust to calculate the required minimum distributions to be withdrawn from the qualified retirement plan, my Trustee may use such life expectancy to calculate the required minimum distributions to be withdrawn. For all other trusts, my Trustee must withdraw all required distributions within the maximum time period allowed by Internal Revenue Code Section 401(a)(9). This subsection is to be interpreted consistent with my intent, despite any direction to the contrary in this trust.

## (c)    Required Minimum Distribution

In administering any trust where life expectancy may be used to calculate the applicable distribution period under Internal Revenue Code Section 401(a)(9), the required minimum distribution for each qualified retirement plan for any year is the greater of

the value of the qualified retirement plan determined as of the preceding year end, divided by the applicable distribution period, and

the amount that my Trustee is required to withdraw under the laws then applicable to the trust to avoid penalty.

For purposes of determining the applicable distribution period, the designated beneficiary whose life expectancy must be used shall be determined as provided in Section 401(a)(9) of the Internal Revenue Code and applicable United States Treasury Regulations.

In administering any trust where life expectancy may not be used to determine the applicable distribution period, the required minimum distribution for each qualified retirement plan for any year shall be the amount that my Trustee is required to withdraw under the laws then applicable to the trust under Internal Revenue Code Section 401(a)(9) to avoid penalty.

*Life expectancy, applicable distribution period, required minimum distribution,* and other similar terms used in this subsection are to be determined under Internal Revenue Code Section 401(a)(9) and applicable United States Treasury Regulations.

Fred Lieberman's Survivor Trust dated
10-4

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

### Section 10.02    Life Insurance Policies

The following provisions apply to life insurance policies owned by or made payable to my trust.

### (a)        Provisions during My Life

During my life, I reserve all of the rights, powers, privileges, and options, with respect to any insurance policy, annuity, or any other third-party beneficiary contract owned by or made payable to my trust. This includes the rights to designate and change beneficiaries, to borrow money, to surrender the policy, to receive any payments as owner, and to make any available elections.

My Trustee will have no duty to exercise or not exercise any rights, powers, privileges, or options with respect to any insurance policy, annuity contract, or other third-party beneficiary contract. My Trustee will have no obligation to pay premiums or other contractual amounts that may be payable under any policy.

### (b)        Provisions after My Death

After my death, my Trustee may make all appropriate elections with respect to these policies and may collect all sums made payable to my trust or my Trustee under all these policies or contracts.

My Trustee may exercise any settlement options or other options or rights that may be available under the terms of any policy or contract. My Trustee may not be held liable to any beneficiary on account of any election my Trustee made with respect to any policy or contract.

### Section 10.03    Limitation on Liability of Payor

Persons or entities dealing in good faith with my Trustee are not required to see to the proper application of proceeds delivered to my Trustee, or to inquire into any provision of this trust.

A receipt signed by my Trustee for any proceeds or benefits paid will be a sufficient discharge to the person or entity making the payment.

### Section 10.04    Collection Efforts

My Trustee shall make reasonable efforts to collect all life insurance policy proceeds and qualified retirement benefits payable to my trust.

My Trustee may commence legal or administrative proceedings to collect any life insurance policy proceeds or qualified retirement benefits to which the trust is entitled. My Trustee need not commence any proceedings until my Trustee is satisfactorily indemnified for any expenses and liabilities my Trustee may incur in connection with the proceeding.

KFB Law Group, LLP, 12100 Wilshire Blvd., Suite 245, Los Angeles, California 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

My Trustee may settle any claims with respect to the collection of any life insurance proceeds or qualified retirement benefits to which my trust may be entitled. A settlement made by my Trustee will be binding on all beneficiaries.

### Section 10.05   No Obligation to Purchase or Maintain Benefits

Nothing in this trust is to be interpreted as imposing any obligation on me or on my Trustee to purchase, invest, or maintain any qualified retirement plan or life insurance policy.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Eleven
# Trust Administration

## Section 11.01    Distributions to Beneficiaries

Whenever this trust authorizes or directs my Trustee to make a net income or principal distribution to a beneficiary, my Trustee may apply any property that otherwise could be distributed directly to the beneficiary for his or her benefit. My Trustee is not required to inquire into the beneficiary's ultimate disposition of the distributed property unless specifically directed otherwise by this trust.

My Trustee may make cash distributions, in-kind distributions, or distributions partly in each, in proportions and at values determined by my Trustee. My Trustee may allocate undivided interests in specific assets to a beneficiary or trust in any proportion or manner that my Trustee determines, even though the property allocated to one beneficiary may be different from that allocated to another beneficiary.

My Trustee may make these determinations without regard to the income tax attributes of the property and without the consent of any beneficiary.

## Section 11.02    Trust Decanting; Power to Appoint in Further Trust

Whenever an Independent Trustee may distribute assets to or for the benefit of a beneficiary, my Trustee may appoint the property subject to my Trustee's power of distribution in trust for the benefit of one or more beneficiaries of any trust created under this instrument under the terms established by the Independent Trustee. Any trust established by the Independent Trustee and funded by the exercise of the power granted under this Section must meet these requirements:

>       the trust must not reduce any fixed income, annuity, or unitrust right provided by this trust instrument to any beneficiary;

>       the trust must provide for one or more of the beneficiaries of a trust created under this instrument; and

>       the interests of remainder beneficiaries of the trust created under this instrument must not be accelerated under the terms of the new trust.

I request the Independent Trustee consider including a provision in the new trust that permits my Trustee to distribute as much of the trust principal to the beneficiary of the trust as an Independent Trustee advises so that the beneficiary's estate can utilize the basis increase allowed under Internal Revenue Code Section 1014 after the beneficiary's death without causing an increase in the federal estate tax.

An Independent Trustee may not use the powers granted under this Section to extend the term of the new trust beyond the period of perpetuities provided under the governing law of this instrument.

Any trust created under this provision must not contain any provision that, if applicable, would cause the trust to fail to qualify for the marital deduction or charitable deduction, fail to qualify any gift to the trust for any gift, estate, or generation-skipping transfer annual exclusion, or disqualify the trust as a qualified subchapter S corporation shareholder.

If any beneficiary holds a presently exercisable right to withdraw property from this trust, that right may not be defeated by the exercise of the Independent Trustee's powers granted under this Section.

The Independent Trustee's powers granted under this Section are not diminished by the revocability or subsequent irrevocability of the trust created under this trust.

### Section 11.03    Beneficiary's Status

Until my Trustee receives notice of the incapacity, birth, marriage, death, or other event upon which a beneficiary's right to receive payments may depend, my Trustee will not be held liable for acting or not acting with respect to the event, or for disbursements made in good faith to persons whose interest may have been affected by the event. Unless otherwise provided in this trust, a parent or Legal Representative may act on behalf of a minor or incapacitated beneficiary.

My Trustee may rely on any information provided by a beneficiary with respect to the beneficiary's assets and income. My Trustee will have no independent duty to investigate the status of any beneficiary and will not incur any liability for not doing so.

### Section 11.04    Mandatory Payments of a Pecuniary Amount

If any person holds the right to receive a pecuniary amount from my trust upon my death, my Trustee must either:

> satisfy the entire pecuniary amount or irrevocably set aside property to satisfy the entire pecuniary amount within 15 months of my death; or
>
> pay appropriate interest, as defined in Treasury Regulations Section 26.2642-2(b)(4)(ii)(B), to the person.

If my Trustee satisfies the pecuniary amount with an in-kind distribution, my Trustee will allocate assets to satisfy the pecuniary amount in a manner that fairly reflects net appreciation or depreciation in the value of the available assets, as measured from the valuation date to the payment date.

### Section 11.05    No Court Proceedings

My Trustee shall administer this trust with efficiency, with attention to the provisions of this trust, and with freedom from judicial intervention. If my Trustee or another interested party institutes a legal proceeding, the court will acquire jurisdiction only to the extent necessary for that proceeding. Any proceeding to seek instructions or a court determination may only be initiated in the court with original jurisdiction over matters relating to the construction and administration of trusts. Seeking instructions or a court determination is not to be construed as subjecting this trust to the court's continuing jurisdiction.

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

I request that any questions or disputes that arise during the administration of this trust be resolved by mediation and, if necessary, arbitration in accordance with the Uniform Arbitration Act. Each interested party involved in the dispute, including any Trustee involved, may select an arbiter and, if necessary to establish a majority decision, these arbiters may select an additional arbiter. The decision of a majority of the arbiters selected will control with respect to the matter.

### Section 11.06    No Bond

My Trustee is not required to furnish any bond for the faithful performance of the Trustee's duties unless required by a court of competent jurisdiction, and only if the court finds that a bond is needed to protect the beneficiaries' interests. No surety will be required on any bond required by any law or court rule, unless the court specifies its necessity.

### Section 11.07    Exoneration of My Trustee

No successor Trustee is obligated to examine the accounts, records, or actions of any previous Trustee or the Personal Representative of my estate. No successor Trustee may be held responsible for any act, omission, or forbearance by any previous Trustee or of the Personal Representative of my estate. Absent clear and convincing evidence of willful bad faith on the part of my Trustee, my Trustee is exonerated from any liability for the acts, omissions, or forbearances of any Trust Protector and from any liability for my Trustee's own acts, omissions, or forbearances directed by the Trust Protector.

Any Trustee may obtain written agreements from the beneficiaries or their Legal Representatives releasing and indemnifying the Trustee from any liability that may have arisen from the Trustee's acts, omissions, or forbearances. If acquired from all the trust's living beneficiaries or their Legal Representatives, any agreement is conclusive and binding on all parties, born or unborn, who may have or who may later acquire an interest in the trust.

My Trustee may require a refunding agreement before making any distribution or allocation of trust income or principal, and may withhold distribution or allocation pending determination or release of a tax or other lien. This refunding agreement provision will not apply to any distribution that qualifies for the federal estate tax charitable deduction.

### Section 11.08    Limitations on Trustee Liability

I recognize that some individuals and institutions may be reluctant to serve as Trustee because of a concern about potential liability. Therefore, I direct that any individual or corporate fiduciary that serves as my Trustee will not incur any liability by reason of any error of judgment, mistake of law, or action or inaction of any kind in connection with the administration of any trust created under this trust, unless my Trustee's decision is shown by clear and convincing evidence to have been made in bad faith.

Any individual or corporate fiduciary currently serving as my Trustee may expend any portion of the trust assets to defend any claim brought against the Trustee, even if the

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

Trustee's defense costs would exhaust the trust's value, unless the Trustee is shown to have acted in bad faith by clear and convincing evidence.

Any individual or corporate fiduciary that formerly served as my Trustee is entitled to reimbursement from the trust estate for any expenses, including attorney's fees and litigation costs reasonably incurred to defend any claim brought against the Trustee even if the Trustee's defense costs would exhaust the trust's value, unless the Trustee is shown to have acted in bad faith by clear and convincing evidence.

I direct that any individual or corporate fiduciary that serves as my Trustee will not incur any liability for any action, omission, or forbearance made in good faith reliance on information, consent, or directions received from a Trust Protector, except for cases of willful misconduct, reckless indifference, or gross negligence on the Trustee's part.

Any individual or corporate fiduciary currently serving as a Trustee may expend any portion of the trust assets to defend any claim brought against the Trustee as a result of his or her good faith reliance on any information, consent, or directions received from a Trust Protector, even if my Trustee's defense costs would exhaust the trust's value. Any individual or corporate fiduciary that formerly served as a Trustee is entitled to reimbursement from the trust estate for any expenses, including reimbursement for attorney's fees and litigation costs reasonably incurred as a result of the Trustee's good faith reliance on information, consent, or directions received from a Trust Protector.

Except for cases of willful misconduct, reckless indifference, or gross negligence on my Trustee's part, any action, omission, or forbearance made in good faith reliance on information, consent, or directions received from a Trust Protector will be considered to have been made in good faith for this Section's purposes.

### Section 11.09    Self-Dealing

If a descendant of mine is serving as my Trustee, he or she may engage in acts of self-dealing, even though state law restricts acts of self-dealing. Unless expressly prohibited by another provision of my trust, a descendant of mine who is serving as my Trustee may enter into transactions on behalf of my trust in which my Trustee is personally interested so long as the terms of such transaction are fair to my trust. For example, a descendant of mine who is serving as my Trustee may purchase property from my trust at its fair market value without court approval.

### Section 11.10    Trustee Compensation

An individual serving as Trustee is entitled to fair and reasonable compensation for the services provided as a fiduciary. A corporate fiduciary serving as Trustee will be compensated by agreement between an individual serving as Trustee and the corporate fiduciary. In the absence of an individual Trustee or an agreement, a corporate fiduciary will be compensated in accordance with the corporate fiduciary's current published fee schedule.

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

A Trustee may charge additional fees for services provided that are beyond the ordinary scope of duties, such as fees for legal services, tax return preparation, and corporate finance or investment banking services.

In addition to receiving compensation, a Trustee may be reimbursed for reasonable costs and expenses incurred in carrying out the Trustee's duties under this trust.

## Section 11.11    Employment of Professionals

My Trustee may appoint, employ, and remove investment advisors, accountants, auditors, depositories, custodians, brokers, consultants, attorneys, advisors, agents, and employees to advise or assist in the performance of my Trustee's duties. My Trustee may act on the recommendations of the persons or entities employed, with or without independent investigation.

My Trustee may reasonably compensate an individual or entity employed to assist or advise my Trustee, regardless of any other relationship existing between the individual or entity and my Trustee.

My Trustee may compensate providers of contracted services at the usual rate out of the trust's income or principal, as my Trustee deems advisable. My Trustee may compensate an individual or entity employed to assist or advise my Trustee without diminishing the compensation the Trustee is entitled to under this trust. A Trustee who is a partner, stockholder, officer, director, or corporate affiliate in any entity employed to assist or advise my Trustee may still receive the Trustee's share of the compensation paid to the entity.

## Section 11.12    Exercise of Testamentary Power of Appointment

A testamentary power of appointment granted under this trust may be exercised by a will or living trust specifically referring to the power of appointment. The holder of a testamentary power of appointment may exercise the power to appoint property among the permissible appointees in equal or unequal proportions, and may designate the terms and conditions, whether outright or in trust. The holder of a testamentary power of appointment may grant further powers of appointment to any person to whom principal may be appointed, including a presently exercisable limited or general power of appointment.

My Trustee may conclusively presume that any power of appointment granted to any beneficiary of a trust created under this trust has not been exercised by the beneficiary if my Trustee has no knowledge of the existence of a will or living trust exercising the power within three months after the beneficiary's death.

## Section 11.13    Determination of Principal and Income

The rights among beneficiaries in matters concerning principal and income are to be determined in accordance with [UNANSWERED: Principal and Income Act name]. If [UNANSWERED: Principal and Income Act name] does not contain a provision concerning a particular item, my Trustee shall determine what will be credited, charged,

KFB Law Group, LLP, 12100 Wilshire Blvd., Suite 245, Los Angeles, California 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

and apportioned between principal and income in a fair, equitable, and practical manner with respect to that item.

## Section 11.14    Distributions from Roth IRAs

Prior to taking any distribution from a qualified retirement plan, my Trustee will first determine the date that any Roth IRA was established, and then determine whether a distribution from that Roth IRA would be a qualified distribution as defined in Internal Revenue Code Section 408A(d)(2) or would be subject to any state or federal penalty taxes. My Trustee shall take all reasonable precautions to ensure that a distribution from any Roth IRA is treated as a qualified distribution and reduce or avoid application of state or federal penalty taxes to the distribution.

## Section 11.15    Determination of Required Minimum Distributions

I encourage my Trustee to seek the advice of a competent CPA, attorney, investment counselor or manager, or financial advisor and not to rely on the retirement account administrator, Trustee, or custodian to determine the required minimum distributions or any other federal or state tax issues associated with any qualified retirement plan assets payable to this trust.

## Section 11.16    Trust Accounting

Except to the extent required by law, my Trustee is not required to file accountings in any jurisdiction. After my death, my Trustee must provide an annual accounting to the Income Beneficiaries of any trust created under this trust unless waived by the Income Beneficiaries.

The annual accounting must include the receipts, expenditures, and distributions of income and principal and the assets on hand for the accounting period. A copy of the federal fiduciary tax return filed for a trust during the accounting will satisfy this reporting requirement.

In the absence of fraud or obvious error, assent by all Income Beneficiaries to a Trustee's accounting will make the matters disclosed in the accounting binding and conclusive upon all persons, including those living on this date and those born in the future who have or will have a vested or contingent interest in the trust property. In the case of an Income Beneficiary who is a minor or incapacitated, the beneficiary's natural guardian or Legal Representative may give the assent required under this Section.

A beneficiary may object to an accounting provided by my Trustee only by giving written notice to my Trustee within 60 days after my Trustee provides the accounting. Any beneficiary who does not submit a timely written objection is considered to assent to the accounting.

My Trustee must make the trust's financial records and documents available to beneficiaries at reasonable times and upon reasonable notice for inspection. My Trustee is not required to furnish any information regarding my trust to anyone other than a

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

beneficiary. My Trustee may exclude any information my Trustee determines is not directly applicable to the beneficiary receiving the information.

In all events, a beneficiary's Legal Representative may receive any notices and take any action on behalf of the beneficiary as to an accounting. If any beneficiary's Legal Representative fails to object to any accounting in writing within 60 days after my Trustee provides the accounting, the beneficiary's Legal Representative will be considered to assent to the accounting.

## Section 11.17    Action of Trustees and Delegation of Trustee Authority

When I am not serving as a Trustee, if two Trustees are eligible to act with respect to a given matter, they must agree unanimously for action to be taken unless the express terms of the Trustees' appointment provide otherwise. If more than two Trustees are eligible to act with respect to a given matter, the Trustees must agree by majority for action to be taken.

If my Trustees are unable to agree on a matter for which they have joint powers, I request that the matter be settled by mediation and then by arbitration, if necessary, in accordance with the Uniform Arbitration Act. Each of my Trustees may select an arbiter, and these arbiters may select an additional arbiter if necessary to establish a majority decision. The decision of a majority of the arbiters will control with respect to the matter.

A nonconcurring Trustee may dissent or abstain from a decision of the majority. A Trustee will be absolved from personal liability by registering the dissent or abstention in the trust records. After doing so, the dissenting Trustee must then act with my other Trustees in any way necessary or appropriate to effect the majority decision.

Notwithstanding the limitations set forth in this Section, unless a Trustee elects otherwise in a written instrument delivered to the other Trustees, whenever I am not serving as a Trustee, if two or more Trustees are then serving, any one Trustee may sign any checks, agreements, or other documents on behalf of the trust with the same effect as if all Trustees had signed. Persons dealing with the signing Trustee in good faith may rely upon the signing Trustee's authority to act on behalf of the trust without inquiry as to the other Trustees' agreement.

Subject to the limitations set forth in , any Trustee may, by written instrument, delegate to any other Trustee the right to exercise any power, including a discretionary power, granted to my Trustee in this trust. During the time a delegation under this Section is in effect, the Trustee to whom the delegation is made may exercise the power to the same extent as if the delegating Trustee has personally joined in the exercise of the power. The delegating Trustee may revoke the delegation at any time by giving written notice to the Trustee to whom the power was delegated.

## Section 11.18    Trustee May Disclaim or Release Any Power

Notwithstanding any provision of this trust to the contrary, any Trustee may relinquish any Trustee power in whole or in part, irrevocably or for any specified period of time, by a

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

written instrument. The Trustee may relinquish a power personally or may relinquish the power for all subsequent Trustees.

### Section 11.19    Trustee May Execute a Power of Attorney

My Trustee may appoint any individual or entity to serve as my Trustee's agent under a power of attorney to transact any business on behalf of my trust or any other trust created under this trust.

### Section 11.20    Additions to Separate Trusts

If upon my death, or upon the termination of any trust created under this trust, a final distribution is to be made to a person who is the Primary Beneficiary of another trust established under this trust, and there is no specific indication whether the distribution is to be made in trust or outright, my Trustee shall make the distribution to the second trust instead of distributing the property to the beneficiary outright. For purposes of administration, the distribution will be treated as though it had been an original part of the second trust.

### Section 11.21    Authority to Merge or Sever Trusts

My Trustee may merge a trust created under this trust with any other trust, if the two trusts contain substantially the same terms for the same beneficiaries and have at least one Trustee in common. My Trustee may administer the merged trust under the provisions of the instrument governing the other trust, and this trust will no longer exist if it merges into another trust. Accordingly, in the event another trust is merged into this trust or a trust created under the provisions of this trust document, my Trustee may shorten the period during which this trust subsists to comply with , if necessary, to effect the merger. But if a merger does not appear feasible, my Trustee may consolidate the trusts' assets for purposes of investment and trust administration while retaining separate records and accounts for each respective trust.

My Trustee may sever any trust on a fractional basis into two or more separate and identical trusts, or may segregate a specific amount or asset from the trust property by allocating it to a separate account or trust. The separate trusts may be funded on a *non pro rata* basis, but the funding must be based on the assets' total fair market value on the funding date. After the segregation, income earned on a segregated amount or specific asset passes with the amount or asset segregated. My Trustee shall hold and administer each severed trust upon terms and conditions identical to those of the original trust.

Subject to the trust's terms, my Trustee may consider differences in federal tax attributes and other pertinent factors in administering the trust property of any separate account or trust, in making applicable tax elections and in making distributions. A separate trust created by severance must be treated as a separate trust for all purposes from the effective severance date; however, the effective severance date may be retroactive to a date before my Trustee exercises the power.

KFB Law Group, LLP, 12100 Wilshire Blvd., Suite 245, Los Angeles, California 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

### Section 11.22    Authority to Terminate Trusts

My Trust Protector may terminate any trust created under this trust at any time, if my Trust Protector determines that administering a trust created under this trust is no longer economical. Once distributed, my Trustee will have no further responsibility with respect to that trust property. My Trustee will distribute the trust property from a terminated trust in this order:

> to me, if I am then living;

> to the beneficiaries then entitled to mandatory distributions of the trust's net income, in the same proportions; and then

> if none of the beneficiaries are entitled to mandatory distributions of net income, to the beneficiaries then eligible to receive discretionary distributions of the trust's net income, in the amounts and shares my Trust Protector determines.

But if a Trust Protector is not then serving, only an Independent Trustee will possess the power to terminate any trust created under this trust, and the Independent Trustee can act only as authorized and with the specific powers and discretions permitted under this Section.

### Section 11.23    Discretionary Distribution to Fully Utilize Basis Increase upon Death of Beneficiary

To the extent I have permitted my Trustee to make distributions of principal to a trust beneficiary, my Independent Trustee may distribute as much of the trust's principal to the beneficiary as my Independent Trustee determines advisable so that, upon the beneficiary's death, his or her estate may utilize the basis increase allowed under Internal Revenue Code Section 1014 without causing an increase in the federal estate tax.

Before making a distribution of property under this Section, I request that my Trustee determine whether or not a good reason exists to retain the property in trust, such as whether my Trustee or the beneficiary might sell the property in the near future, as well as protection of the beneficiary from creditors, protection of the beneficiary from failed marriages, and protection of the asset for future generations. My Trustee has no liability to any beneficiary for any action or inaction by my Trustee under this Section, if made in good faith.

Alternatively, I recommend my Independent Trustee consider appointing the assets to a trust established for the beneficiary under the provisions of .

### Section 11.24    Merger of Corporate Fiduciary

If any corporate fiduciary acting as the Trustee under this trust is merged with or transfers substantially all of its trust assets to another corporation, or if a corporate fiduciary changes its name, the successor will automatically succeed to the trusteeship as if that successor had been originally named a Trustee. No document of acceptance of trusteeship will be required.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

### Section 11.25    Funeral and Other Expenses of Beneficiary

Upon the death of an Income Beneficiary, my Trustee may pay the funeral expenses, burial or cremation expenses, enforceable debts, or other expenses incurred due to the death of the beneficiary from trust property.  This Section only applies to the extent the Income Beneficiary has not exercised any testamentary power of appointment granted to the beneficiary under this trust.

My Trustee may rely upon any request by the deceased beneficiary's Legal Representative or family members for payment without verifying the validity or the amounts and without being required to see to the application of the payment.  My Trustee may make decisions under this Section without regard to any limitation on payment of expenses imposed by statute or court rule and without obtaining the approval of any court having jurisdiction over the administration of the deceased beneficiary's estate.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Twelve
# My Trustee's Powers

### Section 12.01    Introduction to Trustee's Powers

Except as otherwise specifically provided in this trust, my Trustee may exercise the powers granted by this trust without prior approval from any court, including those powers set forth under the laws of the State of Washington or any other jurisdiction whose law applies to this trust.  The powers set forth in RCW 11.09.070 are specifically incorporated into this trust.

My Trustee shall exercise the Trustee powers in the manner my Trustee determines to be in the beneficiaries' best interests.  My Trustee must not exercise any power inconsistent with the beneficiaries' right to the enjoyment of the trust property in accordance with the general principles of trust law.

My Trustee may have duties and responsibilities in addition to those described in this trust. I encourage any individual or corporate fiduciary serving as Trustee to obtain appropriate legal advice if my Trustee has any questions concerning the duties and responsibilities as Trustee.

### Section 12.02    Execution of Documents by My Trustee

My Trustee may execute and deliver any written instruments that my Trustee considers necessary to carry out any powers granted in this trust.

### Section 12.03    Investment Powers in General

My Trustee may invest in any type of investment that my Trustee determines is consistent with the investment goals of the trust, whether inside or outside the geographic borders of the United States of America and its possessions or territories, taking into account the overall investment portfolio of the trust.

I have provided that certain trust beneficiaries receive payments of periodic unitrust amounts.  My intent is to allow my Trustee to invest trust assets for total return rather than solely for income.  This will allow my Trustee to provide regular payments to current beneficiaries that will keep pace with inflation in future years, while providing for the remainder beneficiaries and preserving the value and purchasing power of their trust interest.

Without limiting my Trustee's investment authority in any way, I request that my Trustee exercise reasonable care and skill in selecting and retaining trust investments.  I also request that my Trustee take into account the following factors in choosing investments:

the potential return from the investment, both in income and appreciation;

the potential income tax consequences of the investment;

the investment's potential for volatility; and

Fred Lieberman's Survivor Trust dated
12-1

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

the role the investment will play in the trust's portfolio.

I request that my Trustee also consider the possible effects of inflation or deflation, changes in global and US economic conditions, transaction expenses, and the trust's need for liquidity while arranging the trust's investment portfolio.

My Trustee may delegate his or her discretion to manage trust investments to any registered investment advisor or corporate fiduciary.

### Section 12.04    Banking Powers

My Trustee may establish any type of bank account in any banking institutions that my Trustee chooses. If my Trustee makes frequent disbursements from an account, the account does not need to be interest bearing. My Trustee may authorize withdrawals from an account in any manner.

My Trustee may open accounts in the name of my Trustee, with or without disclosing fiduciary capacity, and may open accounts in the name of the trust. When an account is in the name of the trust, checks on that account and authorized signatures need not disclose the account's fiduciary nature or refer to any trust or Trustee.

### Section 12.05    Business Powers

If the trust owns or acquires an interest in a business entity, whether as a shareholder, partner, general partner, sole proprietor, member, participant in a joint venture, or otherwise, my Trustee may exercise the powers and authority provided for in this Section. The powers granted in this Section are in addition to all other powers granted to my Trustee in this trust.

My Trustee may act personally and independently with any business entity in which the trust has an interest, separate from any duties owed to the trust as my Trustee. This includes serving and receiving compensation for services as an officer, director, general partner, manager, or any other capacity for the business entity. The compensation my Trustee receives from this entity will not affect the compensation my Trustee may be entitled to for serving as my Trustee. My Trustee may exercise any voting power for any matter, whether the voting power is held as my Trustee or independently as a stockholder, officer, director, general partner, member, manager, or other capacity of the business entity. My Trustee may independently own, purchase, and sell an interest in a business entity owned by the trust. Any sale of a nonpublicly traded business interest between my Trustee and the trust must be approved and effected by an Independent Special Trustee.

If any trust created under this trust is funded with subchapter S stock, my Trustee may either elect to qualify the trust as a Qualified Subchapter S Trust (QSST) under Internal Revenue Code Section 1361(d)(3) or as an Electing Small Business Trust under Section 1361(e)(1) to administer the trust in accordance with the requirements of the corresponding Section.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

### Section 12.06    Contract Powers

My Trustee may sell at public or private sale, transfer, exchange for other property, and otherwise dispose of trust property for consideration and upon terms and conditions that my Trustee deems advisable. My Trustee may grant options of any duration for any sales, exchanges, or transfers of trust property.

My Trustee may enter into contracts, and may deliver deeds or other instruments, that my Trustee considers appropriate.

### Section 12.07    Common Investments

For purposes of convenience with regard to the trust property's administration and investment, my Trustee may invest part or all of the trust property jointly with property of other trusts for which my Trustee is also serving as a Trustee. A corporate fiduciary acting as my Trustee may use common funds for investment. When trust property is managed and invested in this manner, my Trustee will maintain records that sufficiently identify this trust's portion of the jointly invested assets.

### Section 12.08    Digital Assets

My Trustee has the authority to access, modify, control, archive, transfer, and delete my digital assets.

Digital assets include my sent and received emails, email accounts, digital music, digital photographs, digital videos, gaming accounts, software licenses, social-network accounts, file-sharing accounts, financial accounts, domain registrations, Domain Name System (DNS) service accounts, blogs, listservs, web-hosting accounts, tax-preparation service accounts, online stores and auction sites, online accounts, and any similar digital asset that currently exists or may be developed as technology advances.

My digital assets may be stored in the cloud or on my own digital devices. My Trustee may access, use, and control my digital devices in order to access, modify, control, archive, transfer, and delete my digital assets—this power is essential for access to my digital assets that are only accessible through my digital devices. Digital devices include desktops, laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar hardware that currently exists or may be developed as technology advances.

### Section 12.09    Environmental Powers

My Trustee may inspect trust property to determine compliance with or to respond to any environmental law affecting the property. For purposes of this trust, *environmental law* means any federal, state, or local law, rule, regulation, or ordinance protecting the environment or human health.

My Trustee may refuse to accept property if my Trustee determines that the property is or may be contaminated by any hazardous substance or is or was used for any purpose involving hazardous substances that could create liability to the trust or to any Trustee.

My Trustee may use trust property to:

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

conduct environmental assessments, audits, or site monitoring;

take remedial action to contain, clean up, or remove any hazardous substance including a spill, discharge, or contamination;

institute, contest, or settle legal proceedings brought by a private litigant or any local, state, or federal agency concerned with environmental compliance;

comply with any order issued by any court or by any local, state, or federal agency directing an assessment, abatement, or cleanup of any hazardous substance; and

employ agents, consultants, and legal counsel to assist my Trustee in these actions.

My Trustee is not liable for any loss or reduction in value sustained by the trust as a result of my Trustee's decision to retain property on which hazardous materials or substances requiring remedial action are discovered, unless my Trustee contributed to that loss through willful misconduct or gross negligence.

My Trustee is not liable to any beneficiary or to any other party for any decrease in the value of property as a result of my Trustee's actions to comply with any environmental law, including any reporting requirement.

My Trustee may release, relinquish, or disclaim any power held by my Trustee that my Trustee determines may cause my Trustee to incur individual liability under any environmental law.

## Section 12.10    Farm, Ranch, and Other Agricultural Powers

My Trustee may retain, acquire, and sell any farm or ranching operation, whether as a sole proprietorship, partnership, or corporation.

My Trustee may engage in the production, harvesting, and marketing of farm and ranch products, either by operating directly or indirectly with management agencies, hired labor, tenants, or sharecroppers.

My Trustee may engage and participate in any government farm program, whether state or federally sponsored.

My Trustee may purchase or rent machinery, equipment, livestock, poultry, feed, and seed.

My Trustee may improve and repair all farm and ranch properties; construct buildings, fences, and drainage facilities; and acquire, retain, improve, and dispose of wells, water rights, ditch rights, and priorities of any nature.

My Trustee may do all things customary or desirable to operate a farm or ranch operation for the benefit of the beneficiaries.

### Section 12.11    Insurance Powers

My Trustee may purchase, accept, hold, and deal with as owner, insurance policies on my life, any beneficiary's life, or any person's life in whom any beneficiary has an insurable interest.

My Trustee may purchase disability, medical, liability, longterm health care and other insurance on behalf of and for the benefit of any beneficiary. My Trustee may purchase annuities and similar investments for any beneficiary.

My Trustee may execute or cancel any automatic premium loan agreement with respect to any policy, and may elect or cancel any automatic premium loan provision in a life insurance policy. My Trustee may borrow money to pay premiums due on any policy, either by borrowing from the company issuing the policy or from another source. My Trustee may assign the policy as security for the loan.

My Trustee may exercise any option contained in a policy with regard to any dividend or share of surplus apportioned to the policy to reduce the amount of a policy, to convert or exchange the policy, or to surrender a policy at any time for its cash value.

My Trustee may elect any paid-up insurance or extended-term insurance nonforfeiture option contained in a policy.

My Trustee may sell any policy at its fair market value to anyone having an insurable interest in the policy, including the insured.

My Trustee may exercise any other right, option, or benefit contained in a policy or permitted by the issuing insurance company.

Upon termination of the trust, my Trustee may transfer and assign the policies held by the trust as a distribution of trust property.

### Section 12.12    Loans and Borrowing Powers

My Trustee may make loans to, or guarantee the borrowing of, any person including a beneficiary, as well as an entity, trust, or estate, for any term or payable on demand, and secured or unsecured.

My Trustee may encumber any trust property by mortgages, pledges, or otherwise, and may negotiate, refinance, or enter into any mortgage or other secured or unsecured financial arrangement, whether as a mortgagee or mortgagor. The term may extend beyond the trust's termination and beyond the period required for an interest created under this trust to vest in order to be valid under the rule against perpetuities.

My Trustee may enter into, negotiate, or modify the terms of any mortgage or any other secured or unsecured agreement granted in connection with any loan entered into by me individually or by any Trustee, and may release or foreclose on any mortgage or security interest payable to me or to the trust.

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

My Trustee may borrow money at interest rates and on other terms that my Trustee deems advisable from any person, institution, or other source including, in the case of a corporate fiduciary, its own banking or commercial lending department.

My Trustee may purchase, sell at public or private sale, trade, renew, modify, and extend mortgages. My Trustee may accept deeds instead of foreclosing.

### Section 12.13    Nominee Powers

My Trustee may hold real estate, securities, and any other property in the name of a nominee or in any other form, without disclosing the existence of any trust or fiduciary capacity.

### Section 12.14    Oil, Gas and Mineral Interests

My Trustee may acquire, maintain, develop, and exploit, either alone or jointly with others, any oil, gas, coal, mineral, or other natural resource rights or interests.

My Trustee may drill, test, explore, mine, develop, extract, remove, convert, manage, retain, store, sell, and exchange any of those rights and interests on terms and for a price that my Trustee deems advisable.

My Trustee may execute leases, pooling, unitization, and other types of agreements in connection with oil, gas, coal, mineral, and other natural resource rights and interests, even though the terms of those arrangements may extend beyond the trust's termination.

My Trustee may execute division orders, transfer orders, releases, assignments, farm outs, and any other instruments that it considers proper.

My Trustee may employ the services of consultants and outside specialists in connection with the evaluation, management, acquisition, disposition, and development of any mineral interest, and may pay the cost of the services from the trust's principal and income.

### Section 12.15    Payment of Property Taxes and Expenses

Except as otherwise provided in this trust, my Trustee may pay any property taxes, assessments, fees, charges, and other expenses incurred in the administration or protection of the trust. All payments will be a charge against the trust property and will be paid by my Trustee out of income. If the income is insufficient, then my Trustee may make any payments of property taxes or expenses out of the trust property's principal. My Trustee's determination with respect to this payment will be conclusive on the beneficiaries.

### Section 12.16    Purchase of Assets from and Loans to My Probate Estate

Upon my death, my Trustee may purchase at fair market value and retain in the form received any property that is a part of my probate or trust estate as an addition to the trust. In addition, my Trustee may make secured and unsecured loans to my probate or trust estate. My Trustee may not be held liable for any loss suffered by the trust because of the exercise of the powers granted in this Section.

Fred Lieberman's Survivor Trust dated
12-6

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

My Trustee may not use any trust property for the benefit of my estate as defined in Code of Federal Regulations Title 26 Section 20.2042-1(b), unless the property is included in my gross estate for federal estate tax purposes.

## Section 12.17    Qualified Real Property Valuation

My Independent Trustee has the power to amend the terms of a trust holding *qualified real property* as defined in Internal Revenue Code Section 2032A, in order to permit the qualified real property to qualify for special use valuation permitted under Section 2032A, even if the amendment changes beneficial interests and that directs the segregation of trust property into more than one trust.

## Section 12.18    Real Estate Powers

My Trustee may sell at public or private sale, convey, purchase, exchange, lease for any period, mortgage, manage, alter, improve, and in general deal in and with real property in the manner and on the terms and conditions as my Trustee deems appropriate.

My Trustee may grant or release easements in or over, subdivide, partition, develop, raze improvements to, and abandon any real property.

My Trustee may manage real estate in any manner considered best, and may exercise all other real estate powers necessary to effect this purpose.

My Trustee may enter into contracts to sell real estate. My Trustee may enter into leases and grant options to lease trust property, even though the term of the agreement extends beyond the termination of any trusts established under this trust and beyond the period that is required for an interest created under this trust to vest in order to be valid under the rule against perpetuities. My Trustee may enter into any contracts, covenants, and warranty agreements that my Trustee deems appropriate.

## Section 12.19    Residences and Tangible Personal Property

My Trustee may acquire, maintain, and invest in any residence for the beneficiaries' use and benefit, whether or not the residence is income producing and without regard to the proportion that the residence's value may bear to the trust property's total value, even if retaining the residence involves financial risks that Trustees would not ordinarily incur. My Trustee may pay or make arrangements for others to pay all carrying costs of any residence for the beneficiaries' use and benefit, including taxes, assessments, insurance, maintenance, and other related expenses.

My Trustee may acquire, maintain, and invest in articles of tangible personal property, whether or not the property produces income. My Trustee may pay for the repair and maintenance of the property.

My Trustee is not required to convert the property referred to in this Section to income-producing property, except as required by other provisions of this trust.

My Trustee may permit any Income Beneficiary of the trust to occupy any real property or use any personal property owned by the trust on terms or arrangements that my Trustee

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

determines, including rent free or in consideration for the payment of taxes, insurance, maintenance, repairs, or other charges.

My Trustee is not liable for any depreciation or loss resulting from any decision to retain or acquire any property as authorized by this Section.

## Section 12.20    Retention and Abandonment of Trust Property

My Trustee may retain any property constituting the trust at the time of its creation, at the time of my death, or as the result of the exercise of a stock option, without liability for depreciation or loss resulting from retention. My Trustee may retain property, notwithstanding the fact that the property may not be of the character prescribed by law for the investment of assets held by a fiduciary, and notwithstanding the fact that retention may result in inadequate diversification under any applicable Prudent Investor Act or other applicable law.

My Trustee may hold property that is not income producing or is otherwise nonproductive if holding the property is in the best interests of the beneficiaries in the sole and absolute discretion of my Trustee. On the other hand, my Trustee will invest contributions of cash and cash equivalents as soon as reasonably practicable after the assets have been acquired by the trust.

My Trustee may retain a reasonable amount in cash or money market accounts to pay anticipated expenses and other costs, and to provide for anticipated distributions to or for the benefit of a beneficiary.

My Trustee may abandon any property that my Trustee considers of insignificant value.

## Section 12.21    Securities, Brokerage and Margin Powers

My Trustee may buy, sell, trade, and otherwise deal in stocks, bonds, investment companies, mutual funds, common trust funds, commodities, and other securities of any kind and in any amount, including short sales. My Trustee may write and purchase call or put options, and other derivative securities. My Trustee may maintain margin accounts with brokerage firms, and may pledge securities to secure loans and advances made to my Trustee or to or for a beneficiary's benefit.

My Trustee may place all or any part of the securities held by the trust in the custody of a bank or trust company. My Trustee may have all securities registered in the name of the bank or trust company or in the name of the bank's nominee or trust company's nominee. My Trustee may appoint the bank or trust company as the agent or attorney in fact to collect, receive, receipt for, and disburse any income, and generally to perform the duties and services incident to a custodian of accounts.

My Trustee may employ a broker-dealer as a custodian for securities held by the trust, and may register the securities in the name of the broker-dealer or in the name of a nominee; words indicating that the securities are held in a fiduciary capacity are optional. My Trustee may hold securities in bearer or uncertificated form, and may use a central depository,

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

clearing agency, or book-entry system, such as The Depository Trust Company, Euroclear, or the Federal Reserve Bank of New York.

My Trustee may participate in any reorganization, recapitalization, merger, or similar transaction. My Trustee may exercise or sell conversion or subscription rights for securities of all kinds and descriptions. My Trustee may give proxies or powers of attorney that may be discretionary and with or without powers of substitution, and may vote or refrain from voting on any matter.

### Section 12.22    Settlement Powers

My Trustee may settle any claims and demands in favor of or against the trust by compromise, adjustment, arbitration, or other means. My Trustee may release or abandon any claim in favor of the trust.

### Section 12.23    Limitation on My Trustee's Powers

All powers granted to Trustees under this trust or by applicable law are limited as set forth in this Section, unless explicitly excluded by reference to this Section. The limitations set forth in this Section do not apply to me.

#### (a)    An Interested Trustee Limited to Ascertainable Standards

An Interested Trustee may only make discretionary decisions when they pertain to a beneficiary's health, education, maintenance, and support as described under Internal Revenue Code Sections 2041 and 2514.

#### (b)    Interested Trustee Prohibited from Acting

Whenever this trust specifically prohibits or limits an Interested Trustee from exercising discretion or performing an act, then any Interested Trustee serving as my Trustee is prohibited from participating in the exercise of that discretion or performance of that act. If there is no Trustee serving who is not an Interested Trustee, then an Independent Special Trustee may be appointed under the provisions of to exercise the discretion or perform the act.

#### (c)    Exclusive Powers of My Independent Trustee

Whenever a power or discretion is granted exclusively to my Independent Trustee, then any Interested Trustee who is then serving as my Trustee is prohibited from participating in the exercise of the power or discretion. If there is no Independent Trustee then serving, then an Independent Special Trustee may be appointed under the provisions of to exercise the power or discretion that is exercisable only by my Independent Trustee.

Fred Lieberman's Survivor Trust dated
12-9

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**(d)    No Distributions in Discharge of Certain Legal Obligations**

My Trustee may not exercise or participate in the exercise of discretion with respect to the distribution of income or principal that would in any manner discharge a legal obligation of my Trustee, including the obligation of support.

If a beneficiary or any other person has the power to remove a Trustee, that Trustee may not exercise or participate in the exercise of discretion with respect to the distribution of income or principal that would in any manner discharge a legal obligation of the person having the power to remove the Trustee, including that person's obligation of support.

**(e)    Insurance Policy on the Life of My Trustee**

If the trust holds a policy that insures the life of a Trustee, that Trustee may not exercise any powers or rights with respect to the policy. Instead, a Co-Trustee or an Independent Special Trustee must exercise the powers and rights with respect to the policy.

If any rule of law or court decision construes the ability of the insured Trustee to name an Independent Special Trustee as an incident of ownership of the policy, then a majority of the then current Income Beneficiaries (excluding the insured Trustee if he or she is a beneficiary) will select the Independent Special Trustee.

**(f)    Insurance Policy on a Beneficiary's Life**

If the trust holds a policy that insures a beneficiary's life, the beneficiary, individually or as Trustee, may not exercise any power over the policy, its cash value, or its proceeds. This denial of power is intended to prevent an insured beneficiary from holding any power that would constitute an incident of ownership of the policy.

In addition, no distribution of income or principal to the insured beneficiary may be satisfied out of the policy's proceeds, cash value, or other economic benefit of the policy.

The limitations of this Subsection do not apply if, upon the beneficiary's death, the policy's proceeds would otherwise be included in the beneficiary's gross estate for federal estate tax purposes.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Article Thirteen
# General Provisions

### Section 13.01    Maximum Term for Trusts

Notwithstanding any contrary provisions or unless terminated earlier under other provisions of this trust, each trust created under this trust document will terminate 21 years after the death of the last to die of the descendants of my paternal and maternal grandparents who are living at the time of my death.

At that time, the remaining trust property will vest in and be distributed to the persons entitled to receive mandatory distributions of the trust's net income, in the same proportions. If no beneficiary is entitled to mandatory distributions of net income, the remaining trust property will vest in and be distributed to the beneficiaries entitled to receive discretionary distributions of the trust's net income, in equal shares.

### Section 13.02    Spendthrift Provision

No beneficiary may assign, anticipate, encumber, alienate, or otherwise voluntarily transfer the income or principal of any trust created under this trust. In addition, neither the income nor the principal of any trust created under this trust is subject to attachment, bankruptcy proceedings or any other legal process, the interference or control of creditors or others, or any involuntary transfer.

This Section does not restrict a beneficiary's right to disclaim any interest or exercise of any power of appointment granted in this trust. In addition, this Section does not limit the ability of an Independent Trustee to appoint property in further trust for any beneficiary as provided in .

### Section 13.03    Contest Provision

If any person attempts to contest or oppose the validity of this trust or any amendment to this trust, or commences, continues, or prosecutes any legal proceedings to set this trust aside, then that person will forfeit his or her share, cease to have any right or interest in the trust property, and will be considered to have predeceased me for purposes of this instrument.

### Section 13.04    Survivorship Presumption

If any beneficiary is living at my death, but dies within 180 days after my death, then the beneficiary will be considered to have predeceased me for this trust's purposes.

### Section 13.05    Changing the Governing Law and Situs of Administration

At any time, my Trust Protector may change the governing law of the trust; change the situs of the administration of the trust; and remove all or any part of the property from one jurisdiction to another. My Trust Protector may elect, by filing an instrument with the trust

Fred Lieberman's Survivor Trust dated
13-1

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

records, that the trust will then be construed, regulated, and governed by the new jurisdiction's laws. My Trust Protector may take action under this Section for any purpose my Trust Protector considers appropriate, including the minimization of any taxes in respect of the trust or any trust beneficiary.

If considered necessary or advisable by my Trust Protector, my Trust Protector may appoint an Independent Trustee to serve as Trustee in the new situs.

If necessary and if my Trust Protector does not appoint an Independent Trustee within 30 days of my Trust Protector's action to change the governing law or situs of the trust, the beneficiaries entitled to receive distributions of the trust's net income may appoint a corporate fiduciary in the new situs by majority consent. If a beneficiary is a minor or is incapacitated, the beneficiary's parent or Legal Representative may act on the beneficiary's behalf.

### Section 13.06    Definitions

For purposes of this trust, the following terms have these meanings:

#### (a)    Adopted and Afterborn Persons

A person in any generation who is legally adopted before reaching 18 years of age and his or her descendants, including adopted descendants, have the same rights and will be treated in the same manner under this trust as natural children of the adopting parent. A person is considered legally adopted if the adoption was legal at the time when and in the jurisdiction in which it occurred.

A fetus *in utero* later born alive will be considered a person in being during the period of gestation.

#### (b)    By Representation

Whenever a distribution is to be made to a designated person's descendants *by representation*, the distribution will be divided into as many equal shares as there are then-living descendants in the nearest degree of kinship and then-deceased descendants in the same degree who left then-living descendants. Each then living descendant in the nearest degree will receive one share, and the share of each then deceased descendant in the same degree will be divided among his or her descendants in the same manner.

#### (c)    Descendants

The term *descendants* means persons who directly descend from a person, such as children, grandchildren, or great-grandchildren. The term *descendants* does not include collateral descendants, such as nieces and nephews.

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**(d)    Designation Date**

The term *designation date* means September 30 of the calendar year following the year of my death, or any other date established by Treasury Regulations or other tax law authority as the final date for determining whether this trust meets the requirements for the trust beneficiaries to be treated as having been designated as beneficiaries under Internal Revenue Code Section 401(a)(9).

**(e)    Education**

The term *education* is intended to be an ascertainable standard under Internal Revenue Code Sections 2041 and 2514 and includes:

> enrollment at private elementary, junior, and senior high school, including boarding school;

> undergraduate and graduate study in any field at a college or university;

> specialized, vocational, or professional training or instruction at any institution, as well as private instruction; and

> any other curriculum or activity that my Trustee considers useful for developing a beneficiary's abilities and interests including athletic training, musical instruction, theatrical training, the arts, and travel.

The term *education* also includes expenses such as tuition, room and board, fees, books, supplies, computers and other equipment, tutoring, transportation, and a reasonable allowance for living expenses.

**(f)    Good Faith**

For the purposes of this trust, a Trustee has acted in good faith if:

> an action or inaction is not a result of intentional wrongdoing;

> the Trustee did not make the decision to act or not act with reckless indifference to the beneficiaries' interests; and

> an action or inaction does not result in an improper personal benefit to the Trustee.

Further, all parties subject to the provisions of this trust will treat any action or inaction made in reliance on information, consent, or directions received from the Personal Representative of my estate as made in good faith for the purposes of this Section, except for cases of willful misconduct or malfeasance on the Trustee's part.

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**(g)    Grantor**

*Grantor* has the same legal meaning as *Settlor*, *Trustor* or any other term referring to the maker of a trust.

**(h)    Incapacity**

Except as otherwise provided in this trust, a person is considered incapacitated in any of the following circumstances.

### (1)    The Opinion of Two Licensed Physicians

An individual is considered to be incapacitated whenever two licensed physicians give the opinion that the individual is unable to effectively manage his or her property or financial affairs, whether as a result of age; illness; use of prescription medications, drugs, or other substances; or any other cause. If an individual whose capacity is in question refuses to provide necessary documentation or otherwise submit to examination by licensed physicians, that individual will be considered incapacitated.

An individual is considered restored to capacity whenever the individual's personal or attending physician provides a written opinion that the individual is able to effectively manage his or her property and financial affairs.

### (2)    Court Determination

An individual is considered incapacitated if a court of competent jurisdiction has declared the individual to be disabled, incompetent, or legally incapacitated.

### (3)    Detention, Disappearance, or Absence

An individual is considered to be incapacitated whenever he or she cannot effectively manage his or her property or financial affairs due to the individual's unexplained disappearance or absence for more than 30 days, or whenever he or she is detained under duress.

An individual's disappearance, absence, or detention under duress may be established by an affidavit of my Trustee, or by the affidavit of any beneficiary if no Trustee is then serving. The affidavit must describe the circumstances of the individual's disappearance, absence, or detention, and may be relied upon by any third party dealing in good faith with my Trustee.

KFB Law Group, LLP, 12100 Wilshire Blvd., Suite 245, Los Angeles, California 90025  |  (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

### (i)    Include, Includes, Including

In this document, the words include, includes, and including mean include without limitation, includes without limitation and including without limitation, respectively. Include, includes, and including are words of illustration and enlargement, not words of limitation or exclusivity.

### (j)    Income Beneficiary

The term *Income Beneficiary* means any beneficiary who is then entitled to receive distributions of the trust's net income, whether mandatory or discretionary.

Unless otherwise provided in this trust, the phrase *majority of the Income Beneficiaries* means any combination of Income Beneficiaries who would receive more than 50% of the accrued net income if that income were distributed on the day of a vote. For purposes of this calculation, beneficiaries who are eligible to receive discretionary distributions of net income receive the imputed income in equal shares.

References to a *majority* refer to a majority of the entire trust collectively until my Trustee allocates property to separate trusts or trust shares. After my Trustee allocates property to separate trusts or trust shares, references to a *majority* refer to a majority of each separate trust or trust share.

### (k)    Income in Respect of a Decedent (IRD)

The term *income in respect of a decedent* (IRD) means income received after a decedent's death that would have been taxable to the decedent if the income had been received by the decedent during the decedent's lifetime. For example, payments under qualified retirement plans and other deferred compensation arrangements are IRD. For purposes of this trust, IRD means any income that would be classified as IRD under Internal Revenue Code Section 691(a).

### (l)    Independent Trustee

The term *Independent Trustee* means any Trustee who is not an Interested Trustee as defined in Subsection (dd) and includes an Independent Special Trustee appointed under the provisions of .

### (m)    Instrument

The term *this instrument* means this trust, and includes all trusts created under the terms of this trust.

### (n)    Interested Trustee

The term *Interested Trustee* means a Trustee who:

      is a transferor or beneficiary;

      is related or subordinate to a transferor or beneficiary;

Fred Lieberman's Survivor Trust dated
13-5

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

can be removed and replaced by a transferor with either the transferor or a party who is related or subordinate to the transferor; or

can be removed and replaced by a beneficiary with either the beneficiary or a party who is related or subordinate to the beneficiary.

For purposes of this Subsection, *transferor* means a person who transferred property to the trust during that person's lifetime, including a person whose disclaimer resulted in property passing to the trust. A person is only a transferor during his or her lifetime. *Beneficiary* means a person who is or may become eligible to receive income or principal from the trust under the terms of the trust, even if this person has only a remote contingent remainder interest in the trust, but not if the person's only interest is as a potential appointee under a power of appointment. *Related or subordinate* is used as defined in Internal Revenue Code Section 672(c).

### (o)    Internal Revenue Code and Treasury Regulations

References to the *Internal Revenue Code* or to its provisions are to the Internal Revenue Code of 1986, as amended, and any corresponding Treasury Regulations. References to the *Treasury Regulations*, are to the Treasury Regulations under the Internal Revenue Code in effect. If a particular provision of the Internal Revenue Code is renumbered or the Internal Revenue Code is superseded by a subsequent federal tax law, any reference is considered to be made to the renumbered provision or to the corresponding provision of the subsequent law, unless to do so would clearly be contrary to my intent as expressed in this trust. The same rule applies to references to the Treasury Regulations.

### (p)    Legal Representative or Personal Representative

As used in this trust document, the term *Legal Representative* or *Personal Representative* means a person's guardian, conservator, executor, administrator, Trustee, attorney in fact under a Durable Power of Attorney, or any other person or entity representing a person or the person's estate. In the case of a minor beneficiary, the beneficiary's parent or another adult with custody of the beneficiary, except for any transferor to a trust created under this instrument, will be considered the beneficiary's Legal Representative for purposes of this trust.

### (q)    Primary Beneficiary

The *Primary Beneficiary* of a trust created under this trust is that trust's oldest Income Beneficiary, unless some other individual is specifically designated as the Primary Beneficiary of that separate trust.

Fred Lieberman's Survivor Trust dated
13-6

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

### (r)    Qualified Retirement Benefits

The term *qualified retirement plan* means a plan qualified under Internal Revenue Code Section 401, an individual retirement arrangement under Section 408 or Section 408A, or a tax-sheltered annuity under Section 403. The term *qualified retirement benefits* means the amounts held in or distributed pursuant to a plan qualified under Section 401, an individual retirement arrangement under Section 408 or Section 408A, a tax-sheltered annuity under Section 403, or any other benefit subject to the distribution rules of Section 401(a)(9).

### (s)    Shall and May

Unless otherwise specifically provided in this trust or by the context in which used, I use the word *shall* in this trust to impose a duty, command, direct, or require, and the word *may* to allow or permit, but not require. In the context of my Trustee, when I use the word *shall* I intend to impose a fiduciary duty on my Trustee. When I use the word *may* I intend to empower my Trustee to act with the Trustee's sole and absolute discretion unless otherwise stated in this trust. When I use the words *may not* in reference to my Trustee, I specifically mean my Trustee *is not permitted to*.

### (t)    Trust

The terms *this trust, this document, instrument,* and *this trust document* refer to this trust and all trusts created under the terms of this trust.

### (u)    Trustee

The terms *my Trustee* and *Trustee* refer to the Initial Trustee named in Article One and to any successor, substitute, replacement, or additional person, corporation, or other entity that ever acts as the Trustee of any trust created under the terms of this trust. The term *Trustee* refers to singular or plural as the context may require.

### (v)    Trust Property

The term *trust property* means all property acquired from any source and held by a Trustee under this trust.

## Section 13.07    General Provisions and Rules of Construction

The following general provisions and rules of construction apply to this trust.

### (a)    Multiple Originals; Validity of Paper or Electronic Copies

This trust may be executed in any number of counterparts, each of which will be considered an original.

Any person may rely on a paper or electronic copy of this trust that the Trustee certifies to be a true copy as if it were an original.

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**(b)      Singular and Plural; Gender**

Unless the context requires otherwise, singular words may be construed as plural, and plural words may be construed as singular. Words of one gender may be construed as denoting another gender as is appropriate within the context. The word *or,* when used in a list of more than two items, may function as both a conjunction and a disjunction as the context requires.

**(c)      Headings of Articles, Sections, and Subsections**

The headings of Articles, Sections, and Subsections used within this trust are included solely for the convenience of the reader. They have no significance in the interpretation or construction of this trust.

**(d)      Governing State Law**

This trust is governed, construed, and administered according to the laws of Washington, as amended except as to trust property required by law to be governed by the laws of another jurisdiction and unless the situs of administration is changed under Section 2.06.

**(e)      Notices**

Unless otherwise stated, any notice required under this trust will be in writing. The notice may be personally delivered with proof of delivery to the party requiring notice and will be effective on the date personally delivered. Notice may also be mailed, postage prepaid, by certified mail with return receipt requested to the last known address of the party requiring notice. Mailed notice is effective on the date of the return receipt. If a party giving notice does not receive the return receipt but has proof that he or she mailed the notice, notice will be effective on the date it would normally have been received via certified mail. If the party requiring notice is a minor or incapacitated individual, notice will be given to the parent or Legal Representative.

**(f)    Severability**

The invalidity or unenforceability of any provision of this trust does not affect the validity or enforceability of any other provision of this trust.  If a court of competent jurisdiction determines that any provision is invalid, the remaining provisions of this trust are to be interpreted as if the invalid provision had never been included.

I have executed this restated trust on June 15, 2022.  This restated trust instrument is effective when signed by me, whether or not now signed by a Trustee.

_____
Fred Lieberman, Grantor and Trustee

STATE OF WASHINGTON                 )
                                                      ) ss.
COUNTY OF KING_____   )

I certify that I know or have satisfactory evidence that Fred Lieberman is the person who appeared before me, and said person acknowledged that he signed this instrument and acknowledged it to be his free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: ~~June 15, 2022~~
June 16, 2022        KAN
(Seal or stamp)

Kisean Andre Nathan
Notary Public
State of Washington
My Appointment Expires 12/31/2024
Commission Number 21008842

_____
Notary Public for the State of Washington
My commission expires:  12/31/2024

Fred Lieberman's Survivor Trust dated
13-9

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# Schedule A

Ten Dollars cash

19150 Pacific Coast Highway, Malibu, CA 90265

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

Exhibit D

# THE FRED LIEBERMAN'S SURVIVOR TRUST DATED
# DATED AUGUST 2, 2019

## Restatement dated June 15, 2022

### KFB LAW GROUP, LLP
12100 WILSHIRE BLVD., SUITE 245
LOS ANGELES, CALIFORNIA 90025

Copyright © 2021 KFB Law Group, LLP

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

# The Fred Lieberman's Survivor Trust dated
# Table of Contents

| | | |
|---|---|---|
| **Article One** | **Establishing My Trust** | **1-1** |
| Section 1.01 | Identifying My Trust | 1-1 |
| Section 1.02 | Reliance by Third Parties | 1-1 |
| Section 1.03 | Transferring Property to My Trust | 1-2 |
| Section 1.04 | Powers Reserved by Me as Grantor | 1-2 |
| Section 1.05 | Grantor Trust Status | 1-3 |
| | | |
| **Article Two** | **Family Information** | **2-1** |
| | | |
| **Article Three** | **Trustee Succession and Trust Protector Provisions** | **3-1** |
| Section 3.01 | Resignation of a Trustee | 3-1 |
| Section 3.02 | Trustee Succession during My Lifetime | 3-1 |
| Section 3.03 | Trustee Succession after My Death | 3-2 |
| Section 3.04 | Notice of Removal and Appointment | 3-3 |
| Section 3.05 | Appointment of a Co-Trustee | 3-3 |
| Section 3.06 | Corporate Fiduciaries | 3-3 |
| Section 3.07 | Incapacity of a Trustee | 3-4 |
| Section 3.08 | Appointment of Independent Special Trustee | 3-4 |
| Section 3.09 | Rights and Obligations of Successor Trustees | 3-4 |
| Section 3.10 | Prohibited Trustees | 3-4 |
| Section 3.11 | Provisions for Trust Protector | 3-5 |
| | | |
| **Article Four** | **Administration of My Trust During My Incapacity** | **4-1** |
| Section 4.01 | Definition of My Incapacity | 4-1 |
| Section 4.02 | Determination of My Incapacity | 4-1 |
| Section 4.03 | Trust Distributions during My Incapacity | 4-2 |
| | | |
| **Article Five** | **Administration of My Trust Upon My Death** | **5-1** |
| Section 5.01 | My Trust Becomes Irrevocable | 5-1 |
| Section 5.02 | Administrative Trust | 5-1 |
| Section 5.03 | Payment of Expenses and Taxes | 5-1 |
| Section 5.04 | Excluding Life Insurance Proceeds from Creditors | 5-1 |
| Section 5.05 | Payment of Death Taxes | 5-2 |
| Section 5.06 | Coordination with My Personal Representative | 5-2 |
| Section 5.07 | Authority to Make Tax Elections | 5-3 |

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

Section 5.08   Payment of Charitable Bequests ........................................... 5-4

**Article Six**   **Disposition of Tangible Personal Property ............. 6-1**
Section 6.01   Distribution of Tangible Personal Property by
        Memorandum ................................................................. 6-1
Section 6.02   Distribution of Remaining Tangible Personal Property ........ 6-1
Section 6.03   Apportionment of Taxes ................................................... 6-2
Section 6.04   Definition of Tangible Personal Property ........................... 6-2
Section 6.05   Incidental Expenses and Encumbrances .............................. 6-2
Section 6.06   Residuary Distribution ..................................................... 6-2

**Article Seven**   **Distribution to My Descendants ............................... 7-1**

**Article Eight**   **Remote Contingent Distribution ............................. 8-1**

**Article Nine**   **Distributions to Underage and Incapacitated**
         **Beneficiaries ............................................................. 9-1**
Section 9.01   Supplemental Needs Trust ................................................ 9-1
Section 9.02   Underage and Incapacitated Beneficiaries ........................... 9-4
Section 9.03   Methods of Distribution .................................................. 9-5
Section 9.04   Retention in Trust .......................................................... 9-5
Section 9.05   Application of Article ...................................................... 9-6

**Article Ten**   **Retirement Plans and Life Insurance Policies ....... 10-1**
Section 10.01   Retirement Plans ........................................................... 10-1
Section 10.02   Life Insurance Policies .................................................... 10-5
Section 10.03   Limitation on Liability of Payor ....................................... 10-5
Section 10.04   Collection Efforts .......................................................... 10-5
Section 10.05   No Obligation to Purchase or Maintain Benefits ................. 10-6

**Article Eleven**   **Trust Administration ............................................... 11-1**
Section 11.01   Distributions to Beneficiaries ........................................... 11-1
Section 11.02   Trust Decanting; Power to Appoint in Further Trust ........... 11-1
Section 11.03   Beneficiary's Status ........................................................ 11-2
Section 11.04   Mandatory Payments of a Pecuniary Amount ..................... 11-2
Section 11.05   No Court Proceedings ..................................................... 11-2
Section 11.06   No Bond ...................................................................... 11-3
Section 11.07   Exoneration of My Trustee ............................................. 11-3
Section 11.08   Limitations on Trustee Liability ....................................... 11-3
Section 11.09   Self-Dealing ................................................................. 11-4
Section 11.10   Trustee Compensation .................................................... 11-4

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

| | | |
|---|---|---|
| Section 11.11 | Employment of Professionals | 11-5 |
| Section 11.12 | Exercise of Testamentary Power of Appointment | 11-5 |
| Section 11.13 | Determination of Principal and Income | 11-5 |
| Section 11.14 | Distributions from Roth IRAs | 11-6 |
| Section 11.15 | Determination of Required Minimum Distributions | 11-6 |
| Section 11.16 | Trust Accounting | 11-6 |
| Section 11.17 | Action of Trustees and Delegation of Trustee Authority | 11-7 |
| Section 11.18 | Trustee May Disclaim or Release Any Power | 11-7 |
| Section 11.19 | Trustee May Execute a Power of Attorney | 11-8 |
| Section 11.20 | Additions to Separate Trusts | 11-8 |
| Section 11.21 | Authority to Merge or Sever Trusts | 11-8 |
| Section 11.22 | Authority to Terminate Trusts | 11-9 |
| Section 11.23 | Discretionary Distribution to Fully Utilize Basis Increase upon Death of Beneficiary | 11-9 |
| Section 11.24 | Merger of Corporate Fiduciary | 11-9 |
| Section 11.25 | Funeral and Other Expenses of Beneficiary | 11-10 |
| | | |
| **Article Twelve** | **My Trustee's Powers** | **12-1** |
| Section 12.01 | Introduction to Trustee's Powers | 12-1 |
| Section 12.02 | Execution of Documents by My Trustee | 12-1 |
| Section 12.03 | Investment Powers in General | 12-1 |
| Section 12.04 | Banking Powers | 12-2 |
| Section 12.05 | Business Powers | 12-2 |
| Section 12.06 | Contract Powers | 12-3 |
| Section 12.07 | Common Investments | 12-3 |
| Section 12.08 | Digital Assets | 12-3 |
| Section 12.09 | Environmental Powers | 12-3 |
| Section 12.10 | Farm, Ranch, and Other Agricultural Powers | 12-4 |
| Section 12.11 | Insurance Powers | 12-5 |
| Section 12.12 | Loans and Borrowing Powers | 12-5 |
| Section 12.13 | Nominee Powers | 12-6 |
| Section 12.14 | Oil, Gas and Mineral Interests | 12-6 |
| Section 12.15 | Payment of Property Taxes and Expenses | 12-6 |
| Section 12.16 | Purchase of Assets from and Loans to My Probate Estate | 12-6 |
| Section 12.17 | Qualified Real Property Valuation | 12-7 |
| Section 12.18 | Real Estate Powers | 12-7 |
| Section 12.19 | Residences and Tangible Personal Property | 12-7 |
| Section 12.20 | Retention and Abandonment of Trust Property | 12-8 |
| Section 12.21 | Securities, Brokerage and Margin Powers | 12-8 |
| Section 12.22 | Settlement Powers | 12-9 |
| Section 12.23 | Limitation on My Trustee's Powers | 12-9 |

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

**Article Thirteen**        **General Provisions....................................................13-1**

Section 13.01        Maximum Term for Trusts.................................... 13-1
Section 13.02        Spendthrift Provision ......................................... 13-1
Section 13.03        Contest Provision ............................................... 13-1
Section 13.04        Survivorship Presumption.................................. 13-1
Section 13.05        Changing the Governing Law and Situs of
                     Administration .................................................. 13-1
Section 13.06        Definitions.......................................................... 13-2
Section 13.07        General Provisions and Rules of Construction .................. 13-7

Fred Lieberman's Survivor Trust dated

iv

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

Exhibit E

# The Second Amendment
## to the
# Fred Lieberman's Survivor Trust dated August 2, 2019

On August 2, 2019, I, Fred Lieberman, funded the Fred Lieberman's Survivor's Trust dated August 2, 2019 ("my trust"), more formally known as:

> Fred Lieberman, Trustee of the Fred Lieberman's Survivor Trust, dated August 2, 2019, and any amendments.

On June 15, 2022, I Amended and Restated the Fred Lieberman's Survivor Trust.

Section 1.04 of my trust permits me to amend it in writing at any time. This Amendment represents the Second Amendment to my trust.

### Section 1.01      Amendment

I exercise the right to amend my trust as follows:

**Article Two shall be amended in its entirety to read as follows:**

I was married to Martha Londono on December 10, 1988, who is now deceased. I have one child, Suzanne Kristi Lieberman and all references in this document to my children are references to this child.

References to my descendants are to my children and their descendants, including any deceased child's descendants.

**Section 3.03(a) of Article 3 is amended in its entirety to read as follows:**

I name Suzanne Kristi Lieberman to serve as my successor Trustee upon my incapacity or upon my death. Suzanne Kristi shall have the right to appoint a Professional Trustee to serve in her place, should she desire to resign or not accept the Trustee position.

**Article Seven is amended in its entirety to read as follows:**

"My Trustee shall distribute my remaining trust property (not distributed under prior Articles of this instrument) outright and free of trust to my daughter, Suzanne Kristi Lieberman providing she survives me. If she fails to survive me, her share shall be given to her descendants (including anyone she adopts), providing they survive me, and if not, her share shall be given to USC Norris Hospital for Cancer Research.

The Second Amendment to the
Fred Lieberman's Survivor Trust dated
Page 1

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

## Section 1.02    Contest Provision

This Section of my Amendment applies to my trust and to this Amendment.  If any provision of this Section conflicts with any provision of my trust, the provision of this Section will prevail.  I have intentionally failed to provide for my step-children.

If any person attempts to contest or oppose the validity of this trust or any amendment to this trust, or commences, continues, or prosecutes any legal proceedings to set this trust aside, then that person will forfeit his or her share, cease to have any right or interest in the trust property, and will be considered to have predeceased me for purposes of this instrument.

## Section 1.03    Effective Date

The provisions of this Amendment are effective immediately after I execute it.

## Section 1.04    Ratification and Confirmation

I confirm all provisions of my trust (and any prior amendments) that are not modified by this Amendment.

I executed this Amendment on _September 3_, 2022.

I certify that I have read this Amendment to my trust and that it correctly states the changes I desire to make to my trust.  I approve this Amendment to my trust in all particulars and request my Trustee to execute it.

_Fred Lieberman_

Fred Lieberman, Grantor and Trustee

The Second Amendment to the
Fred Lieberman's Survivor Trust dated
Page 2

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc

STATE OF WASHINGTON            )
                              ) ss.
COUNTY OF KING_____ )

I certify that I know or have satisfactory evidence that Fred Lieberman is the person who appeared before me, and said person acknowledged that he signed this instrument and acknowledged it to be his free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: _September 3rd_, 2022

     (Seal or stamp)

Notary Public for the State of Washington
My commission expires: April 9th, 2026

The Second Amendment to the
Fred Lieberman's Survivor Trust dated
Page 3

KFB LAW GROUP, LLP, 12100 WILSHIRE BLVD., SUITE 245, LOS ANGELES, CALIFORNIA 90025 | (310) 307-3441

Doc ID: 3b82c13af31cb98ebb8dcc0c6a913b08b4209fbc